EXHIBIT 1

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## Civil Division

JOHN M. TYLER AND DORIS TYLER, his wife,
3115 Westley Road,
Falls Church, VA 22042

      Plaintiffs,

v.

ALFA LAVAL, INC., Individually and as successor-in-
interest to DeLAVAL SEPARATOR COMPANY and
SHARPLES, INC.
Serve: CT Corporation System
      1015 15th Street, N.W., Suite 1000
      Washington, DC 20005

ASCO VALVES, INC., Individually and as
successor-in-interest to ATLAS VALVES CO.
Serve: President/CEO
      50-60 Hanover Road
      Florham Park, NJ 07932

AURORA PUMP COMPANY
Serve: President/CEO
      800 Airport Road
      North Aurora, IL 60542

A.W. CHESTERTON, CO.
Serve: President
      Route 93, Middlesex Industrial Park
      Stoneham, MA 02180

BORGWARNER MORSE TEC, CORP.,
Individually and as successor-in-interest to
BYRON JACKSON PUMPS CO.
Serve: President/CEO
      800 Warren Road
      Ithaca, NY 14850

: Civil Action No.





BUFFALO PUMPS, INC., Individually and as Successor-    :
in-interest to BUFFALO FORGE COMPANY                  :
Serve: President/CEO                                  :
    874 Oliver Street                                :
    North Tonawanda, NY 14120-3298                   :
                                                     :
BURNS INTERNATIONAL SERVICES CORP.,                   :
f/k/a BORG WARNER CORP., Individually and as          :
Successor-in-interest to BYRON JACKSON PUMPS CO.      :
Serve: President/CEO                                  :
    2 Campus Drive                                   :
    Parsippany, NJ 07054                             :
                                                     :
BW/IP, INC., f/k/a BW/IP INTERNATIONAL, INC.,         :
Successor-in-interest to BORG-WARNER INDUSTRIAL       :
PRODUCTS, Individually and as Successor-in-interest to :
BYRON JACKSON PUMPS CO.                               :
Serve: President/CEO                                  :
    5215 N. O'Connor Blvd.                           :
    Irving, TX 75039                                 :
                                                     :
CARRIER CORPORATION                                   :
Serve: CT Corporation System                          :
    1015 15th Street, N.W., Suite 1000               :
    Washington, DC 20005                             :
                                                     :
CARVER PUMP COMPANY                                   :
Serve: President/CEO                                  :
    2415 Park Avenue                                 :
    Muscatine, IA 52761-5691                         :
                                                     :
CBS CORP., a Delaware Corp., f/k/a VIACOM, INC.,       :
successor by merger to CBS CORP., a Pennsylvania      :
Corp., f/k/a WESTINGHOUSE ELECTRIC CORP.              :
Serve: CSC Network                                    :
    1090 Vermont Avenue, N.W.                        :
    Washington, DC 20005                             :
                                                     :
COOPER US, INC., f/k/a COOPER INDUSTRIES, LLC,         :
Individually and as Successor-in-interest to          :
GARDNER DENVER, INC.                                  :
Serve: CT Corporation System                          :
    4701 Cox Road, Suite 301                         :
    Glen Allen, VA 23060-6802                        :

CRANE CO.
Serve: President
      100 First Stamford Place
      Stamford, CT 06902

CROWN CORK & SEAL COMPANY, INC.
Successor-in-interest to Mundet Cork Corp.
Serve: Chairman/CEO
      One Crown Way
      Philadelphia, PA 19154-4599

ELLIOTT COMPANY, a/k/a
ELLIOTT TURBOMACHINERY CO., INC.
Serve: The Corporation Trust, Inc.
      351 West Camden Street
      Baltimore, MD 21201

FLOWSERVE CORP., Successor-in-interest to
BORG-WARNER CORP., Successor-in-interest to
BYRON JACKSON PUMPS CO.
Serve: President/CEO
      5215 N. O'Connor Blvd., Suite 2300
      Irving, TX 75039

FLOWSERVE CORP., Successor-in-interest to
SIER-BATH GEAR & PUMP COMPANY
Serve: President/CEO
      5215 N. O'Connor Blvd., Suite 2300
      Irving, TX 75039

FMC CORP., Individually and as Successor-in-interest to
NORTHERN PUMP CO. and PEERLESS PUMP CO.
Serve: CT Corporation System
      1015 15th Street, N.W., Suite 1000
      Washington, DC 20005

FOSTER WHEELER CORPORATION
Serve: Jack E. Deones, Vice President & Secretary
      Perryville Corporate Park
      Clinton, NJ 08809-4000

GARDNER DENVER, INC.                          :
Serve:  President/CEO                          :
       1800 Gardner Expressway        :
       Quincy, IL 62305               :
                      :
GARLOCK, INC.                                  :
Serve:  President                              :
       1666 Division Street           :
       Palmyra, NY 14522              :
                      :
GENERAL ELECTRIC COMPANY                       :
Serve:  C.T. Corporation Systems               :
       1025 Vermont Avenue, N.W.      :
       Fourth Floor                   :
       Washington, DC 20005           :
                      :
GOULDS PUMPS, INC.                             :
Serve:  President/CEO                          :
       P.O. Box 330                   :
       Seneca Falls, NY 13148         :
                      :
HONEYWELL, INC.                                :
Serve:  CT Corporation System                  :
       1025 Vermont Avenue, N.W., 4th Floor  :
       Washington, DC  20005          :
                      :
HOWDEN BUFFALO, INC., Individually and as      :
Successor-in-interest to BF STURDIVANT, THE    :
HOWDEN GROUP and BUFFALO FAN                   :
Serve:  President/CEO                          :
       2029 West DeKalb Street        :
       Camden, SC 29020               :
                      :
I.M.O. INDUSTRIES, INC., Individually and as   :
Successor-in-interest to DE LAVAL STEAM TURBINE :
COMPANY                                        :
Serve:  Corporation Service Company            :
       1090 Vermont Avenue, N.W.      :
       Washington, DC 20005           :

INGERSOLL-RAND COMPANY, Individually and as
Successor-in-interest to TERRY STEAM TURBINE
COMPANY
Serve: President/CEO
          155 Chestnut Ridge Road
          P.O. Box 445
          Montvale, NJ 07645

JOHN CRANE, INC.
Serve: President/CEO
          6400 Oakton Street
          Morton Grove, IL 60053

LESLIE CONTROLS, INC.
Serve: President/CEO
          12501 Telecom Drive
          Tampa, FL  33637

MELRATH GASKET, INC.
Serve: President/CEO
          2901 W. Hunting Park Avenue
          P.O. Box 43099
          Philadelphia, PA 19129

METROPOLITAN LIFE INSURANCE CO.
Serve: President/CEO
          1 Madison Avenue
          New York, NY 10010

OWENS ILLINOIS INCORPORATED
Serve: President/CEO
          One Michael Owens Way
          Perrysburg, OH 43551-2999

UNION CARBIDE CORPORATION
Serve: C.T. Corporation System
          1025 Vermont Avenue, N.W.
          Fourth Floor
          Washington, DC 20005

WACO, INC.                                           :
Serve: Daniel M. Walker                              :
       P.O. Box 829                                  :
       5450 Lewis Road                               :
       Sandston, VA 23150                            :
                                                     :
WARREN PUMPS, LLC, Individually and as Successor-    :
in-interest to QUIMBY PUMP COMPANY, INC.             :
Serve: President/CEO                                 :
       82 Bridges Avenue                             :
       P.O. Box 969                                  :
       Warren, MA 01083                              :
                                                     :
YARWAY CORPORATION                                   :
Serve: CT Corporation Systems                        :
       1515 Market Street, Suite 1210                :
       Philadelphia, PA 19102                        :
                                                     :
       Defendants.                                   :

## COMPLAINT AND DEMAND FOR JURY TRIAL

**(Negligence, Strict Liability, Breach of Warranty,
Punitive Damages, Aiding and Abetting
and Civil Conspiracy, and Loss of Consortium)**

1.      Jurisdiction of this Court is based on D.C. Code Ann. §11-921 (1981).  Jurisdiction over the defendants rests on D.C. Code Ann. §13-423 (1981) based on their business activities in the District of Columbia and their acts or omissions causing injury to the male plaintiff within the District of Columbia.

2.      The male plaintiff, hereinafter referred to as "plaintiff", John M. Tyler, was employed as a fireman and machinist's mate serving on board ship in the U.S. Navy, active duty, from approximately 1953 to 1956.  Thereafter, he worked as a machinist and also served in the U.S. Navy Reserve until approximately 1980, working at job sites in and around the District of Columbia.  In each of the foregoing positions, Mr. Tyler was exposed to asbestos products.  During this period of time, plaintiff frequently used and/or came into contact with asbestos and asbestos products designed, manufactured, specified, inspected, assembled, distributed, supplied and/or installed by the above-named defendants.  Because of this frequent contact with the defendants' asbestos products, plaintiff

inhaled and ingested great quantities of asbestos fibers. As a result of this exposure, plaintiff has developed mesothelioma and other related pulmonary problems.

## COUNT I
### (Negligence)

3.       The plaintiff hereby adopts by reference the preceding paragraphs of the complaint as if fully set forth herein and further alleges that plaintiff's development of mesothelioma and other related pulmonary problems was a direct and proximate result of the negligence of the defendants named herein in their design, manufacture, inspection, production, testing, distribution, specification, supply and/or installation and labeling of asbestos-containing materials and products, including, but not limited to, negligence in:

a.       failing to adequately warn the plaintiff of the hazards associated with the inhalation of asbestos fibers;

b.       failing to adequately warn the plaintiff that protective equipment should be used at all times when working with products containing asbestos;

c.       failing to properly design and manufacture asbestos products for safe use under the conditions of use that were reasonably anticipated;

d.       failing to properly test the asbestos products for hazards prior to placing these goods in the stream of commerce;

e.       failing to provide adequate instructions for safe and proper use of asbestos products;

f.       failing to remove asbestos products from the stream of commerce even after the defendants knew, or in the exercise of reasonable care, should have known, that these products were unsafe for use by consumers or workers under reasonably anticipated circumstances and/or any circumstances; and

g.       failing to specify the use of non-asbestos containing substitute products.

4.       As a direct and proximate result of the negligence of the defendants named herein, the plaintiff has developed mesothelioma and other related pulmonary problems. Such potentially fatal injuries have caused the plaintiff's permanent total and/or permanent partial disability, and plaintiff has suffered and will continue to suffer extreme physical pain and discomfort, as well as great mental

7

anguish. Moreover, as a result of the debilitating injuries, the plaintiff has incurred and/or may incur substantial expenses for medical care and treatment.

WHEREFORE, the plaintiff demands judgment against the defendants, jointly and severally, in the full and just amount of Twenty Million Dollars ($20,000,000.00), plus interest and costs.

### COUNT II
#### (Strict Liability)

5.   Plaintiff adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further alleges that the illness, injury, and damages from which he suffers are a direct and proximate result of the design, manufacture, specification, inspection, sale, supply and/or distribution of asbestos-containing products, by the defendants named herein, which were defective and/or unreasonably dangerous to the user and/or consumer. The asbestos-containing products were defective and/or unreasonably dangerous in that they contained deleterious, toxic and carcinogenic asbestos fibers and because the products lacked any or adequate warnings about the hazards they posed. The asbestos-containing products were further designed as defective and/or unreasonably dangerous in that their intended use and maintenance contemplated that the asbestos materials would be disturbed, releasing inhalable asbestos fibers, and the product manuals or specification data specified replacement, from time to time, of worn out or damaged asbestos materials. The defendants named above are now or have been engaged in the business of designing, manufacturing, selling, inspecting, specifying in use and/or distributing asbestos-containing products. The asbestos products that caused injury to plaintiff reached him without substantial change in the condition in which they were sold. Plaintiff was unaware of the dangerous propensities of the asbestos products which rendered them unsafe and unfit for their intended use, and at the time he used these products, such use was anticipated by or should reasonably have been anticipated by the defendants.

6.   As a direct and proximate result of the strict liability of the defendants herein, the plaintiff has developed mesothelioma and other related pulmonary problems. Such injuries have caused the plaintiff's permanent total and/or permanent partial disability, and plaintiff has suffered and will continue to suffer extreme physical pain and discomfort, as well as great mental anguish. Moreover, as a result of the debilitating injuries, the plaintiff has incurred and/or may incur substantial expenses for medical care and treatment.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, in the full and just amount of Twenty Million Dollars ($20,000,000.00), plus interest and costs.

**COUNT III**
**(Breach of Warranty)**

7.     Plaintiff adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further alleges that the illness, injury, and damages from which he suffers are a direct and proximate result of the breach of express warranties made by the defendants herein, in that the asbestos products used by the plaintiff were expressly warranted as safe, and the plaintiff relied upon these express warranties of the defendants. However, the asbestos products as designed, manufactured, specified, inspected and distributed by the defendants herein were not safe for use by the plaintiff, but rather caused the disabling and potentially fatal injuries from which he now suffers.

8.     The illness, injury, and damages from which the plaintiff now suffers are a direct and proximate result of the breach of the implied warranty of fitness made by the defendants herein, in that the asbestos products used by the plaintiff were impliedly warranted by the defendants to be fit for their intended purposes and uses, and the plaintiff relied upon the defendants' skill and judgment and the implied warranties made by the defendants. However, the asbestos products as designed, manufactured, and distributed by the defendants herein were not fit for use of their intended purposes, but rather caused the disabling and potentially fatal injuries from which plaintiff now suffers.

9.     The illness, injury, and damages from which the plaintiff now suffers are a direct and proximate result of the breach of the implied warranty of merchantability made by the defendants named herein, in that the asbestos products used by the plaintiff were impliedly warranted by the defendants to be of merchantable quality, fit, safe, and in proper condition for the ordinary use for which asbestos products are designed and used, and the plaintiff relied upon the defendants' skill and judgment and the implied warranty of merchantability made by the defendants. However, the asbestos products as designed, manufactured, specified, inspected and distributed by the defendants named herein were unfit, unsafe, and unusable for the purposes for which they were intended, but rather caused the disabling and potentially fatal injuries suffered by the plaintiff.

10.     As a direct and proximate result of the breaches of warranty of the defendants named herein, the plaintiff has developed mesothelioma and other related pulmonary problems. Such

injuries have caused the plaintiff's permanent total and/or permanent partial disability, and plaintiff has suffered and will continue to suffer extreme physical pain and discomfort, as well as great mental anguish. Moreover, as a result of the debilitating injuries, the plaintiff may incur substantial expenses for medical care and treatment.

WHEREFORE, the plaintiff demands judgment against the defendants, jointly and severally, in the full and just amount of Twenty Million Dollars ($20,000,000.00), plus interest and costs.

## COUNT IV
### (Punitive Damages)

11.   Plaintiff hereby adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further alleges that the illness, injury, and damages which he suffered were a direct and proximate result of the conduct of the defendants named herein, either by clear and convincing acts of commission or omission, which were intentional and/or so reckless, willful, and wanton in nature as to rise to the level of intentional action by the defendants, exhibiting reckless indifference to the health and well-being of the plaintiff and other similarly situated workers, and in reckless disregard for the consequences the defendants knew or should have known would result from their actions.

12.   The illness, injury, and damages suffered by the plaintiff were a direct result of the conduct on the part of the defendants that amounted to fraudulent representation concerning the safety of working in an environment containing asbestos fibers, such representation having been made despite defendants' knowledge that these products and this work environment were wholly unsafe, dangerous, and hazardous to the health of the plaintiff and/or similarly-situated workers.

WHEREFORE, plaintiff demands judgment for punitive damages against all defendants, jointly and severally, in the full and just amount of Thirty Million Dollars ($30,000,000.00), plus interest and costs.

## COUNT V
### (Aiding and Abetting and Civil Conspiracy
### as to Defendant Metropolitan Life Insurance Company)

13.    Plaintiff adopts and incorporates by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

14.    Metropolitan Life Insurance Company, by various means encouraged, aided and abetted, and knowingly provided substantial assistance to the tortfeasor manufacturers, sellers, distributors, suppliers (hereafter "the direct perpetrators") whose asbestos products were substantial contributing factors to the development of plaintiff's mesothelioma and/or other asbestos-related injuries, diseases and conditions.

15.    The defendants, each and all of them, by various means agreed between and among themselves to engage and participate in the tortious conduct described above in the preceding counts of this Complaint.

16.    Metropolitan Life Insurance Company encouraged, aided and abetted, and knowingly provided substantial assistance to the direct perpetrators of the tortious conduct described herein, with knowledge of their role in that tortious conduct, in the following and other ways:  in the concealment, alteration, manipulation and suppression of knowledge and information about the dangers and health hazards of asbestos; in the publication of misleading, fraudulent and incorrect statements about the lack of any connection between asbestos exposure and various diseases; in the publication, use and dissemination of fake, misleading, fraudulent and incorrect statements about asbestos-containing products being "non-toxic," safe, not dangerous, not hazardous, contributing to the well-being of workers; in the decisions made by various direct perpetrators of the injuries to plaintiff not to test, study, research or investigate the dangers and health hazards of their asbestos-containing products; in deciding not to publicize, disclose, make public or otherwise warn about the dangers and health hazards of asbestos-containing products; in efforts to prevent the United States government and its employees, agencies, departments and organizations from taking steps to do research and publish on the dangers of asbestos and to restrict, ban, reduce, eliminate or regulate the use of asbestos-containing products.

17.    Metropolitan Life Insurance Company agreed and conspired in furtherance of a common scheme in the following and other ways:  in the concealment, alteration, manipulation and

11

suppression of knowledge and information about the dangers and health hazards of asbestos; in the publication of misleading, fraudulent and incorrect statements about the lack of any connection between asbestos exposure and various diseases; in the publication, use and dissemination of fake, misleading, fraudulent and incorrect statements about asbestos-containing products being "non-toxic," safe, not dangerous, not hazardous, contributing to the well-being of workers; in the decisions made by various direct perpetrators of the injuries to plaintiff not to test, study, research or investigate the dangers and health hazards of their asbestos-containing products; in deciding not to publicize, disclose, make public or otherwise warn about the dangers and health hazards of asbestos-containing products; in efforts to prevent the United States government and its employees, agencies, departments and organizations from taking steps to do research and publish on the dangers of asbestos and to restrict, ban, reduce, eliminate or regulate the use of asbestos-containing products.

18. As a direct and proximate result of the unlawful and tortious conduct engaged in by the direct perpetrators and Metropolitan Life Insurance Company, plaintiff has developed mesothelioma and other related pulmonary problems. Such injuries have caused the plaintiff's permanent total and/or permanent partial disability, and plaintiff has suffered and will continue to suffer extreme physical pain and discomfort, as well as great mental anguish. Moreover, as a result of the debilitating injuries, the plaintiff has incurred and/or may incur substantial expenses for medical care and treatment.

19. As a further direct and proximate result of the tortious conduct of the direct perpetrators and Metropolitan Life Insurance Company herein, the male plaintiff has suffered and will continue to suffer a loss of wages and/or wage-earning capacity and will continue to suffer great pecuniary loss in the future.

WHEREFORE, the plaintiff demands judgment against Metropolitan Life Insurance Company in the full and just amount of Twenty Million Dollars ($20,000,000.00), plus interest and costs.

## COUNT VI
### (Loss of Consortium)

20.     The female plaintiff, Doris Tyler, adopts by reference all relevant allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein, and further asserts that she is the wife of the male plaintiff.

21.     As a direct and proximate result of the negligence, strict liability, breaches of warranty of the defendants herein, the female plaintiff has incurred and/or may incur substantial expenses for the medical care and treatment of her husband, and has suffered and will continue to suffer the loss of consortium, society, and companionship of her husband.

WHEREFORE, the female plaintiff demands judgment against the defendants, jointly and severally, in the full and just amount of Twenty Million Dollars ($20,000,000.00), plus interest and costs.

Respectfully submitted,

Daniel A. Brown (Bar No. 444772)

BROWN & GOULD, LLP
7700 Old Georgetown Road, Suite 500
Bethesda, Maryland 20814
(301) 718-4548
Attorney for Plaintiff

JURY TRIAL REQUESTED:

Daniel A. Brown

*received*
*FEB 0 1 2010*
*Certified Pla*
*(Leslie Controls)*



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JOHN M. TYLER
Vs.
ALFA LAVAL, INC.

C.A. No.      2009 CA 009663 A

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.   Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge JOAN ZELDON
Date:   December 31, 2009
Initial Conference: 8:30 am, Thursday, May 06, 2010
Location:   Courtroom A-51
515 5th Street, N.W.
WASHINGTON, DC 20001

Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C, 20001 Telephone: 879-1133

JOHN M. TYLER and
DORIS TYLER              *Plaintiff*

vs.                                          Civil Action No. 0009663-09

ALFA LAVAL, INC., et al.,

                         *Defendant*

LESLIE CONTROLS, INC.
Serve: President/CEO
       12501 Telecom Drive
       Tampa, FL 33637

**SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Daniel A. Brown (#444772)
Name of Plaintiff's Attorney

Brown & Gould, 7700 Old GEorgetown Rd.     By
Address
      Ste. 500, Bethesda, MD 20814                    Deputy Clerk

                                            DEC 3 1 2009
      (301) 718-4548                        Date
Telephone

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

**NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.**

CV(6)-456/May 03

Filed
D.C. Superior Court
10 Mar 01 P06:43
Clerk of Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| JOHN M. TYLER and DORIS TYLER, his wife, | |
| Plaintiffs, | |
| vs. | Civil Action No. 2009 CA 009663 A |
| ALFA LAVAL, INC., et al., | |
| Defendants. | |

### <u>NOTICE OF PROOF OF SERVICE</u>

Plaintiff, through undersigned counsel, hereby provides Notice to this Court, pursuant to

S.C.R. - Civ. 4, of Proof of Service on the following defendants in the above referenced case:

ASCO Valves, Inc., Aurora Pump Co., A.W. Chesterton Co., Borgwarner Morse TEC Corp.,

ALFA LAVAL, Inc., Burns International Services Corp., BW/IP, Inc., Carver Pump Co., Elliott

Company, Carrier Corporation, Cooper US, Inc., Crane Co., CBS Corp., I.M.O. Industries, Inc.,

Crown Cork & Seal Co., Inc., Flowserve Corp., FMC Corp., Foster Wheeler Corp., Union Carbide

Corp., Goulds Pumps Corp., Honeywell, Inc., Gardner Denver, Inc., Garlock, Inc., General Electric

Company, Howden Buffalo, Inc., Ingersoll-Rand Company, John Crane, Inc., Leslie Controls, Inc.,

Metropolitan Life Insurance Co., WACO, Inc., Warren Pumps, LLC, Owens Illinois, Inc., Yarway

Corporation.  Plaintiff respectfully invites the Court's attention to the accompanying Affidavit of

Service submitted herewith.

Respectfully submitted,

/s/ Daniel A. Brown
Daniel A. Brown (#444772)
Brown & Gould, LLP
7700 Old Georgetown Road, Suite 500
Bethesda, MD 20814
(301) 718-4548
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served this 1st day of March to all parties electronically via CasefileXpress.

/s/ Daniel A. Brown
Daniel A. Brown

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

|  |
|---|
| JOHN M. TYLER and DORIS TYLER, his wife, |
| |
| Plaintiffs, |
| |
| vs. |
| |
| ALFA LAVAL, INC., et al., |
| |
| Defendants. |

Civil Action No. 2009 CA 009663 A

## AFFIDAVIT OF SERVICE

I, Kyle Donnellon, having been duly sworn at law depose and state as follows:

1.  I am a legal assistant at the law firm of Brown & Gould, LLP, 7700 Old Georgetown Road, Suite 500, Bethesda MD 20814.

2.  On January 29, 2010[1], I prepared and posted service of process by certified mail, return receipt, on various defendants in the above referenced case, including each of the following domestic corporate defendants:ASCO Valves, Inc., Aurora Pump Co., A.W. Chesterton Co., Borgwarner Morse TEC Corp., Buffalo Pumps, Inc., ALFA LAVAL, Inc., Burns International Services Corp., BW/IP, Inc., Carver Pump Co., Elliott Company, Carrier Corporation, Cooper US, Inc., Crane Co., CBS Corp., I.M.O. Industries, Inc., Crown Cork & Seal Co., Inc., Flowserve Corp., FMC Corp.,

---

[1] Service of process was posted on February 3, 2010 to Honeywell, Inc. and on February 9, 2010 to Yarway Corporation. On March 1, 2010 Metropolitan Life Insurance Co. acknowledged service of process.

Foster Wheeler Corp., Union Carbide Corp., Goulds Pumps Corp., Honeywell, Inc., Flowserve Corp. as Sucessor to Sier-Bath Gear & Pump Co., Gardner Denver, Inc., Garlock, Inc., General Electric Company, Howden Buffalo, Inc., Ingersoll-Rand Company, John Crane, Inc., Leslie Controls, Inc., Melrath Gasket, Inc., Metropolitan Life Insurance Co., WACO, Inc., Warren Pumps, LLC, Owens Illinois, Inc., Yarway Corporation.

A true copy of the Return Receipts of these defendants is attached hereto as Exhibit 1. [2]

3.   Each certified mailing that I prepared contained a copy of the Summons, Complaint and Initial Order for the above referenced case.

4.   The following defendants have not yet acknowledged service or responded to the Complaint:

| Defendant | Date of Service | Authorized Agent | Certified/Registered Article # |
|---|---|---|---|
| ASCO Valves, Inc. | 2/2/10 | President/CEO | 7009 0820 0000 2076 5527 |
| A.W. Chesterton Co. | 2/19/10 | President/CEO | 7009 0820 0000 2076 5824 |
| Borgwarner Morse TEC Corp. | 2/1/10 | President/CEO | 7009 0820 0000 2076 5541 |
| Burns International Services Corp. | 2/2/10 | President/CEO | 7009 0820 0000 2076 5725 |
| BW/IP, Inc. | 2/1/10 | President/CEO | 7009 0820 0000 2076 5770 |
| Cooper US, Inc. | 2/2/10 | CT Corporation System | 7009 0820 0000 2076 5787 |

---

[2] Service was not effectuated on Buffalo Pumps, Inc., or Melrath Gaskets, Inc.

2

| | | | |
|---|---|---|---|
| I.M.O. Industries, Inc. | 2/1/10 | Corporation Service Co. | 7009 0820 0000 2076 5503 |
| FMC Corp. | 2/2/10 | CT Corporation System | 7009 0820 0000 2076 5497 |
| Union Carbide Corp. | 2/1/10 | CT Corporation System | 7009 0820 0000 2076 5596 |
| Flowserve Corp. As Successor-in-Interest to Borg-Warner Corp. And Byron Jackson Pumps Co. [3] | 2/1/10 | President/CEO | 7009 0820 0000 2076 5473 |
| Gardner Denver, Inc. | 2/1/10 | President/CEO | 7009 0820 0000 2076 5459 |
| Warren Pumps, LLC | 2/1/10 | President/CEO | 7009 0820 0000 2076 5756 |
| Owens Illinois, Inc. | 2/1/10 | President/CEO | 7009 0820 0000 2076 5589 |
| Yarway Corp. | 2/?/10 | Yarway Corp. | 7009 0820 0000 2076 5817 |

The foregoing is true and correct to the best of my knowledge and information.

_Kyle Donnellon_ (signature)

Kyle Donnellon

---

[3] Flowserve Corp., in its separate capacity as Successor-in-Interest to Sier-Bath Gear and Pump Company, was dismissed from the case on February 22, 2010.

3

STATE OF MARYLAND          )
                           SS:
COUNTY OF MONTGOMERY       )

Subscribed and sworn to before me on this 1st day of March_____ 2010.

_____
Notary Public

My Commission Expires:

MELISSA GARVEY
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires May 24, 2010

4





**Top-right receipt**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Corporation Service Co.
I.M.C. Industries, Inc.
1090 Vermont Avenue, NW
Washington, DC 20005

COMPLETE THIS SECTION ON DELIVERY
A. Signature — ☐ Agent ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:
3. Service Type ☑ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7009 0820 0000 2076 5503
PS Form 3811, February 2004   Domestic Return Receipt

**Bottom-right receipt**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President / CEO
BW/IP, Inc.
5215 N. O'Connor Blvd
Irving, TX 75039

COMPLETE THIS SECTION ON DELIVERY
A. Signature — ☐ Agent ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:
3. Service Type ☑ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7009 0820 0000 2076 5770
PS Form 3811, February 2004   Domestic Return Receipt

**Top-left receipt**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corporation System
FMC Corp.
1015 15th St, NW, Ste. 1000
Washington, DC 20005

COMPLETE THIS SECTION ON DELIVERY
A. Signature — ☐ Agent ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:
3. Service Type ☑ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

Article Number (Transfer from service label): 7009 0820 0000 2076 5497
PS Form 3811, February 2004   Domestic Return Receipt

**Bottom-left receipt**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

CT Corporation System
Cooper US, Inc.
4701 Cox Road, Suite 301
Glen Allen, VA 23060-6802

COMPLETE THIS SECTION ON DELIVERY
A. Signature — ☐ Agent ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
FEB - 2 2010
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:
3. Service Type ☑ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

Article Number (Transfer from service label): 7009 0820 0000 2076 5787
PS Form 3811, February 2004   Domestic Return Receipt

## Card 1 (top left)

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President / CEO
Hamilton Beach / Proctor Silex
234 Springs DeKalb Street
Camden, SC 29020

2. Article Number
(Transfer from service label)
7009 0820 0000 2076 5480

PS Form 3811, February 2004   Domestic Return Receipt

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Connie Scott    2/11/2010

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

## Card 2 (top right)

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President,
Fastlock, Inc.
1666 Sunson Street
Palmyra, NY 14522

2. Article Number
(Transfer from service label)
7009 0820 0000 2076 5639

PS Form 3811, February 2004   Domestic Return Receipt

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
_____

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

## Card 3 (bottom left)

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

PRESIDENT / CEO
GARDNER DENVER, INC.
1800 GARDNER EXPRESSWAY
QUINCY, IL 62305

2. Article Number
(Transfer from service label)
7009 0820 0000 2076 5459

PS Form 3811, February 2004   Domestic Return Receipt

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X Chris Stamer   ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Chris Stamer    02.01.10

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

## Card 4 (bottom right)

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C.T. Corporation System
Union Carbide Corp.
1025 Vermont Ave. NW
4th Floor
Washington DC 20005

2. Article Number
(Transfer from service label)
7009 0820 0000 2076 5596

PS Form 3811, February 2004   Domestic Return Receipt

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
_____

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

## Top-left card

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Yarway Corp.
116 Pine Street, Ste. 320
Harrisburg, PA 17101

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7009 0820 0000 2076 5817

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

## Top-right card

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President / CEO
Warren Pumps LLC
82 Bridge Avenue
P.O. Box 969
Warren, MA 01083

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Roy Bacon

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7009 0820 0000 2076 5756

Domestic Return Receipt   102595-02-M-1540

## Bottom-left card

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

President / CEO
Oueno Illinois Inc.
One Michael Owens Way
Perrysburg, OH 43551-2999

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

Article Number (Transfer from service label)
7009 0820 0000 2076 5589

S Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

## Bottom-right card

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

President
Raiway Co.
100 First Stamford Place
Stamford, CT 06902

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

Article Number (Transfer from service label)
7009 0820 0000 2076 5640

Domestic Return Receipt   102595-02-M-1540

**Card 1 (top left)**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CT Corporation System
Career Corporation
1015 15th St., NW, Ste 1000
Washington, DC 20005

COMPLETE THIS SECTION ON DELIVERY
A. Signature  X ☐ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7009 0820 0000 2076 5671

PS Form 3811, February 2004   Domestic Return Receipt

**Card 2 (top right)**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President / CEO
John Crane, Inc.
6400 Oakton Street
Morton Grove, IL 60053

COMPLETE THIS SECTION ON DELIVERY
A. Signature  X ☐ Agent ☐ Addressee
B. Received by (Printed Name) NANCY GRUENINGER  C. Date of Delivery  FEB 2
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7009 0820 0000 2076 5732

PS Form 3811, February 2004   Domestic Return Receipt

**Card 3 (bottom left)**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

President / CEO
Floraseuse Corp.
5215 N. O'Connor Blvd.
Suite 2300
Irving TX 75039

COMPLETE THIS SECTION ON DELIVERY
A. Signature  X ☐ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

Article Number (Transfer from service label)
7009 0820 0000 2076 5473

PS Form 3811, February 2004   Domestic Return Receipt

**Card 4 (bottom right)**

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

C.S.C. Lawyers Incorporating Serv. Co.
Honeywell International, Inc.
7 St. Paul St.
Suite 1660
Baltimore, Md. 21202

COMPLETE THIS SECTION ON DELIVERY
A. Signature  X ☐ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes ☐ No
If YES, enter delivery address below:

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.
4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7009 0820 0000 2076 5517

PS Form 3811, February 2004   Domestic Return Receipt



**Top-left card:**

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President / CEO
Goulds Pumps Inc.
P.O. Box 330
Seneca Falls, NY 13148

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ □ Agent □ Addressee

B. Received by (Printed Name)   C. Date of Delivery
E. Darling

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below: □ No

3. Service Type
☑ Certified Mail  □ Express Mail
□ Registered  ☑ Return Receipt for Merchandise
□ Insured Mail  □ C.O.D.

4. Restricted Delivery? (Extra Fee)  □ Yes

2. Article Number
(Transfer from service label)   7009 0820 0000 2076 5794

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**Bottom-left card:**

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President / CEO
Ingersoll-Rand Company
155 Chestnut Ridge Road
P.O. Box 445
Montvale, NJ 07645

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ □ Agent □ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below: □ No

3. Service Type
☑ Certified Mail  □ Express Mail
□ Registered  ☑ Return Receipt for Merchandise
□ Insured Mail  □ C.O.D.

4. Restricted Delivery? (Extra Fee)  □ Yes

2. Article Number
(Transfer from service label)   7009 0820 0000 2076 5602

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**Top-right card:**

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jack G. Doane
Vice President & Sec'y
Foster Wheeler Corp.
Perryville Corporate Park
Clinton, NJ 0889-4000

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ □ Agent □ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below: □ No

3. Service Type
☑ Certified Mail  □ Express Mail
□ Registered  ☑ Return Receipt for Merchandise
□ Insured Mail  □ C.O.D.

4. Restricted Delivery? (Extra Fee)  □ Yes

2. Article Number
(Transfer from service label)   7009 0820 0000 2076 5633

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**Bottom-right card:**

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President / CEO
Aurora Pump Company
800 Airport Road
North Aurora, IL 60542

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ □ Agent □ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below: □ No

3. Service Type
☑ Certified Mail  □ Express Mail
□ Registered  ☑ Return Receipt for Merchandise
□ Insured Mail  □ C.O.D.

4. Restricted Delivery? (Extra Fee)  □ Yes

2. Article Number
(Transfer from service label)   7009 0820 0000 2076 5571

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540



**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Corporation Trust, Inc
Elliott Company Street
351 West Camden Street
Baltimore, Md 21201

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X _PAUL SIMON_   ☐ Agent  ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7009 0820 0000 2076 5695

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

President / CEO
Deerco Pump Company
2415 Park Avenue
Due northern IA 52761-5691

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X Jane J. Shurtleff   ☐ Agent  ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
JANE F THEOBALD  02-01-10
D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7009 0820 0000 2076 5688

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
_Domestic Mail Only; No Insurance Coverage Provided._
For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

|  |  |
|---|---|
| Postage | $ 1.39 |
| Certified Fee | 2.80 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) |  |
| Total Postage & Fees | $ 6.49 |

Sent To  C T Corporation System
Street, Apt. No.; or PO Box No.  ALFA LAVAL, INC.
1015 15th St. NW   Ste 1000
City, State, ZIP+4  Wash. DC 20005

PS Form 3800, August 2006   See Reverse for Instructions

7009 0820 0000 2076 5512

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CSC Network
CBS Corp.
1090 Vermont Ave, NW
Washington DC 20005

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X _Nancy Dutton_   ☐ Agent  ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery
Nancy Dutton  2/2/10
D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)
7009 0820 0000 2076 5701

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

Filed
D.C. Superior Court
10 Mar 01 P05:11
Clerk of Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| JOHN M. TYLER and | § | |
| DORIS TYLER, His Wife, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. |
| | § | 2009 CA 009663 A |
| v. | § | |
| | § | |
| ALFA LAVAL, INC. et al., | § | |
| | § | |
| Defendants. | § | |

### OWENS-ILLINOIS, INC'S NOTICE OF INTENT TO PURSUE CROSS-CLAIMS FOR CONTRIBUTION AGAINST SETTLED, DISMISSED AND REMAINING DEFENDANTS

Owens-Illinois, Inc. intends to pursue cross claims, against all defendants identified in Plaintiffs' Complaint(s) and/or Amended Complaint(s), incorporated by reference herein, whether that party has settled, been dismissed by Plaintiffs, or is added to the case after the filing of this Notice of Intention to Pursue Cross-Claims, and all defendants (including cross, third, and/or fourth party) remaining in the above case that comprise this trial group at the time of trial.

Owens-Illinois, Inc. also reserves and pursues all rights to assert appropriate pro rata and pro tanto reductions by virtue of Plaintiffs' claims or settlement with any bankrupt entity, or any trust administering asbestos claims and liabilities.

Respectfully submitted,

/s/ Steven A. Luxton
Steven A. Luxton
D.C. Bar No. 470468
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-5452

ATTORNEYS FOR DEFENDANT
OWENS-ILLINOIS, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **March 1, 2010**, a true and correct copy of the foregoing document was served on all counsel of record by electronic submission via CaseFileXpress.

/s/ Steven A. Luxton
Steven A. Luxton

Filed
D.C. Superior Court
10 Mar 01 P05:09
Clerk of Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

JOHN M. TYLER and         §
DORIS TYLER, His Wife,       §
                               §
      Plaintiffs,            §      Civil Action No.
                               §      2009 CA 009663 A
v.                             §
                               §
ALFA LAVAL, INC. et al.,     §
                               §
      Defendants.          §

## OWENS-ILLINOIS, INC.'S DESIGNATION OF FACT & EXPERT WITNESSES, DEPOSITION TESTIMONY and TRIAL EXHIBITS

Owens-Illinois, Inc. ("Owens-Illinois") has made every effort to designate the witnesses, deposition testimony, and exhibits that may be used in the trial of this case. However, discovery in this case is not complete, and Owens-Illinois reserves the right to further supplement this designation. Moreover, these designations do not include demonstrative exhibits or rebuttal testimony or exhibits, nor do these designations include all exhibits that may be necessary for cross-examination of plaintiffs' witnesses.

Owens-Illinois reserves the right to remove any witnesses, deposition transcripts, or exhibits from its designations. Owens-Illinois also reserves the right to supplement these lists and add additional witnesses, deposition transcripts, or exhibits in response to any designations made or further information provided by plaintiff.

1

Owens-Illinois designates its witnesses, deposition testimony, and trial exhibits as follows:

       Exhibit 1:    Expert and Fact Witnesses

       Exhibit 2:    Deposition Testimony

       Exhibit 3:    Exhibit List

Respectfully submitted,

*/s/ Steven A. Luxton*
Steven A. Luxton
D.C. Bar No. 470468
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-5452

ATTORNEYS FOR DEFENDANT
OWENS-ILLINOIS, INC.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on **March 1, 2010**, a true and correct copy of the foregoing document was served on all counsel of record by electronic submission via CaseFileXpress.

*/s/ Steven A. Luxton*
Steven A. Luxton

2

# EXHIBIT 1

## OWENS-ILLINOIS, INC.'S
## DESIGNATION OF EXPERT AND FACT WITNESSES

### EXPERT WITNESSES

1.  Dr. Stephen M. Ayres
    Medical College of Virginia
    International Medical Studies
    Box 980549
    Richmond, VA 23298-0001
    (804) 288-4699

Dr. Ayres is a pulmonary specialist.  He may testify as to all matters pertaining to the history of scientific knowledge, research and study concerning exposure to asbestos and its effects on the human body, as to all state of the art issues, as to his expert opinion as to safe levels of asbestos exposure and the basis for such opinions, as to exposure to asbestos in regards to development of respiratory diseases, including but not limited to asbestosis, lung cancer, and mesothelioma, and as to the effects of exposure to the chrysotile fiber and other asbestos fibers.  Dr. Ayres may testify about the Saranac Laboratory studies of Kaylo, including the significance of the methodology of the studies, the results of the studies, and the conclusions of the studies.  This defendant believes that he will testify that Saranac documents did not advise Owens-Illinois that the TLV of five million particles per cubic foot of air was unreliable, that the Saranac Laboratory did not advise Owens-Illinois to discontinue the manufacture or sale of Kaylo, that Saranac did not advise Owens-Illinois to remove asbestos from its products, that Saranac did not advise Owens-Illinois that insulators or end users were at risk of contracting asbestos related disease, and that Saranac did not advise Owens-Illinois to warn insulators or end users.  He may also testify that it was believed that at that time individuals who were exposed to asbestos dust levels below the threshold limit value of five million particles per cubic foot were not at risk of contracting asbestos related disease.  The opinions of Dr. Ayres are based upon his training and experience, and his extensive review of the Saranac documents and the deposition of Willis Hazard.  His opinions are set forth in depositions and transcripts of testimony he has given at trial, copies of which this defendant believes are in the possession of plaintiff's counsel.

2.  Dr. Michael J. Warhol
    Chairman of Pathology
    Pennsylvania Hospital
    University of Pennsylvania Health Systems
    800 Spruce Street
    Philadelphia, Pennsylvania 19107
    (215) 829.3000

3

Dr. Warhol, if called to testify, are expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Warhol, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed. Dr. Warhol may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

3.  Dr. Brian B. Bradley
    Lung Center Associates, P.A.
    4003 Woodlawn
    Pasadena, TX  77504
    (713) 941-0088

Dr. Bradley is a medical doctor and board certified in the areas of internal medicine, pulmonary medicine, preventative medicine, occupational medicine, and geriatrics. He will testify about the medical condition of the patient and about asbestos-related disease. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

4.  Victor L. Roggli, M.D.
    Duke University Medical Center
    Department of Pathology
    Box 3712
    Durham, NC 27710
    919/286-0411

Dr. Roggli, if called to testify, are expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Roggli, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed. Dr. Roggli may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

5.    Dr. Philip Cagle
      Department of Pathology
      Baylor College of Medicine
      One Baylor Plaza
      Houston, TX 77030
      (713) 790-2376

Dr. Cagle, if called to testify, are expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between

DB1/64473004.1

pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Cagle, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed. Dr. Cagle may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

6.    Dr. Gregory Foster
      North Texas Pulmonary Associates
      375 Municipal Drive, Suite 140
      Richardson, TX  75080
      (972) 680-0666

Dr. Foster may testify concerning the examination and diagnosis of the physical condition of Plaintiffs and concerning the overall condition and relationship of that condition, if any, to Plaintiffs' alleged exposure to asbestos.

Dr. Foster may also testify concerning the anatomy and function of the respiratory and circulatory system, the nature of asbestos, the disease process and diagnosis of asbestos and cancer associated with the respiratory system, the nature and extent of medical and scientific knowledge regarding the association of pulmonary disease with asbestos fiber exposure, the effect of exposure to substances other than asbestos on the development or manifestation of obstructive and restrictive conditions and diseases particularly in means of establishing the differential diagnosis of alleged asbestos diseases with other government warnings, smoking and other areas of the state-of-the-art, incidents of lung cancer among individuals with asbestosis compared with non-asbestos exposed workers and with the general population, and cigarette smoking and its effects on the lungs. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

7.    Dr. Sam H. Cade, Jr.
      Radiology Department
      Baylor University Medical Center
      3600 Gaston Avenue
      Dallas, TX  75246
      (214) 820-0111

6

Dr. Cade is a B reader and will testify regarding the radiographs of the plaintiff and/or plaintiff's decedent.

8.     Dr. David Garabrant
        1420 Washington Heights
        Room 6017
        Ann Arbor, MI  48109-2029
        (734) 668-0381 (home)

Dr. Garabrant is a medical doctor.  He may testify regarding matters relating to epidemiology of asbestos-related diseases in steel workers.  He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

9.     Barry Gordon, M.D., Ph.D.
        Department of Neurology & Cognitive Science
        The Johns Hopkins University
        Baltimore, MD
        (410) 325-4200

Dr. Gordon is Professor of Neurology and Cognitive Science at The John Hopkins University.  He is also the director of The Memory Clinic at Johns Hopkins.  Dr. Gordon will testify about what is scientifically known about memory.  In particular, he will discuss various factors that need to be taken into account in determining whether alleged "memories" are likely to be correct, how memories are altered, distorted, and even constructed, and the relationship between confidence in a memory and the accuracy of that memory.

10.     Dr. Peter Heidbrink
        Southwest Pulmonary Associates
        St. Paul Professional Building #2
        5959 Harry Hines Blvd., Suite 711
        Dallas, TX 75235
        (214) 879-6555

Dr. Heidbrink is a specialist in the area of respiratory diseases.  Dr. Heidbrink may testify as to all matters pertaining to his examination of the plaintiff and plaintiff's medical records; any communications with the plaintiff or plaintiff's family; review of x-rays of the plaintiff; the diagnostic criteria used to diagnose asbestosis; his opinion as to whether plaintiff suffers from asbestos related disease and the basis for such opinion; the plaintiff's current medical condition and his prognosis in regard to the plaintiff's medical condition.  He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

7

11.     Dr. Robert M. O'Neal
        1910 King Bee Road
        Perkinston, MS 39573

        Dr. O'Neal may testify regarding general pathology and the pathology of the plaintiff
        and/or plaintiff's decedent. He may testify regarding cause of medical condition and
        whether the extent to which plaintiffs' particular exposures to asbestos-containing
        materials caused his/her injury.

12.     Dr. Joseph Cimino
        New York Medical College
        50 Willard Avenue
        North Tarryton, NY 10591
        (914) 993-4253

        Dr. Cimino is presently Professor and Chairman of the Department of Community and
        Preventive Medicine, New York Medical College, Valhalla, New York. Dr. Cimino may
        be expected to testify generally about research in the area of pulmonary pathology and
        about the process by which medical knowledge evolved. He may also be expected to
        testify regarding the state of medical knowledge from the early part of the century to the
        middle 1960's as it regards pathological changes due to exposure to asbestos and about
        his conclusions regarding the studies conducted for Owens-Illinois, Inc. by the Saranac
        Laboratories as they related to the state of medical knowledge at that time. This
        defendant believes that Dr. Cimino is of the opinion that prior to the 1960's the state of
        the medical art was that exposure to large amounts of asbestos over an extended period of
        time could cause asbestosis; however, there was an accepted, safe level of exposure
        below which there was no risk of harm; that this level was accepted by the medical and
        scientific community; and that there was no acceptance of a link between asbestosis and
        mesothelioma or any form of cancer until the 1960's. The opinions of Dr. Cimino are
        based upon his training in medicine, his extensive professional qualifications, his
        research in pulmonary pathology and his review of the relevant medical literature. He
        may testify regarding cause of medical condition and whether the extent to which
        plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

13.     Dr. John E. Craighead
        Dept. of Pathology
        University of Vermont
        College of Medicine
        Burlington, VT 05405
        (802) 656-8846

        Dr. Craighead, if called to testify, are expected to provide testimony concerning the
        anatomy and function of the respiratory and circulatory systems; examinations conducted
        and opinions regarding tissue samples of decedents; the symptomatology, disease process
        and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and
        peritoneal cavity; the nature and extent of medical and scientific knowledge regarding

any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Craighead, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos.  He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed.  Dr. Craighead may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally.  He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

14.     Dr. George L. Delclos
        6550 Fannin, #2403
        Smith Tower
        Houston, TX  77030
        (713) 790-6250

Dr. Delclos is a medical doctor.  He may testify about the medical condition of the plaintiffs and/or plaintiffs' decedents and about asbestos-related diseases in general.  He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

15.     Horton Corwin Hinshaw, Sr.
        Retired Emeritus Professor of Medicine
        University of California
        School of Medicine
        P. O. Box 546
        Belvedere, CA  94920
        (415) 435-9512

Dr. Hinshaw will testify about the state of the scientific and medical knowledge concerning asbestos.  Included in his testimony will be discussion of the respiratory system, asbestos-related diseases, and the effect of other substances on the respiratory system.

9

16.     James E. Lockey, M.D., M.S.
        Institute of Environmental Health
        University of Cincinnati Medical Center, Clinical Studies Division
        5251 Medical Science Building
        M.L. 182, 231 Bethesda Avenue
        Cincinnati, OH 45267-0182
        (513) 558-0030

        Dr. Lockey will testify concerning the state of the available medical knowledge regarding
        asbestos-related disease at the relevant historical periods of time. His opinions are set
        forth in depositions and transcripts of testimony he has given at trial, copies of which this
        defendant believes are in the possession of plaintiff's counsel.

17.     Dr. William K. C. Morgan
        Director, Chest Diseases Unit
        University Hospital
        University of Western Ontario
        P. O. Box 5339, Postal Station A
        London, Ontario N6A 5A5 Canada
        (519) 663-3000

        Dr. Morgan will testify concerning the state of the available medical knowledge
        regarding asbestos-related disease at the relevant historical periods of time. (If Dr.
        Morgan is unavailable to testify live, testimony may be by transcription taken December
        18, 1990 in the trial of Faye Skadan and Joseph Walters, Case Nos. H-93455 and
        H-89278 in the Supreme Court of the State of New York, Eight Judicial District.)

18.     Henry C. Field, M.S.
        1304 Wren Place
        Virginia Beach, VA

        Mr. Field will testify about the subject of naval architecture as to U.S. Naval vessel
        construction, overhaul, repair and maintenance. He is familiar with Navy manuals and
        specifications for construction and overhaul and repair of U.S. Navy vessels. He is
        knowledgeable concerning the use of asbestos-containing materials on board ship, work
        practices regarding the use of insulation products and the types of asbestos products
        required by various Navy specifications and manuals. He is familiar with and will testify
        concerning Navy and military specifications for the types and quantities of materials used
        in naval construction and repair including insulational materials. He also will testify as to
        the specifications, including types and grades, which Kaylo pipe covering and block met
        and the Navy testing procedures and test results related to the approval of products to be
        used on naval vessels, including those related to Kaylo.

19.     A. Mitchell Polinsky

DB1/64473004.1

Stanford University
Professor of Law and Economics
Crown Quadrangle
Stanford, CA  94306-8610
(650) 723-2300

Dr. Polinsky is an expert who will testify about the inappropriateness of punitive damages in this and similar cases based upon research he and others have conducted.

20.   Keith R. Benson, Ph.D.
      2915 Connecticut Avenue, NW #407
      Washington, D.C. 20008
      206.543.6358

Professor Benson is a historian of the life sciences with a special interest in 20th century American science.  He is currently a Program Officer at the National Science Foundation and is on the faculty of University of California (San Diego), Oregon State University and retired from the University of Washington.

He is expected to testify concerning the history of medicine, science and technology as relevant to asbestos-related diseases.  He also may testify concerning the history of industrial hygiene in the context of public health, the history of warnings, and other state-of-the-art matters.  Finally, he will testify as to Owens-Illinois' actions in the context of the relevant time periods.

21.   Dr. Lewis Solmon
      Associate Dean
      Graduate School of Education
      U.C.L.A., 308 Moore Hall
      Los Angeles, CA  90024
      (310) 825-8326

Dr. Solmon is an expert who will testify about the historical sales and market shares of asbestos insulation manufacturers.

22.   Dr. Paul Stevens
      Professor of Medicine
      Baylor College of Medicine
      6516 Bernter
      Houston, TX  77030
      (713) 798-4951

Dr. Stevens is a specialist in the area of respiratory diseases.  Dr. Stevens will testify as to all matters pertaining to his examination of the plaintiff and plaintiff's medical records; any communications with the plaintiff or plaintiff's family; review of x-rays of the plaintiff; the diagnostic criteria used to diagnose asbestosis; his opinion as to whether

11

plaintiff suffers from asbestos related disease and the basis of such opinion; the plaintiff's current medical condition and his prognosis in regard to the plaintiff's medical condition.

23.   Dr. Harry Demopoulos
      New York University Medical Center
      550 First Avenue
      New York, NY 10016
      (212) 340-6314

Dr. Demopoulos will testify about the state of the scientific and medical knowledge concerning asbestos.    Included in his testimony will be discussion of the respiratory system, asbestos-related diseases, and the effect of other substances on the respiratory system.

24.   Dr. Hans Weill
      Tulane University
      School of Medicine
      1700 Perdido Street, 2nd Floor
      New Orleans, LA 70112
      (504) 588-5265

Dr. Weill is a pulmonary disease specialist.   Dr. Weill will testify to all matters pertaining to scientific knowledge, research and study in regards to exposure to asbestos and its effects on the human body; as to the latency periods of asbestos related diseases; as to the various types of asbestos fibers and their effects on the human body; as to the effects of exposure of the chrysotile fiber in regard to asbestos related diseases; scientific criteria used to diagnose respiratory diseases, including but not limited to asbestos, lung cancer, mesothelioma; as to all matters pertaining to the plaintiff's medical condition; as to all state of the art issues. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

25.   Dr. Gary K. Friedman
      6411 Fannin
      Occupational Environmental Health Clinic
      1st Floor
      Jones Pavilion
      Houston, Texas 77030

Dr. Friedman is a pulmonologist, internal-medicine specialist, and occupational disease specialist.   Dr. Friedman may testify about the pathogenesis of asbestos-related diseases as well as the diagnosis of such diseases.   Dr. Friedman may testify about the plaintiff's respiratory health including the presence or absence of occupational lung diseases, non-occupational respiratory conditions, and asbestos-related conditions.   Dr. Friedman will base his testimony on his education, knowledge, experience, and research.   He will base his testimony on an examination of plaintiffs' chest x-rays, pulmonary function tests,

12

medical records, and any other of plaintiff's medical materials. Dr. Friedman will also base his opinion on medical and scientific literature. Dr. Friedman may testify about pulmonary function testing, ILO and other interpretations of chest radiographs, epidemiological considerations of asbestos disease, and screening procedures for asbestos-related disease. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

26.     Dr. R. Keith Wilson
        Pueblo Pulmonary Associates
        1925 Orman, Suite 254
        Pueblo, CO 81004
        (719) 564-1542

Dr. Wilson is a specialist in the area of respiratory diseases. Dr. Wilson will testify as to all matters pertaining to his examination of the plaintiff and plaintiff's medical records; any communications with the plaintiff or plaintiff's family; review of x-rays of the plaintiff; the diagnostic criteria used to diagnose asbestosis; his opinion as to whether plaintiff suffers from asbestos related disease and the basis for such opinion; the plaintiff's current medical condition and his prognosis in regard to the plaintiff's medical condition. His opinions are set forth in depositions and transcripts of testimony he has given at trial, copies of which this defendant believes are in the possession of plaintiff's counsel. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

27.     Dr. Robert Ross
        17030 Nanes Drive
        Suite 214
        Houston, TX 77090
        (713) 440-8851

Dr. Ross is a specialist in the area of respiratory diseases. Dr. Ross is also a NIOSH certified B-Reader and will testify as to all matters pertaining to his examination of the plaintiff and plaintiff's medical records; any communications with the plaintiff or plaintiff's family; review of x-rays of the plaintiff; the diagnostic criteria used to diagnose asbestosis; his opinion as to whether plaintiff suffers from asbestos related disease and the basis for such opinion; the plaintiff's current medical condition and his prognosis in regard to the plaintiff's medical condition. His opinions are set forth in depositions and transcripts of testimony he has given at trial, copies of which this defendant believes are in the possession of plaintiff's counsel. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

28.     Dr. Gail Stockman

DB1/64473004.1

701 E. Marshall, Suite 502
Longview, TX 75601
(903) 753-0787

Dr. Stockman may also testify concerning the anatomy and function of the respiratory and circulatory system, the nature of asbestos, the disease process and diagnosis of asbestos and cancer associated with the respiratory system, the nature and extent of medical and scientific knowledge regarding the association of pulmonary disease with asbestos fiber exposure, the effect of exposure to substances other than asbestos on the development or manifestation of obstructive and restrictive conditions and diseases particularly in means of establishing the differential diagnosis of alleged asbestos diseases with other government warnings, smoking and other areas of the state-of-the-art, incidents of lung cancer among individuals with asbestosis compared with non-asbestos exposed workers and with the general population, and cigarette smoking and its effects on the lungs. Dr. Stockman may testify concerning the examination and diagnosis of the physical condition of Plaintiffs and concerning the overall condition and relationship of that condition, if any, to Plaintiffs' alleged exposure to asbestos.

Dr. Stockman will testify concerning state of the scientific and medical art in the history and knowledge of asbestos-related diseases and asbestos-related diseases in general, and the medical condition of plaintiffs, epidemiology and general medicine regarding asbestos exposure. She may also provide opinions on the probable time period(s) of asbestos exposure with relation to the causation of the disease mesothelioma. In doing so, she will also provide percentages of probability of causation for exposure to asbestos from first exposure to last exposure. As a basis for opinion, she will rely in part upon scientific papers published by Peto, Seidman and Selikoff, Morgan and Lampshear, among others. Dr. Stockman may also testify regarding the state of scientific and medical knowledge during the time asbestos was used commercially in high temperature insulation products. She may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

29.   Kenneth J. Boudreaux, Ph.D.
      Consulting Economist
      A.B. Freeman School of Business
      Tulane University, 1424 Bordeaux
      New Orleans, LA 70115
      (504) 865-5471

      Dr. Boudreaux is an economic consultant and may testify regarding the economic loss incurred by the death of a plaintiff.

30.   Peter Neushul, Ph.D.
      Visiting Researcher
      Department of History
      University of California

14

Santa Barbara, CA 93106
805.968.4153

Peter Neushul, Ph.D is a historian, engaged in teaching and consulting work in the History of Science, Technology and Medicine.

Dr. Neushul is expected to testify concerning state-of-the-art and the development of knowledge regarding asbestos, asbestos-containing products, asbestos exposure and asbestos-related diseases. He will testify about the health and safety issues surrounding the use of asbestos containing products in the 1940s-1960s. He will testify regarding his historical knowledge and research regarding cigarette smoking, other occupational lung diseases and other health issues relating to plaintiffs alleged asbestos-related disease in this case. He will testify about the different types of asbestos fiber generally, his historical knowledge regarding the health consequences of exposure to the various types of asbestos fiber, and specifically about the types of asbestos fiber used at various points in time during the manufacture of Kaylo. He will testify about the history of science and technology applicable to these cases, and the cultural history of the United States as applicable to these cases, including the prevalence and nature of product and other warnings during various periods of time. He may also testify to the availability, or lack thereof, of substitutes for asbestos in high temperature/thermal insulating products, including efforts by O-I to find a non-asbestos substitute for use in Kaylo. He will testify about the source and development of threshold limit values (TLVs) for asbestos exposure. He also will testify about Owens-Illinois' actions regarding asbestos and asbestos-containing products in the 1940's and 1950's, including the Saranac Lake documents, among other things. He will testify about his review and opinions regarding Owens-Illinois and other company documents listed on the plaintiffs and Owens-Illinois's exhibit lists in these cases, and about prior testimony of former Owens-Illinois employees. He may also testify concerning his investigation of worksites where the plaintiff worked, his findings regarding the asbestos-containing and other products used at these work sites, any documents he obtained in his investigation and other relelvant worksite-related and exposure-related issues regarding the plaintiffs in this case, and his understanding of the historical context of all such matters, including pertinent information regarding asbestos and health known by or available to plaintiffs employers and premises owners where plaintiffs claim exposure to asbestos containing products. He will also testify regarding the history of Owens-Illinois's manufacturing and use of asbestos and its knowledge regarding asbestos and health consequences of exposure to asbestos. He may also testify regarding his review of discovery and testimony in this case, and regarding other asbestos-containing products and their manufacturers through his review of discovery responses and prior testimony. His opinions are set forth in transcripts of prior testimony he has given, copies of which this defendant believes are in the possession of plaintiffs' counsel.

31.    Mr. John Sartain

15

Consulting Economist
Sartain & Company
3811 Turtle Creek Centre, Suite 760
Dallas, TX  75219
(214) 521-0760

Mr. Sartain is an economic consultant and may testify regarding the economic loss incurred by the death of a plaintiff.

32.     Dr. Scott R. Donaldson
        North Texas Pulmonary Associates
        375 Municipal Drive
        Suite 140
        Richardson, TX  75080
        (972) 680-0666

Dr. Donaldson may also testify concerning the anatomy and function of the respiratory and circulatory system, the nature of asbestos, the disease process and diagnosis of asbestos and cancer associated with the respiratory system, the nature and extent of medical and scientific knowledge regarding the association of pulmonary disease with asbestos fiber exposure, the effect of exposure to substances other than asbestos on the development or manifestation of obstructive and restrictive conditions and diseases particularly in means of establishing the differential diagnosis of alleged asbestos diseases with other government warnings, smoking and other areas of the state-of-the-art, incidents of lung cancer among individuals with asbestosis compared with non-asbestos exposed workers and with the general population, and cigarette smoking and its effects on the lungs. Dr. Donaldson may testify concerning the examination and diagnosis of the physical condition of Plaintiffs and concerning the overall condition and relationship of that condition, if any, to Plaintiffs' alleged exposure to asbestos.

Dr. Donaldson will testify concerning state of the scientific and medical art in the history and knowledge of asbestos-related diseases and asbestos-related diseases in general, and the medical condition of plaintiffs, epidemiology and general medicine regarding asbestos exposure. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

33.     Dohrman H. Byers
        12060 Lawnview Avenue, #6
        Cincinnati, OH  45246
        (513) 671-3762

16

(Mr. Byers' testimony will be presented by way of deposition taken on October 21, 1985, in Brandt v. Owens-Illinois, Inc., Case No. 605-147, Milwaukee Circuit Court, Wisconsin.) Mr. Byers testified as to the interpretation and application of the Threshold Limit Value by the U.S. Public Health Service.

34.    Michael J. Wagner
       Price Waterhouse
       Century City, CA

Mr. Wagner will testify about the financial aspects of defendant's business in any punitive damages portion of trial.

35.    Herbert E. Walter, II
       Price Waterhouse
       3110 Fairview Park Drive
       Falls Church, VA  22042
       (703) 538-7982

Mr. Walter will testify about the financial aspects of defendant's business in any punitive damages portion of trial.

36.    Douglas P. Fowler, Ph.D., CIH
       Fowler & Associates
       Occupational and Environmental Health Services
       Bayport Marina Plaza
       643 Bair Island Road, Ste. 303
       Redwood, California 94063
       (650) 369-3955

Dr. Fowler is an industrial hygienist. He may testify about levels of asbestos exposure experienced in various occupations and trades, the fiber emitting propensities of products other than Owens-Illinois, Inc.'s Kaylo, levels of exposure experienced by different occupations, factors affecting levels of exposures, and industrial hygiene practices. Dr. Fowler may be called upon in specific cases to do a retrospective exposure analysis to determine the likely levels of asbestos exposure, if any, experienced by particular plaintiffs and/or plaintiffs' decedents. Dr. Fowler may testify as to the state of the art during the 1940's, 1950's, and 1960's, and as to the hazards associated with use of asbestos containing products. He may testify regarding the state of premises owners. He may testify about his knowledge of the processes scientific and medical knowledge during the time asbestos was used commercially in high temperature insulation products. He may research the work sites of plaintiff in this case, review discovery responses and any testimony in this case, may research other companies' products at issue in this case, may conduct interviews of relevant people knowledgeable about plaintiffs work sites and alleged exposure to asbestos in this case, and may offer his opinions on all of these areas.

17

Dr. Fowler may testify about the reasonable nature of the corporate response of any entity in this case or others similarly situated concerning the potential hazards of asbestos in products or their usage by employers or involved in construction and federal and state standards applicable to employers, contractors and premises owners.  He may testify concerning the potential hazards of different types of asbestos and/or asbestos-containing products and, when such hazards were known or knowable by different segments of trade and industry.  He may testify about industrial hygiene publications and literature from the 1940s to the present.  He may also testify about the concept of dose-response, the evolution and use of threshold limit values and the knowledge that product manufacturers, employers and premises owners had available to them during certain time periods.  He may also testify regarding relative risk and OSHA risk models.  He may testify about the nature of the working environments and the control and use of substances in such locations.  He may testify about the size, construction, layout and working environment of facilities where the plaintiff worked.  The witness may testify about the appropriateness of any company's policies, procedures or actions with respect to health and safety and the significance of asbestos to those health and safety concerns.  He may testify that company actions with respect to any asbestos hazards posed to their workers were appropriate, not negligent or grossly negligent.  The witness may do research, gather facts, inspect the premises in question, and review relevant scientific and medical literature.

Dr. Fowler may also be called upon to offer rebuttal testimony in response to testimony offered by plaintiffs' experts.  Dr. Fowler may also testify to the availability, or lack thereof, of substitutes for asbestos in high temperature/thermal insulating products, including efforts by O-I to find a non-asbestos substitute for use in Kaylo.  Dr. Fowler also may testify about his review of the Owens-Illinois Saranac documents and depositions of former Owens-Illinois employees and about the reasonableness of Owens-Illinois's actions in soliciting the testing and in responding to information provided to it by Saranac.  He may testify regarding the types of asbestos fiber contained in Kaylo at various times during the time it was manufactured.  He may review documents regarding the knowledge of the asbestos-containing product industry, the knowledge of plaintiffs employers or premises owners at which plaintiff worked, or the specific locations where the plaintiff/decedent worked regarding the potential hazards of asbestos.  He may also testify regarding other asbestos-containing products and their manufacturers through his extensive review of discovery responses and prior testimony.  His opinions are set forth in depositions and transcripts of testimony he has given at trial, copies of which this defendant believes are in the possession of plaintiffs' counsel.

37.   Elliott Hinkes, M.D.
      301 N. Prairie Avenue
      Suite 311
      Inglewood, CA  90301
      (805) 259-2990

      Dr. Hinkes is a Board Certified Oncologist and Hematologist.  Dr. Hinkes will testify generally about the risks of asbestos-related cancer, depending upon different levels of

18

exposure, periods of exposure and occupations, whether asbestos exposure is medically and scientifically linked on a cause-and-effect basis with various types of cancer, whether exposure to specific amounts of asbestos is a substantial factor in causing the particular cancer, risks of cancer from carcinogens other than asbestos, including the risk of cancer from cigarette smoking and other industrial pollutants, and changes in the risk of cancer resulting from the cessation of cigarette smoking or cessation of asbestos exposure. Dr. Hinkes will offer his opinion about whether lung cancer in the absence of asbestosis in a particular individual can be causally linked to asbestos exposure, whether asbestos exposure is causally linked to cancers other than lung cancer and mesothelioma, and the fiber type of asbestos causally linked to mesothelioma. Where appropriate, Dr. Hinkes will also testify to an apportionment of causation between asbestos exposure and cigarette smoking. Dr. Hinkes will also testify regarding the state and development of scientific and medical knowledge regarding health hazards associated with asbestos. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. A copy of his Curriculum Vitae will be made available to counsel, as well as transcripts of his prior testimony.

38.     Edward A. Gaensler, M.D.
        Professor of Surgery and Physiology
        Boston University Medical Center
        School of Medicine
        70 Concord St.
        Boston, MA 02118
        (617) 638-4630

        Dr. Gaensler is a thoracic surgeon. He will testify about the effects of pleural changes on lung function, the progression of asbestos-related lung disease, the risks of lung cancer in asbestos exposed individuals with and without asbestosis, and the risks of cancers other than lung cancer and mesothelioma among asbestos exposed individuals. Dr. Gaensler will describe his original research into the field of asbestos-related disease as part of the foundations for the opinions he will offer. Dr. Gaensler will also testify regarding the state and development of scientific and medical knowledge regarding health hazards associated with asbestos. A copy of his Curriculum Vitae will be made available to counsel, as well as transcripts of his prior testimony. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

39.     Gerald L. Meyers, M.D.
        Alta Bates Hospital
        3001 Colby Plaza at Ashby, Room 2737
        Berkeley, CA 94705
        (510) 204-1896

        Dr. Meyers is a Board Certified pulmonary physician and NIOSH Certified "B" Reader. Dr. Meyers will testify about the effects of pleural changes on lung function, the

DB1/64473004.1

progression of asbestos-related lung disease, the risks of lung cancer in asbestos exposed individuals with and without asbestosis, and the risk of cancers other than lung cancer and mesothelioma among asbestos exposed individuals. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. A copy of his Curriculum Vitae will be made available to counsel, as well as transcripts of his prior testimony.

40.   R. Brent Harrison, M.D.
      The University of Mississippi Medical Center
      Department of Radiology
      2500 North State Street
      Jackson, MS 39216
      (601) 984-2550

      Dr. Harrison is a B reader and may testify regarding the radiographs of the plaintiff and/or plaintiff's decedent.

41.   Robert N. Jones, M.D.
      Tulane University School of Medicine
      Pulmonary Diseases Section
      1700 Perdido Street
      New Orleans, LA 70112
      (504) 586-3840

      Dr. Jones is a medical doctor. He may testify regarding the medical condition of the plaintiff and about asbestos-related diseases. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

42.   William Emory, M.D.
      Ochsner Clinic
      1514 Jefferson Highway
      New Orleans, LA 70121
      (504) 842-4111

      Dr. Emory is a medical doctor. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. He may testify regarding the medical condition of the plaintiff and about asbestos-related diseases.

43.   Joseph Bates, M.D.
      4300 West 7th Street
      Little Rock, AR 72205
      (501) 224-1461

Dr. Bates is a medical doctor.  He may testify about the medical condition of the plaintiffs and/or plaintiffs' decedents and about asbestos-related diseases in general.  He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

44.     Russell P. Sherwin, M.D.
        Department of Pathology
        2011 Zonal Avenue
        H.M.R. - 201
        Los Angeles, CA  90033
        (213) 257-3599

Dr. Sherwin may testify regarding the pathology of the plaintiff and/or plaintiff's decedent.  He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

45.     Dr. Charles Henry Drummond, III
        Department of Ceramic Engineering
        Ohio State University
        2041 College Road
        Columbus, OH  43210
        (614) 292-6732

Dr. Drummond is an associate professor in the Department of Ceramic Engineering at Ohio State University.  He is expected to testify regarding the physical characteristics of Kaylo products and other asbestos-containing products as well as the history and feasibility of substitute ingredients.

46.     Jack E. Peterson, C.E., C.I.H., Ph.D.
        Peterson Associates
        2830 Via Vieyas Oeste
        Alpine, CA  91901
        (619) 445-9668

Dr. Peterson is an expert in industrial hygiene and engineering.  He is expected to testify regarding the proper use and effectiveness of industrial hygiene procedures, the proper use and limitations of warnings, the physical characteristics of Kaylo products and the history and feasibility of substitute ingredients.

47.     Raymond D. Harbison, Ph.D.
        The Progress Center, Room N103
        One Progress Blvd., Box 13
        Alachua, FL  32615
        (904) 462-4040

Dr. Harbison currently teaches at the University of Florida College of Medicine. He may briefly describe or explain the disciplines of Pharmacology and Toxicology. Dr. Harbison may testify about the concepts of risk assessment, toxicity, dose response, threshold limit value, and carcinogenicity. Dr. Harbison is expected to testify about the Saranac Laboratory studies of Kaylo, including the significance of the methodology of the studies, the results of the studies, and the conclusions of the studies. This defendant believes that he will testify that Saranac documents did not advise Owens-Illinois that the TLV of five million particles per cubic foot of air was unreliable; that the Saranac Laboratory did not advise Owens-Illinois to discontinue the manufacture or sale of Kaylo; that Saranac did not advise Owens-Illinois to remove asbestos from its products; that Saranac did not advise Owens-Illinois that insulators or end users were at risk of contracting asbestos related disease; and that Saranac did not advise Owens-Illinois to warn insulators or end users. Dr. Harbison is also expected to testify that it was believed that at that time individuals who were exposed to asbestos dust levels below the threshold limit value of five million particles per cubic foot were not at risk of contracting asbestos related disease. The opinions of Dr. Harbison are based upon his training and experience, and his extensive review of the Saranac documents and the Hazard deposition.

48.    Dr. Robert Shepherd
       University of Texas Health Center at Tyler
       Box 2003
       Tyler, TX 75710
       (903) 877-7100

       Dr. Shepherd is a B-reader and will testify regarding the radiographs of the plaintiff and/or plaintiff's decedent.

49.    Dr. Kevin Browne
       66A Warwick Way
       London, England SWIV IRZ

       Dr. Brown is a medical doctor. He may testify, in general, concerning asbestos-related diseases, the effects of exposure to asbestos upon a person or persons in general, including the epidemiology of asbestos-related diseases, and the link between use of tobacco products and various pulmonary and other diseases and conditions. In addition, Dr. Brown may testify about the necessary elements of a clinical diagnosis of occupational and other disease, the complexities and scientific criteria associated with determination of cause-effect relationships between occupational exposures and lung or other pathology, the nature of various diseases and conditions, and the likelihood that such diseases or conditions will progress, recur, or predispose an individual to develop another related disease or condition. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

DB1/64473004.1

Dr. Browne may also be expected to testify regarding whether a particular plaintiff or group of plaintiffs who is or was at an increased risk of developing or experiencing recurrence of cancer and whether a plaintiff has a reasonable fear of cancer due to exposure to asbestos.

50.  William Z. Fluck
     122 Inverness Avenue
     Lompoc, CA 93436
     (805) 733-2640

Mr. Fluck was employed in the 1940s as an industrial hygienist by the Industrial Hygiene Unit of the Wisconsin State Board of Health. He may testify concerning the state of knowledge at various times of the effect of asbestos exposure; application and interpretation of the American Conference of Governmental Industrial Hygienists ("ACGIH") historical standards for the safe level of exposure to asbestos dust (i.e., "maximum allowable concentration" or "threshold value"); the ACGIH standards in effect at various times and the interrelationship of those standards with the concept of time weighted average; testing of industrial sites, historically accepted safety practices; the need for warnings; and related topics. Mr. Fluck may also testify concerning his personal involvement with a 1940s dust study involving Owens-Illinois Kaylo.

51.  Dr. William L. Lea

Dr. Lea was Director of the Industrial Hygiene Unit of the Wisconsin State Board of Health in the 1950s and 1960s. Dr. Lea may testify about the same general areas as Mr. Fluck, with special emphasis on the 1950s and 1960s.

52.  Kenneth W. Nelson
     1894 Millcreek Way
     Salt Lake City, UT  84106

Mr. Nelson was an industrial hygienist trained by the U.S. Navy in 1942. He can testify as to the knowledge of the government and various shipyards with respect to the asbestos health hazards and the methods for controlling them.

53.  Dr. Pat Hessel
     Exponent
     Two North Riverside Plaza
     Suite 1400
     Chicago, Illinois, 60606
     (312) 627-2004

Dr. Hessel is a medical doctor. He may testify as to the epidemiology of asbestos-related diseases among various populations and matters relating to epidemiology.

23

54.   Dr. Kathryn A. Hale
      The Methodist Hospital
      11th Floor, Smith Tower
      6550 Fannin
      Houston, TX  77030
      (713) 790-2076

Dr. Hale is a medical doctor and a specialist in the area of respiratory diseases.  She may testify as to all matters pertaining to her examination of plaintiffs, plaintiffs' decedents and/or their medical records, any communications with plaintiffs, review of x-rays of plaintiffs and/or plaintiffs' decedents, the diagnostic criteria used to diagnose asbestos-related diseases, her opinion as to whether plaintiffs and plaintiffs' decedents suffer or suffered from asbestos related disease and the basis for such opinion, plaintiffs and/or plaintiffs' decedents medical conditions, and her prognosis in regard to plaintiffs' medical conditions.  She may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

55.   William A. Lowell
      Augusta, ME
      (207) 622-5479

Mr. Lowell may testify as to U.S. Naval vessel construction, overhaul, repair and maintenance. He is familiar with Navy manuals and specifications for construction and overhaul and repair of U.S. Navy vessels. He is knowledgeable concerning the use of asbestos-containing materials on board ship, work practices regarding the use of insulation products and the types of asbestos products required by various Navy specifications and manuals. He is familiar with and may testify concerning Navy and military specifications for the types and quantities of materials used in naval construction and repair including insulation materials. He also may testify as to the specifications, including the types and grades, which Kaylo pipe covering and block met and the Navy testing procedures and test results related to the approval of products to be used on naval vessels, including those related to Kaylo. Mr. Lowell may testify regarding departure reports and ship histories regarding specific ships. Mr. Lowell is also of the opinion that all insulation products used on Navy ships had to be approved for use by the Navy.

56.   Leonard J. Goldwater, M.D.
      Route 3, Box 197
      Chapel Hill, NC
      (919) 933-9718

Dr. Goldwater has more than 50 years of experience teaching medicine and is certified in both internal and occupational medicine.  In addition to the M.D. degree, he has a Master of Public Health degree and has worked as a U.S. Navy Industrial Health Officer.  He may testify about the state-of-the-art of medical and scientific knowledge, the history and knowledge of asbestos-related disease and industrial hygiene practices.

24

57.     Warren Cole
        Pannell, Kerr & Forster
        5847 San Felipe, Suite 2300
        Houston, TX 77057
        (713) 780-8007

        Mr. Cole is an accountant. He may testify regarding the percentages or amounts of the
        various asbestos-containing products that were used at the various locations where the
        decedent claimed exposure to such products.

58.     John G. Weg, M.D.
        Pulmonary & Critical Care Medicine Division
        University Hospital
        University of Michigan
        Ann Arbor, MI
        (734) 936-5245

        Dr. Weg will testify concerning the state of the available medical knowledge regarding
        asbestos-related disease at the relevant historical periods of time. He may testify as to all
        matters pertaining to the history of scientific knowledge, research and study concerning
        exposure to asbestos and its effects on the human body, as to all state of the art issues, as
        to his expert opinion as to safe levels of asbestos exposure and the basis for such
        opinions, as to exposure to asbestos in regards to development of respiratory diseases,
        including but not limited to asbestosis, lung cancer, and mesothelioma, and as to the
        effects of exposure to the chrysotile fiber and other asbestos fibers. He may testify
        regarding cause of medical condition and whether the extent to which plaintiffs'
        particular exposures to asbestos-containing materials caused his/her injury.

59.     Dr. Mark R. Wick
        Department of Pathology, Room 3900
        2200 Jefferson Park Avenue
        Charlottesville, VA 22908
        (804) 982-4403

        Dr. Wick is a pathologist. He may testify, live or by deposition, concerning his review of
        the medical records, pathology and/or work history of Plaintiff and Plaintiff's medical
        condition, and the cause of Plaintiff's medical condition. His testimony may also include
        discussion of asbestos and its effect on human health generally and Plaintiff's
        specifically, and the effect that other substances have on human health generally and
        Plaintiff's condition specifically. Dr. Wick may also testify regarding the medical
        conditions of Plaintiff based on review of medical records, x-rays, Plaintiff's experts'
        reports and supplemental reports and his training, experience and other special expertise.
        Further, Dr. Wick may testify concerning the increased risk, if any, of cancer faced by
        asbestos exposed workers and the prognosis of such individuals. He may testify
        regarding cause of medical condition and whether the extent to which plaintiffs'

25

particular exposures to asbestos-containing materials caused his/her injury. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed.

In addition, if called to testify, either live or by deposition, Dr. Wick is expected to provide testimony regarding the areas stated below:

(1)   the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)   the nature of asbestos and asbestos-related diseases;

(3)   the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

(4)   the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)   the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

(6)   methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7)   incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8)   cigarette smoking and its effects on the lungs and other organs;

(9)   the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10)  the difference between impairment and disability;

(11)  the effect of asbestosis or other asbestos-related disease, or asbestos exposure without asbestosis or other asbestos-related disease, on disability and life expectancy;

(12)  the lack of relationship between the presence of pleural plaques and a later development of any form of cancer;

26

(13)  the history of evolution and knowledge of asbestos related diseases;

(14)  the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

(15)  cancer incidence in the general population and among asbestos workers and its potential causes;

(16)  the incidence of mesothelioma among various kinds of workers exposed to asbestos, and the relative importance of various fiber types and the cause of mesothelioma; and

(17)  causation of cancer in this case, including the absence of pathologic and other evidence in this case sufficient to implicate any Owens-Illinois product as a cause or the cause of plaintiff's cancer;

(18)  the scientific methods to be used in attributing causation of an asbestos-related cancer to a particular exposure or series of exposures, including exposures to a particular asbestos-containing product or products; and

(19)  to the extent not covered above, asbestos medicine in general.

60.  Dr. Jon Ritter
Barnes Jewish Hospital
Surgical Pathology, 3rd Floor, Peters Bldg.
One Barnes Jewish Hospital Plaza
St. Louis, MO 63114
(314) 362-0105

Dr. Ritter is a pathologist. He may testify, live or by deposition, concerning his review of the medical records, pathology and/or work history of Plaintiff and Plaintiff's medical condition, and the cause of Plaintiff's medical condition. His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiff's specifically, and the effect that other substances have on human health generally and Plaintiff's condition specifically. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. Dr. Ritter may also testify regarding the medical conditions of Plaintiff based on review of medical records, x-rays, Plaintiff's experts' reports and supplemental reports and his training, experience and other special expertise. Further, Dr. Ritter may testify concerning the increased risk, if any, of cancer faced by asbestos exposed workers and the prognosis of such individuals. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed.

27

In addition, if called to testify, either live or by deposition, Dr. Ritter is expected to provide testimony regarding the areas stated below:

(1)     the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)     the nature of asbestos and asbestos-related diseases;

(3)     the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

(4)     the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)     the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

(6)     methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7)     incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8)     cigarette smoking and its effects on the lungs and other organs;

(9)     the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10)    the difference between impairment and disability;

(11)    the effect of asbestosis or other asbestos-related disease, or asbestos exposure without asbestosis or other asbestos-related disease, on disability and life expectancy;

(12)    the lack of relationship between the presence of pleural plaques and a later development of any form of cancer;

(13)    the history of evolution and knowledge of asbestos related diseases;

(14)    the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

28

(15) cancer incidence in the general population and among asbestos workers and its potential causes;

(16) the incidence of mesothelioma among various kinds of workers exposed to asbestos, and the relative importance of various fiber types and the cause of mesothelioma; and

(17) to the extent not covered above, asbestos medicine in general.

61. Dr. Thomas M. Wheeler, M.D.
4807 Laurel Street
Bellaire, Texas 77401

Dr. Wheeler is a medical doctor. He may testify regarding the pathology of the plaintiffs and/or plaintiffs' decedents, causation of the plaintiffs' and/or plaintiffs' decedents' illness and asbestos-related diseases. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed.

62. Dr. Robert Allen Wessels MD, FASCP, FCAP
Houston Northwest Medical Center
710 FM 1960 West, Mall 3
Houston, Texas 77090
(281) 440-2829

Dr. Wessels is a medical doctor. He may testify regarding the pathology of the plaintiffs and/or plaintiffs' decedents, causation of the plaintiffs' and/or plaintiffs' decedents' illness and asbestos-related diseases. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

63. Barry Gordon, M.D., Ph.D.
5605 Enderly Road
Baltimore, MD 21212
(410) 325-4200

Dr. Gordon is a neurologist and psychologist at the Johns Hopkins Hospital who may testify regarding human memory, recall, facts, which influence these aspects of eyewitness testimony, and factors in relation to errors of memory.

29

64.  Willis G. Hazard
     (Deceased)

     Mr. Hazard may testify by deposition about the corporate history, operations, products, and product testing of Owens-Illinois, Inc.

65.  Dominick J. DeSalvo
     Philip Services Corp.
     Fourth Gateway Center 12th Floor
     Pittsburgh, PA  15222

     Mr. DeSalvo is an expert in the design, construction, and reconstruction of steel mills, including the use of asbestos in the construction and reconstruction of steel mills.

66.  Dr. Allan Feingold
     Chief of Pulmonary Medicine
     South Miami Hospital
     6200 SW 73rd Street
     Miami, FL  33143
     (305) 661-4611, ext 5229

     Dr. Feingold is a physician who specializes in pulmonary medicine and internal medicine.  Dr. Feingold has written and lectured on asbestos medicine issues.  He is expected to testify regarding the historical development of medical knowledge regarding adverse health effects associated with asbestos and regarding the studies commissioned by Owens-Illinois at the Saranac Laboratories in the 1940s and 1950s.  He will testify regarding the development of knowledge regarding the health hazards of tobacco smoking and the ability of tobacco smoking to cause various diseases, including cancer, long after the plaintiff ceased smoking tobacco.  Dr. Feingold may testify, in general, concerning asbestos-related diseases and the effects of exposure to asbestos upon persons in occupational settings, including the epidemiology of asbestos-related diseases and the criteria for the diagnosis of such diseases.  He may testify regarding deposition or trial testimony he has reviewed.  He may testify regarding the materials and asbestos fiber composition of Kaylo at various points in time during the time it was manufactured and regarding the fiber types of other asbestos-containing products.  He may testify regarding the ability or propensity of the various types of asbestos fibers to cause disease.  He may testify regarding various Owens-Illinois documents he has reviewed.  He may also testify based upon his review of Plaintiff's records, radiology and pathology, regarding the existence or non-existence of any asbestos-related disease or abnormality in the plaintiffs including, but not limited to pleural changes, asbestosis, lung cancer and mesothelioma. Dr. Feingold may testify on whether any asbestos-related disease allegedly suffered by plaintiffs was medically or proximately caused by exposure to asbestos-containing products.  He may also testify on the existence of a dose response relationship between exposure to asbestos and asbestos-related disease.  He may also testify on increased risk of cancer issues and whether a particular plaintiff has a reasonable fear of cancer due to exposure to asbestos.  Dr. Feingold may also testify on the health consequences of

30

smoking in individuals who are, or who are not, exposed to asbestos. With respect to particular plaintiffs, Dr. Feingold may testify as to his review and interpretation of x-ray films, pathology slides, pulmonary function test results and the determination of impairment and/or disability. He may testify regarding cause of plaintiff's medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. Dr. Feingold may testify whether any disease or disability is progressive and whether other non-asbestos associated diseases or conditions are present in plaintiffs. Dr. Feingold may testify that plaintiffs alleged asbestos-related disease was in fact caused entirely by smoking or other substances or factors unrelated to asbestos exposure. Dr. Feingold's testimony will be based on his training, experience, education and his long-term, on-going review and interpretation of the medical literature concerning asbestos-related disease. His opinions are set forth in depositions and transcripts of testimony he has given at trial, copies of which this defendant believes are in the possession of plaintiffs' counsel.

67.    Dr. Frederick Toca
       Atlantic Environmental Inc.
       2 East Blackwell Street
       Dover, NJ 07801
       (973) 366-4660

Dr. Toca is a certified industrial hygienist and certified safety professional. Dr. Toca has many years of experience directing, managing, and leading programs in industrial hygiene, occupational safety and environmental sciences. He may testify about the proper protocols to be followed for air sampling for the presence of asbestos, the methods and results of air sampling that he and others have performed on asbestos-containing products, and the methods and results of field tests for asbestos fiber release from products performed at his direction in an industrial setting. He may testify in response to the testimony of Richard Hattfield and regarding Mr. Hatfield's air sampling and video. Dr. Toca may also provide testimony regarding industrial hygiene and toxicology state of the art.

68.    Dr. Mario J. Saldana, M.D.
       Professor Emeritus of Pathology
       University of Miami School of Medicine
       Department of Pathology and Laboratory Medicine
       Cedars Medical Center
       1400 NW 12th Avenue
       Miami, Florida 33136

Dr. Saldana is a pathologist. Dr. Saldana may review pathology and/or pathology reports stating his findings and conclusions. He may have performed various studies on the pathology samples. He is expected to testify regarding general medicine, general asbestos medicine (including asbestos medical literature), and pathology in order to explain his findings and conclusions. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-

31

containing materials caused his/her injury. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed.

69.   Dr. Michael Graham
      Saint Louis University
      1402 South Grand Blvd., C305
      St. Louis, MO 63104-1028
      314.577.8298

Dr. Graham, if called to testify, are expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Graham, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical   condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos. Dr. Graham may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed.

70.   Dr. Peter Barrett
      300 Boylston Street, Suite 714
      Boston, Massachusetts 02116-3923
      617.426.2110

Dr. Barrett is a specialist in the area of respiratory diseases. Dr. Barrett is also a NIOSH certified B-Reader and will testify as to all matters pertaining to his examination of the plaintiff and plaintiff's medical records; any communications with the plaintiff or plaintiff's family; review of x-rays of the plaintiff; the diagnostic criteria used to diagnose

32

asbestosis; his opinion as to whether plaintiff suffers from asbestos related disease and the basis for such opinion; the plaintiff's current medical condition and his prognosis in regard to the plaintiff's medical condition. His opinions are set forth in depositions and transcripts of testimony he has given at trial, copies of which this defendant believes are in the possession of plaintiff's counsel. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury.

71.    Dr. Thomas Vail Colby
       Scottsdale, AZ 85259
       480-301-8000

       Dr. Colby, if called to testify, is expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

       Dr. Colby, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical   condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos. Dr. Colby may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury, as well as to diseases of the lungs and respiratory systems caused by tobacco smoking. He may also testify regarding idiopathic diseases of the lungs, including idiopathic lung cancer and mesothelioma.

72.    Dr. Roland Schwarting
       Anatomic Pathology
       Gladwyne , PA 19035
       215-955-6304

33

Dr. Schwarting, if called to testify, is expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Schwarting, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical    condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos.  Dr. Schwarting may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury, as well as to diseases of the lungs and respiratory systems caused by tobacco smoking. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed.  He may also testify regarding idiopathic diseases of the lungs, including idiopathic lung cancer and mesothelioma.

73.     Dr. Allen R. Gibbs, TD., MBChB., FRCPath
        Department of Histopathology
        Llandough Hospital
        Penarth
        South Glamorgan CF64 2XX
        United Kingdom
        011-442-920-715-283

Dr. Gibbs, if called to testify, is expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of

34

lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Gibbs, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical    condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos. Dr. Gibbs may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury, as well as to diseases of the lungs and respiratory systems caused by tobacco smoking. He may also testify regarding idiopathic diseases of the lungs, including idiopathic lung cancer and mesothelioma.

74.     Dr. Tim Oury
        Department of Pathology
        S-737 Scaife Hall
        3550 Terrace Street
        Pittsburgh, PA  15261
        (412) 648-9659

Dr. Oury, if called to testify, is expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Oury, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical    condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos. Dr. Oury may testify

DB1/64473004.1

in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury, as well as to diseases of the lungs and respiratory systems caused by tobacco smoking. He may also testify regarding idiopathic diseases of the lungs, including idiopathic lung cancer and mesothelioma.

75.    Dr. Khalil Sheibani
       3 Pemberly Drive
       Irvine, California 92612
       (714) 953-3554

Dr. Sheibani, if called to testify, are expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of cancer of the respiratory system, peritoneum and peritoneal cavity; cigarette smoking and its effects on the lungs; the difference between impairment and disability;

Dr. Sheibani may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed.

76.    Morton Corn, M.D.
       The Johns Hopkins University
       3208 Bennett Point Road
       Queenstown, Maryland 21658-1126
       (410) 827-3205

The witness may testify concerning regulatory requirements for the health and safety of workers exposed to asbestos, including OSHA, EPA and other state and federal requirements pertaining to asbestos. He may be asked to testify concerning the actions of any entity at issue in this case or any others similarly situated under the same or similar circumstances existing at all times material to this case. He may testify about his knowledge of the processes involved in developing or promulgating federal and state standards applicable to employers, contractors and premises owners. The witness may testify concerning the potential hazards of different types of asbestos, when such hazards were known or knowable by different segments of trade and industry. He may testify about industrial hygiene publications and literature from the 1940s to the present. He may also testify generally about the concept of dose-response, the evolution and use of threshold limit values and the knowledge that contractors and premises owners had available to them during certain time periods. He may also testify regarding relative risk

DB1/64473004.1

and OSHA risk models. He may testify about the nature of the working environments and the control and use of substances in such locations.

The witness may also testify regarding the reasonableness of the corporate response of Owens-Illinois or any other similarly situated company concerning the potential hazards of asbestos-containing products, usage and safety of workers working with or around those products in the same or similar circumstances. He may testify about the size, construction, layout and working environment where the plaintiff worked. The witness may testify about the appropriateness of any company's policies, procedures or actions with respect to health and safety and the significance of asbestos to those health and safety concerns. He may testify that Owens-Illinois actions with respect to any potential hazards posed by Kaylo were appropriate, not negligent or grossly negligent.

He may also testify about epidemiology of asbestos-related disease, and the general scientific and medical literature on the topic. The witness may do research, gather facts, inspect the premises in question, and review relevant scientific and medical literature, Owens-Illinois or other companies' documents, and review prior depositions or trial testimony, and give his opinions regarding his research, inspection and review. He will testify regarding toxicology, engineering and industrial hygiene generally and particularly as they relate to alleged asbestos fiber exposure under different conditions, including the facts of this case. He may respond to testimony given by Plaintiffs' experts regarding any industrial hygiene issue including product testing and levels of asbestos that may be present in any given industrial, commercial or residential environment. He may testify as to any matter raised by experts called by Plaintiffs or any other matter, which he may be qualified to testify.

77.    Dr. Bernard Gee
       333 Cedar Street
       New Haven, Connecticut 06510

Dr. Gee, Professor of Medicine, Yale University School of Medicine, may be called to testify with respect to medical condition and causation in these cases. Dr. Gee may also provide testimony with respect to the anatomy and function of the human respiratory system, pulmonary function testing diseases allegedly associated with exposure to asbestos and the development of related scientific and medical knowledge. Dr. Gee may also be asked to respond to the testimony of certain witnesses offered at the time of trial including, but not limited to, testimony from plaintiffs' experts regarding the alleged hazards of exposure to asbestos-containing materials and their alleged propensity to release fibers.

Dr. Gee is expected to testify regarding the historical development of medical knowledge regarding adverse health effects associated with asbestos. Dr. Gee may testify, in general, concerning asbestos-related diseases and the effects of exposure to asbestos upon persons in occupational settings, including the epidemiology of asbestos-related diseases and the criteria for the diagnosis of such diseases. He may testify about causation,

37

smoking and epidemiology. He may testify regarding deposition or trial testimony he has reviewed.

Dr. Gee may testify on whether any asbestos-related disease allegedly suffered by plaintiffs was medically or proximately caused by exposure to asbestos-containing products. He may also testify on the existence of a dose response relationship between exposure to asbestos and asbestos-related disease. He may also testify on increased risk of cancer issues and whether a particular plaintiff has a reasonable fear of cancer due to exposure to asbestos. Dr. Gee may also testify on the health consequences of smoking in individuals who are, or who are not, exposed to asbestos. With respect to particular plaintiffs, Dr. Gee may testify as to his review and interpretation of x-ray films, pulmonary function test results and the determination of impairment and/or disability. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. Dr. Gee may testify whether any disease or disability is progressive and whether other non-asbestos associated diseases or conditions are present in plaintiffs. Dr. Gee's testimony will be based on his training, experience, education and his long-term, on-going review and interpretation of the medical literature concerning asbestos-related disease.

The observations and opinions offered by Dr. Gee in this matter will be based on his review of the materials provided; a continuing review of the available scientific literature relating to the health effects of materials of interest in this matter and Dr. Gee's education and professional experience. As defendant becomes aware of additional facts and the opinions of plaintiffs' experts, this witness may testify regarding his opinions of the additional facts or in response to the opinions of plaintiffs' experts.

78.   James Crapo, M.D.
      National Jewish Medical and Research Center
      4650 South Forest Street
      Englewood, Colorado 80110
      (303) 221-3201

Dr. James Crapo is a physician and Chairman of the Department of Medicine at the National Jewish Medical and Research Center in Denver, CO.

Dr. Crapo will testify concerning the medical condition of Mr. Pyburn and in the case of a deceased plaintiff, may give testimony as to the cause of death. He will further testify as to whether the plaintiff or plaintiff's decedent had a condition or illness caused by asbestos exposure. He may also testify on the latency period related to each type of asbestos-related disease and the carcinogenic properties of each different type of asbestos fiber.

Dr. Crapo will generally testify concerning asbestos-related diseases and the effects of exposure to various asbestos-containing products upon persons in occupational settings. He will further testify regarding the epidemiology of asbestos diseases, the criteria for diagnosis of asbestos-related disease, as well as the existence of a dose response relationship between exposure to asbestos and asbestos-related diseases. He may also testify regarding asbestos-containing products generally, including their asbestos fiber

DB1/64473004.1

content, use and their respective ability to cause or contribute to disease, including quantification of exposures to asbestos thermal system insulation products and other friable asbestos products generally used by plaintiff. He may further testify regarding the propensity of various asbestos fiber types to contribute to mesothelioma or other asbestos-related disease. He may also testify regarding the determination of the relative risks of suffering personal injury or death as a result of exposure to various asbestos-containing products in occupational settings. He will explain the dose response relationship between exposure to asbestos and asbestos-related disease for each type of disease alleged.

He will testify regarding the existence or non-existence of any alleged asbestos-related disease in the plaintiff, including but not limited to pleural changes, asbestosis, lung cancer, mesothelioma, laryngeal cancer, esophageal cancer, and gastrointestinal cancer, where applicable. He will also testify on general medicine issues regarding asbestos-related diseases including, but not limited to, lung physiology, lung function, lung defense mechanisms and the mechanisms by which asbestos fibers do or do not cause a particular disease. He may also testify that background levels of asbestos fibers in human tissue do not represent disease and background or ambient air exposure does not cause disease. He may also testify regarding government regulations applicable to defendant's products and whether these products are unreasonably dangerous.

He may also testify on increased risk of cancer issues and whether the plaintiff had a reasonable fear of cancer due to exposure to asbestos. He may also testify on the health consequences of smoking and the relationship between smoking and alleged asbestos-related diseases, generally and with respect to this plaintiff. He will testify regarding the contribution of smoking and asbestos, if any, to the plaintiff's disease.

Generally and with respect to the plaintiff, he will testify as to his review and interpretation of x-ray films, review and interpretation of pulmonary function testing, the nature and extent of any impairment or disability, whether a condition is progressive and whether other diseases or conditions are present in plaintiffs.

Dr. Crapo's testimony will be based on one or more of the following: his training, experience, education, publications and review of the medical, governmental and scientific literature and various air sampling studies, work facility inspections and documents, where applicable, as well as review of medical records, fiber burden or digestion studies, chest films, and all pathology materials. Dr. Crapo may review plaintiff's and co-worker's deposition testimony given in this case and rely upon them as a basis for his opinions.

79.   Dr. Charles A. Weaver, III.
      Department of Psychology and Neuroscience
      Baylor University, Box. 97334,
      Waco, Texas 76798-7334
      (254) 710-6750

Dr. Weaver is an expert in the areas of human memory and cognition. His research interests include memory, the relationship between confidence and memory, eyewitness

DB1/64473004.1

memory and the effect of misleading information, "flashbulb memory", and repression and the false memory syndrome. Dr. Weaver earned his undergraduate degree from Baylor University in 1984, and obtained his masters and doctorate degrees in Psychology from the University of Colorado, Boulder. Dr. Weaver is a full professor of Psychology and Neuroscience at Baylor University in Waco, Texas, where he has taught since 1989. Dr. Weaver also serves as an associate editor of the Journal of Experimental Psychology: Learning, Memory, and Cognition, and is a member of the Professional and Scientific Advisory Board of the False Memory Syndrome Foundation. If called to speak to the jury, Dr. Weaver will discuss the nature of memory, recall and retention. He will rely on general principles in the field of psychology and neuroscience and apply them to the factual allegations presented by plaintiff and other fact witnesses. Dr. Weaver will discuss the probability that specific factual information pertaining to a work environment could be retained over a period of two to four decades. He will draw upon his understanding of the physical and biological limitations of memory creation and retention, and the likelihood that after-event stimulus may generate inaccurate or false memories. He will discuss the manner in which "false memories", a term used by psychologists and researchers in the field, can be imprinted and how those memories can rise to the level of an actual memory despite being incorrect. Dr. Weaver will define for the jury in scientific and medical terms human memory, which he describes as a dynamic, creative and reconstructive process. He will discuss memory in terms of "encoding" information, and will describe how memory can be altered by the conditions present when generation or retrieval of memory occurs, for example, due to a leading question presented by an attorney, materials offered to "refresh recollection", or conversations that suggest certain events took place that were unknown to the individual whose memory is being generated. Dr. Weaver will discuss how memories can be altered by events which take place or information which is learned after the original circumstances. He will relate how the more a memory is retrieved or rehearsed, the greater the person's subjective confidence in the accuracy of the memory, but that increased confidence does not necessarily lead to improved memory accuracy. Dr. Weaver will also discuss his laboratory research and discuss his findings, and the results of studies available in the published literature, that support his opinions.

80.    Dr. Andy Ghio
       University of North Carolina
       Human studies division
       Campus Box 7315
       104 Mason Farm Rd.
       Chapel Hill, NC 919-966-0670

Dr. Ghio is a radiologist. He may testify, live or by deposition, concerning his review of the medical records, chest x-rays, CAT scans and/or exposure history of Plaintiff's and/or Plaintiff's decedent and the cause of Plaintiff's and/or Plaintiff's decedent's medical condition. His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiff's and/or Plaintiff's decedent specifically, and the effect that other substances have on human health generally and Plaintiff's and/or Plaintiff's decedent's condition specifically. Dr. Ghio may also testify regarding the medical

conditions of Plaintiff based on review of medical records, x-rays, Plaintiff's experts' reports and supplemental reports and his training, experience and other special expertise. Further, Dr. Ghio may testify concerning the increased risk, if any, of cancer faced by asbestos exposed workers and the prognosis of such individuals.

81.    Dr. Bertram Price
Price Associates, Inc.
One North Broadway
White Plains, NY 10601
(914)686-7975

Dr. Bertram Price is a Risk Assessment Specialist. He holds a PhD in Mathematical Statistics and an MS from the Ohio State University and a BA in mathematics from Wittenberg University. Dr. Price conducts and designs risk and risk management studies, including studies related to environmental and occupational health regulatory issues. Dr. Price has consulted on asbestos regulatory issues since 1979, including consultancies with the US Environmental Protection Agency (EPA) and the New York City DEP (Departmental of Environmental Protection). Dr. Price has testified before the Occupational Safety and Health Administration (OSHA) regarding proposed changes to OSHA's construction standard.

If called as a witness, Dr. Price will testify regarding the differences in the incidences of mesothelioma in men and women. Through the use of mathematical modeling and statistical analyses, Dr. Price may testify that, based upon his analyses of current statistical data and his mathematical models, secondary exposure to asbestos is not a causal factor in mesothelioma in women. Dr. Price may testify that the mesotheliomas seen in women, who generally have not been occupationally exposed to asbestos, represent environmental exposure rates or the diseases are of unknown etiology; i.e., the cause or causes of their mesotheliomas remain unknown.

Should he be called upon to testify, Dr. Price may provide an opinion based on a reasonable degree of scientific certainty that Plaintiff's mesothelioma was not caused by exposure to asbestos-containing products manufactured by Owens-Illinois, Inc. Dr. Price's opinion, should he testify, will be based to large extent upon his review of the depositions taken in this action and the data and analysis set out in his recent publication, *Mesothelioma Trends in the United States: An Update Based on Surveillance, Epidemiology, and End Results [SEER] Program Data for 1973 through 2003*, American Journal of Epidemiology, Volume 159, p. 107 (January 15, 2004), and the literature cited therein. In preparation for his testimony, Dr. Price has also reviewed the literature concerning domestic/household exposure risks of mesothelioma, and reports on lung burden data and its applications, including applications to domestic/household risks of mesothelioma.

If applicable, in the alternative, Dr. Price may testify that, assuming *arguendo,* some asbestos fibers were taken home on the clothing of Plaintiff's spouse or other source (e.g., Father) or any other individual, the concentration of asbestos fibers in his clothing

41

was orders of magnitude lower than any possible workplace exposure, and therefore could not have been a substantial contributing factor in Plaintiff's mesothelioma. Dr. Price may use mathematical models to allocate the proportion of possible exposure from fibers that emanated from Owens-Illinois Kaylo over several months as a fraction of that exposure source's score of years working around other asbestos-containing products.

82.   Charles M. Yarborough, III, M.D., M.P.H.
Senior Managing Scientist
5401 McConnell Avenue
Los Angeles, CA 90066
Phone: (310) 754-2700
Fax: (310) 754-2799

Dr. Charles M. Yarborough is a Senior Managing Scientist for Exponent. He holds an MD from the University of Alabama Birmingham. Dr. Yarborough is Board Certified by the American Board of Internal Medicine and the American Board of Preventive Medicine, in Occupational Medicine. Dr. Yarborough also holds a Master's Degree in Public Health ( MPH).

If called upon, Dr. Yarborough will testify concerning the epidemiology of asbestos related diseases, including specifically the epidemiology and possible causes of mesothelioma. He may also testify regarding the interpretation and trustworthiness of epidemiological studies, the literature related to various types of asbestos exposure and related diseases, and the state of medical knowledge with respect to the causes of mesothelioma in individuals who have been secondarily exposed to asbestos; e.g., in the home, as a bystander worker, or from the environment. Dr. Yarborough may testify regarding the pathology of mesothelioma and the definitive diagnostic criteria used to confirm the existence of the disease in a given patient.

Dr. Yarborough may testify regarding the medical history of the Plaintiff, including his examinations, his various diagnoses, and the relationship between his alleged illnesses, if any, and their alleged exposure to asbestos, either in general or to Owens-Illinois products. Dr. Yarborough may also testify regarding the incidence of mesothelioma in the general population as contrasted to or compared with incidences among those who have been exposed to asbestos in various workplace and environmental settings. Dr. Yarborough may also testify regarding a dose-response relationship between exposure to asbestos and asbestos-related diseases, including mesothelioma. Dr. Yarborough may offer an opinion that the disease, injury or physical condition alleged by Plaintiff was not proximately caused by exposure to asbestos, in general and/or from a Owens-Illinois product in particular.

In preparing his opinions, the items reviewed by Dr. Yarborough include the relevant medical and scientific literature concerning mesothelioma and asbestos-related diseases, regulatory materials, depositions of parties and/or witnesses, and items obtained through discovery in this action, such as Plaintiff's medical records.

DB1/64473004.1

83.   Michele Carbone, MD
      Cardinal Berardine Cancer Center Room 205
      Loyola Medical Center
      2160 South 1st Avenue
      Maywood, Illinois 60153
      (708) 327-3151

Dr. Carbone is a pathologist.  He may testify, live or by deposition, concerning his review of the medical records, pathology and/or work history of Plaintiff and Plaintiff's medical condition, and the cause of Plaintiff's medical condition.  His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiff's specifically, and the effect that other substances have on human health generally and Plaintiff's condition specifically, including the polio vaccine and the SV-40 contaminant. Dr. Carbone may also testify regarding the medical conditions of Plaintiff based on review of medical records, x-ray reports, Plaintiff's experts' reports and supplemental reports and his training, experience and other special expertise.  Further, Dr. Carbone may testify concerning the increased risk, if any, of cancer faced by asbestos exposed workers and the prognosis of such individuals.  He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials or SV-40 caused his/her injury.  He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, molecular studies, as well as any fiber burden or digestion studies performed.  Furthermore, Dr. Carbone may testify about the presence of the SV-40 virus in the Plaintiffs pathology specimens and results of PCR analysis.  He may also testify about the many causes of cancer and cancer causes in general.  He may also testify about the issue of idiopathic/unkown etiology of cancer.

In addition, if called to testify, either live or by deposition, Dr. Carbone is expected to provide testimony regarding the areas stated below:

(1)   the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)   the nature of asbestos and asbestos-related diseases;

(3)   the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

(4)   the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)   the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

43

(6) methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7) incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8) cigarette smoking and its effects on the lungs and other organs;

(9) the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10) the difference between impairment and disability;

(11) the effect of asbestosis or other asbestos-related disease, or asbestos exposure without asbestosis or other asbestos-related disease, on disability and life expectancy;

(12) the lack of relationship between the presence of pleural plaques and a later development of any form of cancer;

(13) the history of evolution and knowledge of asbestos related diseases;

(14) the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

(15) cancer incidence in the general population and among asbestos workers and its potential causes, including but not limited to SV-40;

(16) the incidence of mesothelioma among various kinds of workers exposed to asbestos, and the relative importance of various fiber types and the cause of mesothelioma;

(17) causation of cancer in this case, including the absence of pathologic and other evidence in this case sufficient to implicate any Owens-Illinois product as a cause or the cause of plaintiff's cancer;

(18) the scientific methods to be used in attributing causation of an asbestos-related cancer to a particular exposure or series of exposures, including exposures to a particular asbestos-containing product or products;

(19) molecular biology and causation of mesothelioma as it relates to SV-40;

DB1/64473004.1

(20)   DNA sequencing and testing for different forms of cancer, including mesothelioma and the SV-40;

(21)   to the extent not covered above, asbestos medicine in general as well as SV-40 in general.

84.   Adi F. Gazdar, MD
Deputy Head
Hamon Center for Therapeutic Oncology Research
UT Southwestern Medical Center at Dallas
Dallas, TX
(214) 648-4921

Dr. Gazdar is a pathologist. He may testify, live or by deposition, concerning his review of the medical records, pathology and/or work history of Plaintiff and Plaintiff's medical condition, and the cause of Plaintiff's medical condition. His testimony may also include discussion of asbestos and its effect on human health generally and Plaintiff's specifically, and the effect that other substances have on human health generally and Plaintiff's condition specifically, including the polio vaccine and the SV-40 contaminant. Dr. Gazdar may also testify regarding the medical conditions of Plaintiff based on review of medical records, x-ray reports, Plaintiff's experts' reports and supplemental reports and his training, experience and other special expertise. Further, Dr. Gazdar may testify concerning the increased risk, if any, of cancer faced by asbestos exposed workers and the prognosis of such individuals. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials or SV-40 caused his/her injury. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, molecular studies, as well as any fiber burden or digestion studies performed. Furthermore, Dr. Gazdar may testify about the presence of the SV-40 virus in the Plaintiffs pathology specimens and results of PCR analysis. He may also testify about the many causes of cancer and cancer causes in general. He may also testify about the issue of idiopathic/unkown etiology of cancer.

In addition, if called to testify, either live or by deposition, Dr. Gazdar is expected to provide testimony regarding the areas stated below:

(1)   the anatomy and function of the respiratory and circulatory systems, including the protective systems of the body with regards to the inhalation and retention of dust, and the diagnosis and treatment of disease affecting such systems;

(2)   the nature of asbestos and asbestos-related diseases;

(3)   the symptomatology, disease process and diagnosis of asbestosis and cancer associated with the respiratory system, peritoneum and peritoneal cavity;

45

(4)     the nature and extent of medical and scientific knowledge regarding any association of obstructive pulmonary disease with asbestos fiber exposure;

(5)     the effect of exposure to substances other than asbestos on the development and manifestation of obstructive and restrictive conditions and diseases of the respiratory system and other causes of obstructive and restrictive disease or defects of the respiratory system;

(6)     methods of diagnosis of various diseases, especially the means of establishing the differential diagnosis of alleged asbestos-related diseases with other non-asbestos-related diseases;

(7)     incidence of lung cancer among individuals with asbestosis or asbestos exposure as compared to non-asbestotic asbestos workers, non-asbestos exposed workers and to the general population;

(8)     cigarette smoking and its effects on the lungs and other organs;

(9)     the relationship of cigarette smoking to cancer of the lung and cancers of other body parts with reference to epidemiology studies and physiologic effect;

(10)    the difference between impairment and disability;

(11)    the effect of asbestosis or other asbestos-related disease, or asbestos exposure without asbestosis or other asbestos-related disease, on disability and life expectancy;

(12)    the lack of relationship between the presence of pleural plaques and a later development of any form of cancer;

(13)    the history of evolution and knowledge of asbestos related diseases;

(14)    the import of any exhibit introduced as evidence, or any items prepared for use or used for demonstrative purposed by any witness;

(15)    cancer incidence in the general population and among asbestos workers and its potential causes, including but not limited to SV-40;

(16)    the incidence of mesothelioma among various kinds of workers exposed to asbestos, and the relative importance of various fiber types and the cause of mesothelioma;

(17)    causation of cancer in this case, including the absence of pathologic and other evidence in this case sufficient to implicate any Owens-Illinois product as a cause or the cause of plaintiff's cancer;

46

(18)   the scientific methods to be used in attributing causation of an asbestos-related cancer to a particular exposure or series of exposures, including exposures to a particular asbestos-containing product or products;

(19)   molecular biology and causation of mesothelioma as it relates to SV-40;

(20)   DNA sequencing and testing for different forms of cancer, including mesothelioma and the SV-40;

(21)   to the extent not covered above, asbestos medicine in general as well as SV-40 in general.

85.   Prof. Fred D. Pooley
MSc, PhD (Wales), FIMM, MAIME, MCIWEM, Ceng
Emissions, Effluents and Processes
Room W/2.44 Newport Road
Tel: +44 (0) 29 2087 5738

After completing his secondary education in London, he was a National Coal Board student apprentice and was awarded a scholarship from the National Coal Board to study at University College, Cardiff. He was also a Medical Research Council Postdoctoral Research Fellow. He obtained a BSc Honours degree in Mining Engineering in 1963, MSc in Minerals Engineering in 1964, and PhD in 1966, all awarded from the University of Wales. Prior to his present appointment as Professor he was a Lecturer in Minerals Engineering, a Senior Lecturer in Mineral Processing, and a Reader in Minerals Engineering at the University of Wales. During his time at the University he has attracted external funding in excess of £1M. His research at Cardiff specializes in the collection, quantification and characterizations of airborne dusts, vapors and gases and the biological treatment of minerals. Facilities within his research group are renowned, and research data obtained is of paramount importance to other researchers and agencies throughout the world. He has produced over 40 PhD graduates, and written in excess of 120 technical papers. He has lectured in many countries to a range of national educational and business related organizations. He has acted as consultant on biological effects of minerals dusts, their collection and quantification, to the following: British Medical Research Council, Health and Safety Executive, World Health Organization, National Institute of Occupational Safety and Health, USA, and a number of other industrial and governmental organizations, for example Department of Health and Department of the Environment. He has performed many industrial consultancies and has numerous contacts relating to his research work. His public output has been extensive in providing information, help and advice to local authorities and small businesses. He is a member of the editorial board of the Minerals Engineering Journal and reviewer for four journals.

Dr. Pooley, if called to testify, may testify in the area of the medical and scientific aspects of exposure to any dust, as well as exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may also testify regarding any fiber burden or digestion studies performed. He may testify regarding

DB1/64473004.1

cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury. Dr. Pooley will testify about the asbestos fiber-types in general as well as individually. He will discuss the different families of asbestos fibers and their propensity to cause disease. He will discuss his findings from the results of fiber-burden analysis of the Plaintiff's lung tissue and the significance, if any, of those findings.

86.   Keith Benson, Ph.D.
      Principal, Green College
      University of British Columbia
      6201 Cecil Green Park Road
      Vancouver, BC V6T1Z1
      CANADA

Keith Benson, Ph.D is a historian, engaged in teaching and consulting work in the History of Science, Technology and Medicine.

Dr. Benson is expected to testify concerning state-of-the-art and the development of knowledge regarding asbestos, asbestos-containing products, asbestos exposure and asbestos-related diseases. He will testify about the health and safety issues surrounding the use of asbestos containing products in the 1940s-1960s. He will testify regarding his historical knowledge and research regarding cigarette smoking, other occupational lung diseases and other health issues relating to plaintiffs alleged asbestos-related disease in this case. He will testify about the different types of asbestos fiber generally, his historical knowledge regarding the health consequences of exposure to the various types of asbestos fiber, and specifically about the types of asbestos fiber used at various points in time during the manufacture of Kaylo. He will testify about the history of science and technology applicable to these cases, and the cultural history of the United States as applicable to these cases, including the prevalence and nature of product and other warnings during various periods of time. He may also testify to the availability, or lack thereof, of substitutes for asbestos in high temperature/thermal insulating products, including efforts by O-I to find a non-asbestos substitute for use in Kaylo. He will testify about the source and development of threshold limit values (TLVs) for asbestos exposure. He also will testify about Owens-Illinois' actions regarding asbestos and asbestos-containing products in the 1940's and 1950's, including the Saranac Lake documents, among other things. He will testify about his review and opinions regarding Owens-Illinois and other company documents listed on the plaintiffs and Owens-Illinois's exhibit lists in these cases, and about prior testimony of former Owens-Illinois employees. He may also testify concerning his investigation of worksites where the plaintiff worked, his findings regarding the asbestos-containing and other products used at these work sites, any documents he obtained in his investigation and other relelvant worksite-related and exposure-related issues regarding the plaintiffs in this case, and his understanding of the historical context of all such matters, including pertinent information regarding asbestos and health known by or available to plaintiffs employers and premises owners where plaintiffs claim exposure to asbestos containing products. He will also testify regarding the history of Owens-Illinois's manufacturing and use of

48

asbestos and its knowledge regarding asbestos and health consequences of exposure to asbestos. He may also testify regarding his review of discovery and testimony in this case, and regarding other asbestos-containing products and their manufacturers through his review of discovery responses and prior testimony. His opinions are set forth in transcripts of prior testimony he has given, copies of which this defendant believes are in the possession of plaintiffs' counsel.

87.   Russell Harley, MD
      Department of Pathology & Laboratory Medicine
      171 Ashley Avenue
      Charleston, SC  29425-5836
      (843)792-4444

Dr. Harley, if called to testify, is expected to provide testimony concerning the anatomy and function of the respiratory and circulatory systems; examinations conducted and opinions regarding tissue samples of decedents; the symptomatology, disease process and diagnosis of asbestosis and cancer of the respiratory system, peritoneum and peritoneal cavity; the nature and extent of medical and scientific knowledge regarding any association of pulmonary disease with asbestos fiber and the effect of exposure to substances other than asbestos in the development and manifestation of diseases of the respiratory system; the methods of diagnosis and means of establishing the differential diagnosis of asbestos-related diseases with non-asbestos related diseases; the incidence of lung cancer in the general population and those individuals exposed to asbestos; cigarette smoking and its effects on the lungs; the difference between impairment and disability; the effect of asbestosis on disability and life expectancy; the lack of relationship between pleural plaques and development of any cancer; the history, evolution and knowledge of asbestos-related diseases; and the evolution of the medical communities' awareness of the increased risks for an asbestos-related disease in the cases of prolonged exposure.

Dr. Harley, if called to testify, may testify regarding his review of Plaintiff's and/or Decedent's medical records and diagnosis of the physical    condition and relationship, if any, between Plaintiff and/or Decedent's exposure to asbestos. Dr. Harley may testify in the area of the medical and scientific aspects of exposure to dust as produced by asbestos-containing products and the development of asbestos-related disease generally. He may testify regarding cause of medical condition and whether the extent to which plaintiffs' particular exposures to asbestos-containing materials caused his/her injury, as well as to diseases of the lungs and respiratory systems caused by tobacco smoking. He may also testify regarding the immunohistochemical staining process and results of staining performed on the plaintiffs' lung tissue samples, as well as any fiber burden or digestion studies performed. He may also testify regarding idiopathic diseases of the lungs, including idiopathic lung cancer and mesothelioma.

88.   David T. Wolfe, CPA
      GLASGOW FORENSIC GROUP LLC
      210 Interstate North Parkway, Suite 700
      Atlanta, Georgia 30039
      (678) 528-0349

49

Mr. Wolfe is an accountant who is familiar with the production by Owens-Corning Fiberglas to Owens-Illinois of certain Kaylo sales invoices and with the computerization of the data from these invoices. He will testify concerning the business records of Owens-Illinois regarding its Kaylo Division and those records maintained by Owens-Corning Fiberglas regarding the sale of Kaylo by that company.

89. Roger Morse
    Morse Zehnter
    165 Jordan Road
    Troy, NY 12180

Mr. Morse is an industrial architect and president of Morse Zehnter Associates, an architectural consulting firm. Mr. Morse may testify about the construction process of chemical and manufacturing facilities

90. Ronald F. Dodson, Ph.D., FCCP, FAHA
    President: Dodson Environmental Consulting, Inc.
    Senior Consultant: ERI Consulting, Inc.
    Office; ERI Consulting, Inc.
    2026 Republic Drive, Suite A
    Tyler, Texas 75710

Ronald F. Dodson, Ph.D. served as a research administrator and/or researcher in the University of Texas components in Tyler, Texas prior to his retirement from academia in August of 2005, for over twenty five years. He is trained as a biological electron microscopist and his research since the mid seventies has focused on the effects of inhaled dusts with a particular emphasis on asbestos. He continues his research and scientific writings through his laboratory which is now established in the private sector. His research in the past has focused on developing and applying analytical methods in particulate isolation, identification, and quantification from lung tissue, extrapulmonary sites, body fluids, as well as environmental samples as studied by light and electron microscopy. If called to testify Dr. Dodson could offer opinions concerning the pathogenicity or carcinogenicity of asbestos as related to types of asbestos, tissue burden of asbestos, and fiber characteristics (lengths, chemical characteristics, etc.).

Tissue Digestion

Tissue samples consisting of either embedded lung or extrapulmonary tissues or formalin fixed tissue of the same materials submitted to Dr. Dodson will be evaluated as to appropriateness for further study via digestion techniques which permit particulate isolation and subsequent quantification of tissue content by light and/or analytical transmission electron microscopy. All solutions that are used in the procedures will be prefiltered and other laboratory quality controls will be provided in any report generated. Fixed tissue submitted will be sampled (when adequate material exists) with one-half of the tissue blocks being used for establishment of the dry/wet ratio and one-half of each block being used for the process of creating a digestate for that representative sample.

50

The sample from the respective digestate will be collected on a mixed cellulose ester (Millipore Corporation, Bedford, MA) filter (pore size 0.22μm), a portion of which will be cleared by acetone vapors thus permitting evaluation by light microscopy for assessment of the presence of ferruginous bodies. Dr. Dodson has published numerous articles discussing the types of ferruginous bodies seen in such preparation and will classify any structures found in such preparation accordingly.

Additional filters will be prepared via collection of samples of digestate on polycarbonate filters (0.2μm pore size-Nuclepore; re Corporation, Pleasanton, CA). The process of preparing the samples for assessment by Analytical Transmission Electron Microscopy will involve the creation of a replica film deposited directly on the surface of the filter thus entrapping the collected particulates and permitting a "more direct method" of preparation which is considered important in obtaining the most accurate information regarding the tissue burden of particulates especially asbestos. The analysis of the collected particulates will then be evaluated by Analytical Transmission Electron Microscopy for the content of asbestos structures. One scan will be carried out a sufficiently high magnification to permit detection and analysis of all fibers equal to or greater than 0.5μm in length in the count area. Any ferruginous bodies found in the scan area will be analyzed as to composition of the core material.

A second scan of a larger area of the preparation at lower magnification (1,500x-2,500x) will be carried out in order to determine the presence of larger (longer) asbestos structures. Any asbestos bodies found in the count area will have cores analyzed for establishment as to the type of asbestos. Any uncoated fibers (>3μm) will also be analyzed and if determined as asbestos fibers be defined as to type.

Dr. Dodson has published numerous articles, chapters in books, and recently edited a text on the subject of asbestos as related to disease, tissue burden, and related public health issues. If called to testify, may testify from his scientific expertise in these fields and may use visual aids, slides, photographs, drawings, flip charts, and power point presentations. He may also utilized data from his publications and those articles referenced in those presentations. A copy of his curriculum vitae is attached to this supplemental designation.

Dr. Dodson, if called to testify, may testify based on his best scientific judgments regarding medical and scientific aspects of exposure to dust, as well as exposure to dusts as produced by asbestos-containing products as generally related to the development of asbestos-related diseases. Dr. Dodson will testify about the asbestos fiber types in general as well as unique features of the various types. He will discuss his findings from the results of fiber/ferruginous burden analysis of the Plaintiff's tissue and the significance of these findings, if any, as related to the Plaintiff's disease (s).

Dr. Dodson may testify based on his best scientific judgment, based on his review of the medical records, pathology materials, expert as testify based upon his review of medical records, pathology materials, expert reports, deposition testimony in the case, his

background, education, and professional training.  All of his opinions will be offered based on reasonable scientific conclusions.

91.    Joseph J. Renn, III, M.D., F.C.C.P., B.C.F.E., B.C.F.M.
       439 Buckeye Road
       Core, WV 26541
       (304) 598-3710

Dr. Renn is a certified NIOSH B-reader.  Dr. Renn may testify concerning the anatomy and function of the respiratory and circulatory system, the nature of asbestos, the disease process and diagnosis of asbestos and cancer associated with the respiratory system, the nature and extent of medical and scientific knowledge regarding the association of pulmonary disease with asbestos fiber exposure, the effect of exposure to substances other than asbestos on the development or manifestation of obstructive and restrictive conditions and diseases particularly in means of establishing the differential diagnosis of alleged asbestos diseases with other government warnings, smoking and other areas of the state-of-the-art, incidents of lung cancer among individuals with asbestosis compared with non-asbestos exposed workers and with the general population, and cigarette smoking and its effects on the lungs.  Dr. Renn may testify concerning the examination and diagnosis of the physical condition of plaintiff and concerning the overall condition and relationship of that condition, if any, to plaintiff's alleged exposure to asbestos.  He may also testify about the plaintiff's prognosis or current condition as well as the plaintiff's clinical presentation.

Dr. Renn will testify concerning state of the scientific and medical art in the history and knowledge of asbestos-related diseases and asbestos-related diseases in general, and the medical condition of plaintiff's epidemiology and general medicine regarding asbestos exposure.  He may also provide opinions on the probable time period(s) of asbestos exposure with relation to the causation of the disease asbestosis.  In doing so, he will also provide percentages of probability of causation for exposure to asbestos from first exposure to last exposure.  As a basis for opinion, he will rely in part upon scientific papers published by Peto, Seidman and Selikoff, Morgan and Lampshear, among others.  Dr. Renn may also testify regarding the state of scientific and medical knowledge during the time asbestos was used commercially in high temperature insulation products.  Dr. Renn will testify about his review of the medical records and other reports in this case.  He will discuss plaintiff's condition and his condition after the diagnosis and treatments for his asbestosis.  He may testify regarding cause of plaintiff's medical condition and whether the extent to which plaintiff's particular exposures to asbestos-containing materials caused his injury.

92.    Earl D. Gregory, Ph.D., CIH, CSP
       5718 Yamasseo Drive
       Hamilton, Ohio 45011

Dr. Gregory is a certified industrial hygienist and certified safety professional.  He has over 30 years experience in the area of occupational safety and health.  He will be called

DB1/64473004.1

to testify about general issues of industrial hygiene, including but not limited to asbestos exposure, exposure to other dusts and chemicals in the workplace, dust levels, and exposure levels. He may also testify about general industrial hygiene principles and methodologies used to determine whether a potential hazard to asbestos exists. Dr. Gregory is familiar with and may testify regarding the evolution of knowledge regarding a safe level of exposure to asbestos as understood by the industrial hygiene community and the evolution of the state of the art as it relates to asbestos and industrial hygiene.

He has reviewed the published scientific and medical and industrial hygiene literature relating to the development of knowledge concerning asbestos-related health risks. In addition to his academic and professional credentials, he has over 30 years of practical experience in the field of industrial hygiene, including the recognition, monitoring and control of occupational disease and potentially hazardous exposures.

Dr. Gregory is also familiar with the characteristics, uses, and limitations of a variety of asbestos-containing products, including without limitation insulation materials. In addition, he is familiar with the characteristics, uses and limitations of non-asbestos containing insulation materials and the applications to which different kinds of insulations were put. He is familiar with exposure levels experienced by workers working with or around such materials, including studies of such exposure levels among workers such as the plaintiff. Based on well-accepted methodology, Dr. Gregory will testify regarding these matters, including his calculations regarding the plaintiff's likely cumulative lifetime exposures to asbestos from any Owens-Illinois products and other sources, including from levels in the ambient air. Dr. Gregory also may testify in response to the testimony of plaintiffs' experts regarding estimates of plaintiff's exposures to asbestos from various sources and their reliance on medical and scientific articles regarding exposure levels in populations with increased incidence of asbestos-related diseases. Plaintiffs' counsel is in possession of prior transcripts of Dr. Gregory's testimony, which set forth some of his opinions.

Dr. Gregory is familiar with the industrial hygiene principles that apply when evaluating the scope of an asbestos risk and whether a risk is presented to persons who are remote from the source of the potential hazard. Dr. Gregory is also expert with regard to regulations that apply to asbestos and asbestos containing materials and may offer testimony regarding those regulations.

93. Any treating or examining physician of plaintiff and/or any witnesses listed by any other party herein whether live or by previous deposition or trial testimony.

94. All physicians who have seen, examined, and/or treated plaintiff and/or plaintiff's decedent.

95. Defendant further reserves the right to call any witness named by plaintiffs or any other party in this case.

96.     All parties, co-workers, treating physicians and other fact or expert witnesses with personal knowledge of plaintiffs' alleged exposure to asbestos or medical condition.

DB1/64473004.1

<u>FACT WITNESSES</u>

Although the testimony of the following individuals is primarily factual, their testimony may also include expert opinions.

**A.**   <u>**Corporate Fact Witnesses**</u>

1.   Lee Wesselmann
     Owens-Illinois, Inc.
     One Seagate
     Toledo, OH 43666
     (419) 247-2476

Mr. Wesselmann is a Senior Vice President and Chief Financial Officer of Owens-Illinois, Inc.  Mr. Wesselmann may testify regarding the identify of current and past Owens-Illinois, Inc. stockholders, officers, and directors, the current and past financial condition of Owens-Illinois, Inc., the financial performance of the Kaylo division, and the economic impact of the asbestos litigation on defendants.   Mr. Wesselmann is represented by the undersigned counsel.  **Do not contact Mr. Wesselman except through counsel for Owens-Illinois.**

2.   Michael R. Scheiding
     or another Owens-Illinois, Inc. Document Custodian
     Owens-Illinois, Inc.
     One Seagate
     Toledo, OH 43666
     (419) 247-1763

Mr. Scheiding or another employee of Owens-Illinois, Inc. is familiar with the production by Owens-Corning Fiberglas to Owens-Illinois of certain Kaylo sales invoices and with the computerization of the data from these invoices.  He will testify concerning the business records of Owens-Illinois regarding its Kaylo Division and those records maintained by Owens-Corning Fiberglas regarding the sale of Kaylo by that company during the years 1953 to 1959.  **Do not contact Mr. Scheiding or another Owens-Illinois, Inc. Document Custodian except through counsel for Owens-Illinois.**

3.   Willis G. Hazard
     (Deceased)

Mr. Hazard may testify by deposition about the corporate history, operations, products, and product testing of Owens-Illinois, Inc.

55

4.     Samuel Schillaci
       5780 Strathmore Lane
       Dublin, OH  43017
       (614) 792-7797

       Mr. Schillaci will testify about the history, organization, and products of Owens-Illinois, Inc.  He may also testify about the utility of asbestos insulation products and the lack of viable alternatives.  **Mr. Schillaci should not be contacted except through counsel for Owens-Illinois.**

5.     Robert Grim
       6102 Alexa Lane
       Sylvania, OH  43560
       (419) 882-6256

       Mr. Grim is a former Owens-Illinois, Inc. employee who will testify as to Owens-Illinois, Inc.'s sales of Kaylo and as to Owens-Illinois, Inc.'s current financial status.  **Mr. Grim should not be contacted except through counsel for Owens-Illinois.**

6.     Richard E. Grimmie (live or by deposition)

       Richard Grimmie is a seventy-six year old former employee of Owens-Illinois.  Mr. Grimmie will testify regarding the working and safety conditions at the Owens-Illinois plant in Berlin, New Jersey.  **Mr. Grimmie should not be contacted except through counsel for Owens-Illinois.**

7.     William D. Kelley (by deposition taken on May 28, 1985)
       Custodian of Records
       Authenticates various ACGIH documents

8.     Les Crawford

9.     A. Mitchell Polinsky

10.    Lee A. Wesselman

11.    David G. Van Hooser

**B.     Other Fact Witnesses**

12.    Adams, Harold
13.    Alexander, Louis
14.    Allen, Marshall
15.    Allmond, David
16.    Alt, Arlie
17.    Amenta, Sebastian

56

DB1/64473004.1

18. Antonelli, Albert
19. Argenbright, Robert
20. Armstrong, Othello
21. Arrington, Ulysses
22. Auffarth, John
23. August, Henry
24. Baker, Nathaniel
25. Balbos, Albert
26. Ball, Gilbert
27. Ball, Melvin
28. Ball, Michael
29. Ball, Stanley
30. Barlow, Tracey
31. Barrett, Milton
32. Bates, Nathaniel
33. Battaglia, Charles
34. Beaudet, John
35. Bentley, George
36. Berger, Lewis
37. Beverage, Luther
38. Bigham, Eugene
39. Bolfar, Peter
40. Bonn, Jack
41. Borys, Ed
42. Bowser, Fred
43. Braham, George
44. Brandon, Sidney
45. Brewster, Crockett
46. Brey, John
47. Brockette, George
48. Brown, Roy
49. Bruno, Alexander
50. Bryan William
51. Buczek, John
52. Cain, Frank
53. Celozzi, Dominic
54. Cerrato, Joseph
55. Chester, Vernon
56. Conigliaro, Santo
57. Cox, Ronald
58. Coyne, Michael
59. Creel, George
60. Curilla, John
61. Cutchmber, Donald
62. Dackerman, Clayton
63. Davenport, Louis

DB1/64473004.1

64.   Ellerman, Leroy
65.   Erhardt, George W.
66.   Fires, John
67.   Fort, Paul
68.   Gamber, Stewart
69.   George, Clarence
70.   Gist, Rodney
71.   Goins, Glen
72.   Goodman, John
73.   Green, Charles
74.   Grimshaw, John
75.   Hahn, William
76.   Hall, Lester
77.   Hawkins, Jr., Donald
78.   Hay, Erroll
79.   Hill, Emanuel
80.   Hoening, William
81.   Hoffman, Jr., Harry
82.   Hoffman, Sr., Harry
83.   Jaglieski, Joseph
84.   James, William
85.   Jones, Felix
86.   Joyce, James
87.   Kobordo, Victor
88.   Lagaz, John
89.   Lease, Noah
90.   List, Fred
91.   Lomas, Robert
92.   Lord, James
93.   Lowe, William
94.   Macklin, Wilbert
95.   Martin, Raymond
96.   McCormick, Robert
97.   Nichol, Andrew
98.   Parker, Edgar
99.   Penta, John
100.  Perry, Robert
101.  Piscano, Vincent
102.  Player, Dan
103.  Poniatowski, Chester
104.  Reiber, William
105.  Robbins, Woodrow
106.  Ruley, Ron
107.  Runk, III, Clayton
108.  Schauman, John
109.  Schepling, Ed

DB1/64473004.1

110.    Schmidt, Don
111.    Short, Gatewood
112.    Smith, Jack
113.    Snyder, James
114.    Spangler, John
115.    Spencer, Norman
116.    Stelmack, Melvin
117.    Stewart, William B.
118.    Trappas, Nick
119.    Walbert, George
120.    Wiggins, Arthur
121.    Williams, John
122.    Wilson, Albert
123.    Woody, James
124.    Wroten, Jr., Edward
125.    Yoder, Donald
126.    York, James

**C.    General Fact / Expert Witnesses**

127.    Defendant designates any and all family members identified by any party in its discovery responses including but not limited to Depositions, Answers to Master Set of Discovery Requests, Responses to Requests for Disclosure, Witness Designations, and Amended and/or Supplemental Answers filed by any party in this case.

128.    Defendant designates any and all co-workers identified by any party in its discovery responses including but not limited to Depositions, Answers to Master Set of Discovery Requests, Responses to Requests for Disclosure, Witness Designations, and Amended and/or Supplemental Answers filed by any party in this case.

129.    All parties, co-workers, treating physicians and other fact or expert witnesses with personal knowledge of plaintiffs' alleged exposure to asbestos or medical condition.

130.    Any treating or examining physician of plaintiff and/or any witnesses listed by any other party herein whether live or by previous deposition or trial testimony.

131.    All physicians who have seen, examined, and/or treated plaintiff and/or plaintiff's decedent.

132.    The medical doctors and or health care facilities below may provide expert/fact witness testimony regarding Plaintiff's medical conditions. Their opinions are set forth in Plaintiff's medical records.

133.    Custodians of all applicable medical and employment records.

134.    Any custodians of records of any defendant, cross-defendant, third party defendant, or the employers of the plaintiffs.

59

135.   All defendants named in this litigation.

136.   Anyone listed by any other party.

137.   Anyone listed as a witness in the <u>Abate</u> consolidations.

138.   Any rebuttal witness or witnesses.

139.   Anyone Owens-Illinois identifies at a later date, including but not limited to after discovery, and after other parties have identified proposed evidence.

140.   Any witness who becomes necessary because of unexpected circumstances.

Defendant reserves the right to call any witness named by plaintiffs or any other party in this case.

Defendant further reserves the right to call any witness named by any other party in this case.

Defendant further reserves the right to supplement this Designation of Expert and Fact Witnesses to the extent such supplement may be necessitated by the receipt of discovery or other information subsequent to the date heron.

DB1/64473004.1

# Exhibit 2

## OWENS-ILLINOIS, INC.'S
## DESIGNATION OF DEPOSITIONS AND TRIAL TESTIMONY

Testimony from the video deposition of Horton Corwin Hinshaw, Sr., M.D. taken on November 19, 1984 through December 11, 1984, in In Re: Related Asbestos cases, No. C-83-6251-RFP (all cases) U.S.D.C., Northern District of California as follows:

| Page | Line | through | Page | Line |
|------|------|---------|------|------|
| Volume 1 | | | | |
| 12 | 5 | | 15 | 12 |
| 15 | 15 | | 20 | 21 |
| 21 | 26 | | 25 | 3 |
| 27 | 5 | | 28 | 12 |
| 32 | 9 | | 32 | 23 |
| 35 | 1 | | 36 | 6 |
| 37 | 19 | | 38 | 27 |
| 40 | 14 | | 41 | 11 |
| 42 | 15 | | 44 | 18 |
| 44 | 26 | | 45 | 1 |
| 46 | 27 | | 47 | 11 |
| 47 | 27 | | 50 | 1 |
| 50 | 5 | | 51 | 4 |
| 53 | 20 | | 54 | 7 |
| 54 | 27 | | 58 | 6 |
| 58 | 14 | | 58 | 17 |
| 59 | 8 | | 60 | 2 |
| 60 | 11 | | 67 | 25 |
| 68 | 8 | | 68 | 22 |
| 68 | 27 | | 70 | 2 |
| 70 | 6 | | 80 | 10 |
| 83 | 7 | | 83 | 20 |

61

| 83 | 24 | | 85 | 3 |
|---|---|---|---|---|
| 85 | 7 | | 85 | 13 |
| 86 | 10 | | 88 | 20 |
| 88 | 28 | | 91 | 15 |
| | | Volume 2 | | |
| 101 | 27 | | 103 | 12 |
| 103 | 18 | | 105 | 18 |
| 107 | 1 | | 109 | 10 |
| 110 | 1 | | 110 | 9 |
| 110 | 12 | | 110 | 17 |
| 110 | 25 | | 110 | 27 |
| 111 | 8 | | 112 | 28 |
| 113 | 18 | | 115 | 10 |
| 115 | 23 | | 120 | 20 |
| 121 | 20 | | 122 | 14 |
| 123 | 12 | | 125 | 14 |
| 126 | 8 | | 128 | 13 |
| 128 | 24 | | 129 | 19 |
| 129 | 28 | | 130 | 5 |
| 130 | 25 | | 131 | 19 |
| 132 | 6 | | 132 | 28 |
| | | Volume 5 | | |
| 387 | 24 | | 387 | 28 |
| 403 | 18 | | 404 | 2 |

Deposition testimony of Dr. Hans Weill in Ernest Howell v. Johns-Manville Sales Corp., et al., No. M-80-169-CA in the U.S. District Court for the Eastern District of Texas, Marshall Division, and Robert Soloman v. Johns-Manville Sales Corp., et al., No. TY-84-30-CA in the United States District Court for the Eastern District of Texas, Tyler Division.

| Page | Line | through | Page | Line |
|---|---|---|---|---|
| 4 | 10 | | 14 | 16 |

DB1/64473004.1

| | | | | |
|---|---|---|---|---|
| 14 | 17 | | 15 | 15 |
| 15 | 16 | | 23 | 5 |
| 23 | 6 | | 40 | 23 |
| 41 | 2 | | 46 | 17 |
| 46 | 18 | | 47 | 10 |
| 47 | 11 | | 48 | 16 |
| 48 | 21 | | 52 | 12 |
| 52 | 13 | | 52 | 17 |
| 52 | 18 | | 53 | 16 |
| 53 | 17 | | 66 | 21 |
| 67 | 6 | | 71 | 1 |
| 71 | 2 | | 74 | 4 |
| 77 | 12 | | 77 | 20 |
| 78 | 14 | | 78 | 19 |
| 89 | 15 | | 90 | 12 |
| 92 | 8 | | 94 | 18 |

Deposition of Dr. Milton Gray in <u>Charles Hatley Newman v. Johns-Manville, et al.</u>, No. M-79-124-CA, Marshall Division.

| <u>Page</u> | <u>Line</u> | through | <u>Page</u> | <u>Line</u> |
|---|---|---|---|---|
| 3 | 16 | | 3 | 17 |
| 22 | 8 | | 25 | 21 |
| 26 | 2 | | 27 | 3 |
| 27 | 11 | | 28 | 10 |
| 28 | 20 | | 29 | 17 |
| 30 | 3 | | 32 | 17 |
| 36 | 20 | | 37 | 21 |
| 46 | 11 | | 48 | 11 |
| 48 | 23 | | 48 | 25 |

DB1/64473004.1

Deposition of Dr. Milton Gray in Henry E. Holland, et al. v. Johns-Manville, et al., No. M-80-152, Beaumont Division.

| Page | Line | through | Page | Line |
|------|------|---------|------|------|
| 10 | 14 | | 10 | 24 |
| 11 | 18 | | 12 | 1 |
| 12 | 11 | | 13 | 24 |
| 15 | 10 | | 15 | 13 |
| 19 | 6 | | 20 | 11 |
| 26 | 5 | | 26 | 20 |
| 26 | 24 | | 27 | 21 |
| 38 | 20 | | 38 | 25 |
| 40 | 11 | | 41 | 2 |
| 53 | 9 | | 54 | 13 |
| 58 | 15 | | 59 | 17 |
| 80 | 23 | | 81 | 20 |
| 90 | 19 | | 91 | 20 |
| 96 | 7 | | 97 | 2 |
| 171 | 25 | | 173 | 13 |

Deposition of Dr. Milton Gray in Philip L. Cano, et ux v. Raymark taken on November 21, 1983, No. C-83-49-CA, U.S. District Court, Southern District, Corpus Christi Division.

| Page | Line | through | Page | Line |
|------|------|---------|------|------|
| 7 | 19 | | 7 | 20 |
| 19 | 23 | | 23 | 11 |
| 25 | 2 | | 28 | 4 |
| 28 | 12 | | 28 | 17 |
| 29 | 1 | | 29 | 7 |

DB1/64473004.1

Oral deposition of Dr. Milton Gray in <u>Edith Jenkins and Carl E. Jenkins v. Johns-Manville Sales Corp., et al.</u>, C.A. No. TY-79-61.

| <u>Page</u> | <u>Line</u> | through | <u>Page</u> | <u>Line</u> |
|---|---|---|---|---|
| 11 | 15 | | 14 | 5 |
| 15 | 15 | | 16 | 19 |
| 20 | 12 | | 20 | 19 |

Oral deposition of Dr. Stanley Donald Greenberg taken in <u>Gerrit Spruit v. The Celotex Corporation, et al.</u>, Civil Action No. CA3-85-1979-D, taken in the United States District Court for the Northern District of Texas, Dallas Division on August 7, 1987.

| <u>Page</u> | <u>Line</u> | through | <u>Page</u> | <u>Line</u> |
|---|---|---|---|---|
| 5 | 8 | | 5 | 10 |
| 6 | 2 | | 6 | 12 |
| 7 | 2 | | 7 | 7 |
| 15 | 21 | | 15 | 25 |
| 18 | 10 | | 25 | 16 |
| 25 | 25 | | 34 | 9 |
| 34 | 13 | | 34 | 22 |
| 35 | 6 | | 42 | 8 |
| 42 | 24 | | 44 | 14 |
| 46 | 3 | | 48 | 7 |
| 50 | 10 | | 50 | 23 |
| 51 | 16 | | 53 | 9 |
| 56 | 11 | | 57 | 25 |
| 58 | 12 | | 58 | 24 |
| 59 | 4 | | 59 | 21 |
| 63 | 7 | | 65 | 3 |

DB1/64473004.1

Deposition of Willis G. Hazard, taken on February 11, 1981, in <u>Numerous Asbestos Cases</u>.

| <u>Page</u> | <u>Line</u> | through | <u>Page</u> | <u>Line</u> |
|------|------|------|------|------|
| 14 | 17 | | 15 | 21 |
| 16 | 18 | | 17 | 10 |
| 17 | 22 | | 18 | 2 |
| 19 | 4 | | 19 | 24 |
| 24 | 13 | | 24 | 16 |
| 30 | 15 | | 31 | 10 |
| 36 | 22 | | 37 | 10 |
| 38 | 21 | | 39 | 9 |
| 42 | 8 | | 42 | 15 |
| 44 | 17 | | 45 | 1 |
| 49 | 1 | | 49 | 3 |
| 59 | 18 | | 60 | 3 |
| 73 | 10 | | 73 | 22 |
| 81 | 5 | | 81 | 21 |
| 82 | 17 | | 83 | 6 |
| 84 | 17 | | 84 | 20 |
| 86 | 10 | | 86 | 23 |
| 89 | 18 | | 90 | 7 |
| 91 | 8 | | 91 | 11 |
| 100 | 6 | | 104 | 5 |
| 106 | 15 | | 108 | 4 |
| 109 | 1 | | 113 | 22 |
| 114 | 19 | | 115 | 4 |
| 116 | 11 | | 117 | 17 |
| 118 | 5 | | 118 | 13 |
| 118 | 22 | | 121 | 18 |
| 122 | 19 | | 126 | 17 |
| 127 | 13 | | 128 | 11 |

| 141 | 11 |  | 141 | 17 |
|-----|----|--|-----|----|
| 147 | 16 |  | 148 | 6  |
| 159 | 15 |  | 159 | 21 |

Testimony on direct examination of Samuel Schillaci in Clarence Wilson, et al., No. G-81-168, in the U.S. District Court for the Southern District of Texas, Galveston Division.

Testimony on direct examination of Samuel Schillaci in William J. Kornegay v. Johns-Manville Sales Corp., et al., No. G-81-131 in the United States District Court for the Southern District of Texas, Galveston Division.

Testimony on direct examination of Samuel Schillaci taken on July 31, 1981 in Rosalindo Directo v. Johns-Manville Sales Corp., et al., No. C259023, Superior Court of Los Angeles.

Testimony from the video deposition of Samuel Schillaci taken on June 15, 1989 in Newark, New Jersey, in In Re: Asbestos Personal Injury Cases in the following courts:  Circuit Court for Baltimore City, Maryland; Circuit Court for Baltimore County, Maryland; Circuit Court for Allegany County, Maryland; Circuit Court for Prince George's County, Maryland; Circuit Court for St. Mary's County, Maryland; Circuit Court for Washington County, Maryland; United States District Court of Maryland; Superior Court of Washington, District of Columbia.

Testimony on direct examination of Dr. Stephen M. Ayres, taken June 11 and 12, 1987 in Loyd Galveston 92, No. G-82-144, in the U.S. District Court for the Southern District of Texas, Galveston Division.

Testimony on direct examination of A. Mitchell Polinsky, taken July 8, 1987 in Loyd Galveston 92, No. G-82-144, in the U.S. District Court for the Southern District of Texas, Galveston Division.

Testimony on direct examination of Dr. Lewis Solmon, taken July 8, 1987 in Loyd Galveston 92, No. G-82-144, in the U.S. District Court for the Southern District of Texas, Galveston Division.

Testimony by videotape deposition of Steven M. Ayers, M.D., taken on August 10 through August 12, 1989, in Baltimore, Maryland in In re: Asbestos Personal Injury Cases in the following courts:  Circuit Court of Baltimore City, Maryland, Circuit Court for Washington County, Maryland; Circuit Court for Prince Georges County, Maryland; Circuit Court for Cecil County, Maryland; Circuit Court for St. Mary's County, Maryland; Superior Court of Washington, District of Columbia, Civil Division; Circuit Court of Alleghany County, Maryland; United States District Court for the District of Columbia; United States District Court of Maryland; and Circuit Court for Baltimore County, Maryland BCA 1 thorough 4.

| Page | Line | through | Page | Line |
|------|------|---------|------|------|
| | | Volume 1 | | |
| 7 | 11 | | 7 | 13 |
| 8 | 20 | | 15 | 17 |
| 15 | 21 | | 17 | 2 |
| 17 | 4 | | 18 | 13 |
| 18 | 15 | | 20 | 3 |
| 20 | 5 | | 21 | 11 |
| 21 | 3 | | 21 | 14 |
| 21 | 16 | | 21 | 17 |
| 21 | 19 | | 24 | 12 |
| 46 | 12 | | 47 | 5 |
| 47 | 10 | | 48 | 15 |
| 48 | 17 | | 48 | 18 |
| 48 | 20 | | 49 | 7 |
| 53 | 12 | | 54 | 7 |
| 54 | 9 | | 56 | 12 |
| 56 | 14 | | 56 | 16 |
| 56 | 18 | | 58 | 9 |
| 58 | 11 | | 60 | 13 |
| 60 | 15 | | 62 | 4 |
| 62 | 10 | | 62 | 11 |
| 62 | 13 | | 64 | 3 |
| 64 | 6 | | 64 | 19 |
| 64 | 21 | | 65 | 8 |
| 65 | 10 | | 65 | 14 |
| 65 | 16 | | 65 | 20 |
| 66 | 6 | | 67 | 3 |
| 67 | 5 | | 67 | 19 |
| 69 | 2 | | 69 | 15 |

DB1/64473004.1

| | | | | |
|---|---|---|---|---|
| 69 | 17 | | 69 | 19 |
| 69 | 21 | | 70 | 8 |
| 70 | 10 | | 71 | 1 |
| 71 | 3 | | 72 | 4 |
| 72 | 6 | | 73 | 10 |
| 73 | 13 | | 73 | 16 |
| 73 | 18 | | 74 | 9 |
| 74 | 11 | | 74 | 16 |
| 75 | 1 | | 75 | 3 |
| 75 | 5 | | 75 | 16 |
| 75 | 18 | | 77 | 13 |
| 77 | 16 | | 77 | 19 |
| 77 | 21 | | 78 | 6 |
| 78 | 7 | | 78 | 21 |
| 79 | 2 | | 80 | 12 |
| 80 | 14 | | 81 | 19 |
| 81 | 21 | | 82 | 7 |
| 82 | 9 | | 83 | 3 |
| 83 | 5 | | 83 | 18 |
| 83 | 21 | | 86 | 8 |
| 86 | 10 | | 87 | 6 |
| 87 | 8 | | 88 | 13 |
| 88 | 15 | | 88 | 20 |
| 89 | 1 | | 89 | 3 |
| 89 | 5 | | 90 | 12 |
| 90 | 15 | | 90 | 17 |
| 90 | 19 | | 92 | 7 |
| 93 | 2 | | 93 | 11 |
| 94 | 4 | | 94 | 8 |
| 94 | 10 | | 95 | 8 |
| 95 | 13 | | 95 | 15 |

DB1/64473004.1

| | | | | |
|---|---|---|---|---|
| 95 | 17 | | 96 | 1 |
| 96 | 3 | | 96 | 16 |
| 96 | 19 | | 97 | 6 |
| 97 | 9 | | 97 | 11 |
| 97 | 13 | | 97 | 17 |
| 98 | 13 | | 99 | 14 |
| 99 | 16 | | 100 | 1 |
| 100 | 3 | | 100 | 17 |
| 100 | 20 | | 101 | 1 |
| 101 | 13 | | 101 | 19 |
| 101 | 21 | | 102 | 4 |
| 102 | 6 | | 102 | 8 |
| 102 | 10 | | 102 | 14 |
| 102 | 16 | | 103 | 5 |
| 103 | 7 | | 103 | 10 |
| 103 | 13 | | 103 | 16 |
| 103 | 18 | | 104 | 6 |
| 104 | 8 | | 104 | 14 |
| 104 | 17 | | 104 | 20 |
| 105 | 1 | | 105 | 9 |
| 105 | 12 | | 105 | 21 |
| 106 | 3 | | 106 | 11 |
| 106 | 18 | | 107 | 1 |
| 107 | 3 | | 107 | 15 |
| 108 | 5 | | 109 | 3 |
| 109 | 6 | | 109 | 21 |
| 110 | 3 | | 111 | 5 |
| 111 | 8 | | 111 | 10 |
| 111 | 12 | | 112 | 2 |
| 112 | 4 | | 113 | 4 |
| 113 | 10 | | 113 | 21 |

70

| | | | | |
|---|---|---|---|---|
| 114 | 16 | | 117 | 2 |
| 117 | 18 | | 118 | 18 |
| 119 | 7 | | 119 | 8 |
| 119 | 10 | | 120 | 20 |
| 121 | 4 | | 121 | 6 |
| 121 | 9 | | 122 | 11 |
| 122 | 13 | | 122 | 17 |
| 122 | 19 | | 123 | 9 |
| 123 | 12 | | 125 | 2 |
| 125 | 6 | | 125 | 18 |
| 125 | 21 | | 127 | 6 |
| 127 | 8 | | 128 | 4 |
| 128 | 7 | | 128 | 21 |
| 129 | 2 | | 129 | 12 |
| 129 | 14 | | 130 | 16 |
| 130 | 18 | | 131 | 18 |
| 131 | 20 | | 132 | 17 |
| 132 | 19 | | 136 | 13 |
| 137 | 1 | | 137 | 6 |
| 137 | 8 | | 137 | 11 |
| 137 | 13 | | | |
| 137 | 6 | | 139 | 17 |
| 139 | 19 | | 139 | 21 |
| 140 | 2 | | 140 | 10 |
| 140 | 12 | | 140 | 14 |
| 140 | 17 | | 143 | 6 |
| 143 | 8 | | 143 | 17 |
| 144 | 8 | | 146 | 2 |
| 146 | 4 | | 146 | 6 |
| 146 | 9 | | 147 | 5 |
| 147 | 14 | | 148 | 9 |

71

| | | | | |
|---|---|---|---|---|
| 148 | 12 | | 148 | 21 |
| 149 | 4 | | 150 | 3 |
| 150 | 6 | | 150 | 8 |
| 150 | 10 | | 150 | 21 |
| 151 | 4 | | 151 | 8 |
| 151 | 10 | | 151 | 15 |
| 151 | 18 | | 151 | 20 |
| 152 | 1 | | 152 | 12 |
| 152 | 14 | | 152 | 17 |
| 152 | 21 | | 153 | 3 |
| 153 | 5 | | 153 | 10 |
| 153 | 12 | | 153 | 17 |
| 153 | 19 | | 154 | 6 |
| 154 | 8 | | 154 | 12 |
| 154 | 14 | | 154 | 15 |
| 155 | 15 | | 155 | 18 |
| 155 | 20 | | 156 | 3 |
| 156 | 4 | | | |
| 156 | 6 | | 156 | 9 |
| 156 | 11 | | 156 | 13 |
| 156 | 15 | | 156 | 20 |
| 157 | 1 | | 157 | 10 |
| 157 | 12 | | 158 | 16 |
| 158 | 18 | | 159 | 6 |
| 159 | 8 | | 159 | 12 |
| 159 | 14 | | 159 | 19 |
| 159 | 21 | | 160 | 14 |
| 160 | 16 | | 160 | 17 |
| 160 | 19 | | 161 | 7 |
| 161 | 9 | | 161 | 16 |
| 161 | 18 | | 162 | 10 |

DB1/64473004.1

| 162 | 12 | | 162 | 13 |
|-----|----|--|-----|----|
| 162 | 15 | | 163 | 8 |
| 163 | 10 | | | |
| 163 | 12 | | 164 | 1 |
| 164 | 3 | | 164 | 20 |
| 165 | 1 | | 165 | 10 |
| 165 | 12 | | 165 | 18 |
| 165 | 20 | | 166 | 2 |
| 166 | 4 | | 166 | 9 |
| 166 | 11 | | | |
| 166 | 13 | | 166 | 16 |
| 166 | 18 | | 166 | 19 |

Page and line references from the deposition of Horton Corwin Hinshaw, Sr., M. D., taken in Jimmie L. Vaughn v. Johns-Manville, et al., Civil Action No. CA-3-020070-F, in the United States District Court for the Western District of Texas, Waco Division, on April 23, 1982, are as follows:

| Page | Line | through | Page | Line |
|------|------|---------|------|------|
| 9 | 7 | | 89 | 6 |
| 89 | 14 | | 89 | 19 |
| 137 | 13 | | 141 | 6 |

Page and line references from the deposition of Samuel Schillaci, taken in Dorothy St. Jacque v. Johns-Manville Corp., Los Angeles, Superior Court Case No. C137465, on January 19, 1988, are as follows:

| Page | Line | through | Page | Line |
|------|------|---------|------|------|
| 18 | 8 | | 18 | 22 |
| 18 | 24 | | 19 | 2 |
| 19 | 20 | | 24 | 17 |
| 31 | 22 | | 32 | 9 |
| 37 | 20 | | 38 | 23 |

DB1/64473004.1

| | | | | |
|---|---|---|---|---|
| 49 | 4 | | 50 | 22 |
| 51 | 15 | | 52 | 2 |
| 52 | 19 | | 53 | 7 |
| 55 | 11 | | 56 | 21 |
| 57 | 3 | | 58 | 2 |
| 61 | 22 | | 63 | 3 |
| 64 | 2 | | 64 | 19 |
| 70 | 25 | | 71 | 8 |
| 71 | 14 | | 73 | 3 |
| 80 | 21 | | 80 | 25 |
| 88 | 5 | | 88 | 25 |
| 91 | 17 | | 92 | 19 |
| 93 | 9 | | 93 | 23 |
| 94 | 13 | | 95 | 16 |
| 119 | 17 | | 120 | 23 |
| 122 | 3 | | 122 | 12 |
| 134 | 16 | | 135 | 4 |

74

Page and line references from the deposition of Samuel Schillaci, taken in <u>Dorothy St. Jacque v.</u> <u>Johns-Manville Corp.,</u> Los Angeles, Superior Court Case No. C137465, on January 20, 1988, are as follows:

| <u>Page</u> | <u>Line</u> | through | <u>Page</u> | <u>Line</u> |
|---|---|---|---|---|
| 7 | 1 | | 7 | 22 |
| 8 | 7 | | 9 | 8 |
| 9 | 14 | | 11 | 13 |
| 13 | 11 | | 15 | 15 |
| 15 | 21 | | 19 | 7 |
| 20 | 10 | | 21 | 5 |
| 22 | 20 | | 23 | 20 |
| 24 | 2 | | 24 | 21 |
| 25 | 10 | | 26 | 2 |
| 28 | 10 | | 31 | 12 |
| 31 | 23 | | 34 | 7 |
| 34 | 20 | | 36 | 6 |
| 36 | 12 | | 37 | 25 |
| 39 | 16 | | 43 | 25 |
| 44 | 10 | | 46 | 24 |
| 48 | 25 | | 49 | 25 |
| 52 | 2 | | 52 | 22 |
| 80 | 19 | | 81 | 9 |
| 157 | 9 | | 157 | 20 |
| 158 | 10 | | 158 | 15 |

Page and line references from the deposition of Samuel Schillachi, taken in <u>Lazarus Fuller v.</u> <u>Owens-Corning Fiberglas Corp.,</u> Philadelphia County Court of Common Please, Case No. 5414, and other cases listed on caption pages, on December 15, 1992, are as follows:

| <u>Page</u> | <u>Line</u> | through | <u>Page</u> | <u>Line</u> |
|---|---|---|---|---|
| 16 | 5 | | 17 | 18 |
| 17 | 23 | | 21 | 1 |
| 22 | 22 | | 23 | 11 |

DB1/64473004.1