# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

STEPHEN A. WANNALL,
*as the personal representative of the Estate of*
*John M. Tyler*,

                Plaintiff,

        v.

HONEYWELL INTERNATIONAL, INC.,
*f/k/a* Allied Signal, Inc.,

                Defendant.

Civil Action No. 10-351 (BAH)

Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

This is a products liability case involving allegations that the defendant's automobile

brakes, containing chrysotile asbestos fibers, caused the decedent's lung cancer.[1]  This case is set

for trial on May 20, 2013, and among the thirty pre-trial motions filed is a motion to reconsider

the denial of the defendant's motion for summary judgment.[2]  *See* Def.'s Mot. for Recons., ECF

No. 49.  The primary basis for that motion is the intervening decision in *Ford Motor Co. v.*

*Boomer*, 736 S.E.2d 724 (Va. 2013), in which the Supreme Court of Virginia abrogated the

"substantial contributing factor" test as an appropriate articulation of proximate cause under

Virginia tort law.  *See* Def.'s Mem. Supp. Mot. for Recons. ("Def.'s Recons. Mem.") at 1, 14,

ECF No. 49-1.  In opposition to the defendant's motion for reconsideration, the plaintiff

submitted a revised expert report, which the plaintiff argued creates a genuine issue of material

fact for trial on causation.  The defendant subsequently moved to strike that declaration on a

---

[1] The plaintiff is the representative of the estate of the decedent, John M. Tyler.

[2] The Court has already resolved thirteen of these motions.  *See* Minute Order dated Apr. 22, 2013 (resolving five motions); Minute Order dated May 3, 2013 (resolving seven motions); Memorandum & Order dated May 8, 2013, ECF No. 155 (resolving one motion).

number of grounds.  For the reasons explained below, the Court grants both motions of the defendant to strike the revised expert report and for summary judgment in its favor.

## I.     BACKGROUND

An exhaustive recitation of the factual background of this case is not necessary to understand the Court's reasoning on the two motions considered in this opinion.  Therefore, the Court will limit its summary of the background to the facts bearing on those two motions.

As referenced above, the decedent died on July 28, 2010 from malignant pleural mesothelioma—a form of lung cancer.  *See* Am. Joint Pretrial Statement ("Pretrial Statement") at 2, ECF No. 133.  The plaintiff claims that the decedent's lung cancer was caused by exposure to chrysotile asbestos fibers contained in automobile brakes manufactured by Bendix Corporation.[3] *Id.*  As the defendant concedes "it is undisputed that . . . [the decedent] performed shade tree automobile repairs, which to some extent included brake repairs."  Def.'s Recons. Mem. at 2.  The term "shade tree automobile repairs" refers to the fact that, although he was not licensed as a mechanic, the decedent "did work on automobiles for [himself], [his] family and the neighborhood whenever they asked [him] to do it," which included "changing batteries, changing starter motors, generators, alternators, tires and brakes."  Def.'s Recons. Mem. Ex. B ("Tyler Dep.") at 399:1–8, 400:3–5, ECF No. 49-3.  The parties dispute the precise extent to which the decedent was exposed to asbestos fibers from Bendix brakes, though the decedent testified in his *de benne esse* deposition that he filed and beveled "hundreds and hundreds" of Bendix brake shoes in his lifetime.  *See id.* at 416:13.  The decedent further testified that he customarily used Bendix brakes, and he would ask for Bendix brakes by name "because [he] liked their product."  *See id.* at 413:10–19.

---

[3] The defendant is the successor-in-interest to Bendix Corporation.  Pretrial Statement at 2.

Both before and during his "shade tree mechanic" work, the decedent was also exposed to asbestos when he served in the Navy and when he worked as a trades helper at Fort Belvoir in Fairfax County, Virgnia.  *See* Def.'s Recons. Mem. at 3–9.  In fact, the plaintiff not only concedes that the decedent was exposed to asbestos in the Navy, but he also concedes that "[the decedent]'s exposure to asbestos during his Naval service caused his mesothelioma."  *See* Pl.'s Mot. to File Second Am. Joint Pretrial Statement at 1, ECF No. 135.  In light of the decedent's Naval and Fort Belvoir asbestos exposure, there are at least three potential causes of the decedent's cancer: the Naval exposure, the Fort Belvoir exposure, and the Bendix brake exposure.

The decedent and his wife originally filed this lawsuit on December 31, 2009 in D.C. Superior Court against thirty-six separate defendants.  *See* Notice of Removal at 1–7, ECF No. 1. The case was removed to this Court on March 3, 2010, *see id.*, and on June 23, 2011, the case was transferred to the Eastern District of Pennsylvania (the "MDL Court") by the Judicial Panel on Multidistrict Litigation for coordinated pretrial proceedings, *see* Conditional Transfer Order at 1, ECF No. 43.  On November 5, 2012, after the conclusion of all pretrial proceedings, the case was remanded to this Court for trial.  *See* Conditional Remand Order at 1, ECF No. 44.  By that time, the only remaining viable defendants for trial were John Crane, Inc. and Honeywell International, Inc. ("Honeywell").  *See* Suggestion of Remand at 2, ECF No. 44-3.[4]  While this case was pending in the MDL Court, the defendant moved for summary judgment on the plaintiff's claims.  *See* Def.'s Recons. Mem. Ex. M at 1, ECF No. 49-14.  In denying that motion, the MDL Court cited the decedent's deposition testimony as well as the testimony of the

---

[4] John Crane, Inc. was voluntarily dismissed from this action on March 1, 2013.  *See* Stipulation of Voluntary Dismissal, ECF No. 71.  Additionally, the plaintiff voluntarily dismissed nineteen other defendants while this case was pending in the MDL—seven of whom were voluntarily dismissed with prejudice and presumably settled with the plaintiff for consideration.  *See* Statement of John Crane, Inc. at 5–6, ECF No. 55.

plaintiff's experts "that [the decedent]'s exposure to Bendix brakes [was] a substantial cause of his mesothelioma." *Id.* at 4.  Specifically, the MDL Court cited the testimony of Dr. Steven Markowitz, who opined that the decedent's exposure to Bendix brakes "'was significant and contributed to his over-all exposure, [and] that his mesothelioma was caused by his cumulative exposure to asbestos.'" *Id.* (quoting Pl.'s Resp. to Honeywell's Mot. for Summ. J. at 12).  In the end, the MDL Court denied summary judgment to the defendant because "Plaintiff has raised a genuine issue of fact as to whether Honeywell's products, specifically, were a substantial contributing factor in causing Decedent's injuries."  *Id.*

On January 10, 2013, however, after this case was remanded to this Court, the Virginia Supreme Court decided *Boomer*.  That case was an appeal "of a jury verdict against Honeywell International Incorporated and Ford Motor Company for the wrongful death of James D. Lokey, caused by mesothelioma resulting from exposure to asbestos in dust from Bendix brakes installed in Ford and other vehicles." *Boomer*, 736 S.E.2d at 726.  The similarity between *Boomer* and the instant case is therefore self-evident.  In *Boomer*, the trial court "on five occasions instructed the jury to determine whether [the defendants'] negligence was a 'substantial contributing factor' to Lokey's mesothelioma," and the defendants challenged that instruction as contrary to Virginia law.  *Id.* at 727–28.  The Virginia Supreme Court, "[c]onsidering it . . . for the first time," rejected the "substantial contributing factor" instruction primarily because "a reasonable juror could be confused as to the quantum of evidence required to prove causation in the face of both a substantial contributing factor and a proximate cause instruction."  *Id.* at 730.  Nevertheless, the court also held, in agreement with a prior line of Virginia precedent, that a plaintiff could still recover from a defendant in a multiple-exposure

asbestos case if the plaintiff could prove "that a negligent [asbestos] exposure was more likely than not *sufficient* to have triggered the harm."  *Id.* at 731 (emphasis in original).

On January 28, 2013—less than three weeks after *Boomer* was decided—the defendant filed a motion to reconsider the denial of its motion for summary judgment in light of *Boomer*. *See* Def.'s Mot. for Recons.  In that motion, the defendant argued that summary judgment is appropriate in light of *Boomer* because the plaintiff "has failed to provide any specific evidence that [the decedent]'s alleged exposure to Bendix brakes . . . was a sufficient cause of his injury." Def.'s Recons. Mem. at 17.  On this same point, the defendant argued that "Plaintiff's own experts contend that [the decedent]'s exposure to Bendix brakes was merely part of his cumulative exposure to asbestos and cause of [the decedent]'s disease."  *Id.*  After reviewing the testimony and opinions of the plaintiff's experts—in particular Dr. Markowitz, the plaintiff's primary causation expert—the defendant argued that "Plaintiff has not offered expert evidence to opine that [the decedent]'s alleged lifetime dosage is more likely than not a sufficient cause of his mesothelioma" and "Plaintiff has offered no evidence to quantify [the decedent]'s exposure to Bendix brakes."  *Id.* at 19 (emphasis in original).  In light of *Boomer* and these perceived deficiencies in the plaintiff's evidence, the defendant contended that the plaintiff "cannot create a genuine issue of material fact regarding any alleged liability of Honeywell."  *Id.* at 20.

In opposing the defendant's motion for reconsideration, the plaintiff made several arguments, some of which will be discussed in more detail below.  Importantly, one of the plaintiff's arguments was that "[e]xpert testimony demonstrates that the exposure to Bendix brake dust described by [the decedent] is sufficient to cause [the decedent]'s mesothelioma." Pl's Opp'n to Def.'s Mot. for Recons. ("Pl.'s Recons. Opp'n") at 7, ECF No. 53.  This statement was based on a declaration by Dr. Markowitz, completed on February 8, 2013, after the

defendant had filed its motion for reconsideration.  *See id.*  In that new declaration, Dr.

Markowitz offered four "additional opinions," one of which was that "[the decedent]'s exposure

to asbestos from Bendix asbestos-containing brake lining—as well as the non-friction exposures

identified in my report of November 22, 2011 [sic] (Naval and Fort Belvoir exposures)—are

*each independently sufficient* to cause mesothelioma in and of themselves."  Pl.'s Recons. Opp'n

Ex. 3 ("Markowitz Decl."), at 5–6, ECF No. 53-3 (emphasis added).  Dr. Markowitz had never

before opined that the decedent's exposure to Bendix brakes was independently sufficient to

have caused his cancer.  The plaintiff, in his opposition, also pointed to the deposition testimony

of the plaintiff's pathology expert, Dr. Jerrold Abraham, who opined that "if [the decedent] had

only that [Navy exposure], that would have been the only cause.  If he had other exposures [*i.e.*,

brake exposures] and not that [Navy exposure], those [brake exposures] would have been the

only cause."  *See* Pl.'s Recons. Opp'n at 8 (internal quotation marks omitted) (quoting Ex. 5

("Abraham Dep."), at 135–37, ECF No. 53-5).

　　　In response to the submission of the February 8, 2013 Markowitz Declaration, the

defendant filed a motion to strike the declaration as both untimely and inconsistent with Dr.

Markowitz's prior opinions.  *See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Recons. & Mot.

to Strike Decl. of Dr. Steven Markowitz ("Def.'s Strike Mem.") at 2–5, ECF No. 57.

Specifically, the defendant argued that (1) the Markowitz Declaration is untimely under Federal

Rules of Civil Procedure 26 and 37; and (2) the Markowitz Declaration constitutes a "sham

affidavit" because it contradicts his prior sworn statements.  *See id.* at 4.  In the alternative, the

defendant also contended that the new Markowitz Declaration "does not satisfy the standard

under *Boomer*" because it "lacks any support as to the level of exposure [the decedent] allegedly

experienced or that this particular level of exposure was sufficient to cause mesothelioma." *Id.*
at 9.

Upon consideration of this briefing, the Court directed the parties to file supplemental
briefing on May 1, 2013 to clarify a variety of questions relating to the motion for
reconsideration and the motion to strike. *See* Order dated Apr. 25, 2013, ECF No. 144; *see also*
Def.'s Supplemental Briefing, ECF No. 149; Pl.'s Supplemental Briefing, ECF No. 150.
Additionally, on May 3, 2013, the Court heard oral argument on both motions during the pretrial
conference in this matter. After this extensive briefing and oral argument, the Court must now
consider the proper disposition of the defendant's motion for reconsideration and motion to
strike. As discussed below, the Court grants both motions.

## II.    LEGAL STANDARDS

### A.    <u>Amending Interlocutory Decisions</u>

"Denial of a summary judgment motion is an interlocutory order" and "[d]istrict courts
have *discretion* to entertain successive summary judgment motions on the same (or different)
grounds." 3 WILLIAM W. SCHWARZER ET AL, FEDERAL CIVIL PROCEDURE BEFORE TRIAL
§ 14:367 (2013) (emphasis in original). Indeed, a district court may revise any of its
interlocutory decisions "at any time before the entry of a judgment adjudicating all the claims
and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); *accord Langevine v. District of
Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997) ("Interlocutory orders are not subject to the law
of the case doctrine and may always be reconsidered prior to final judgment."). Rule 54(b)
"recognizes [the district court's] inherent power to reconsider an interlocutory order 'as justice
requires.'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir.
2011) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22–23 (1st Cir. 1985)).

To determine whether "justice requires" reconsideration, a court may consider, among other possible grounds, whether "a controlling or significant change in the law or facts has occurred since the submission of the issue to the court.'" *Act Now to Stop War & End Racism Coal. v. District of Columbia* ("*Act Now*"), 286 F.R.D. 117, 125 (D.D.C. 2012) (quoting *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 223 (D.D.C. 2011)).

"Importantly, the standard for reconsideration of interlocutory orders under Rule 54(b) is distinct from the standard applicable to motions for reconsideration of final judgments." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). Despite the imprecision of the "as justice requires" standard, "it is clear that 'courts have more flexibility in applying Rule 54(b)' than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b)." *Id.* (quoting *Moore v. Hartman*, 332 F. Supp. 2d 252, 256 (D.D.C. 2004)). The considerations embedded in the "as justice requires" standard "leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 224 (D.D.C. 2011) (quoting *Cobell*, 224 F.R.D. at 272). Despite the potential breadth of the "as justice requires" standard, "the court's discretion under Rule 54(b) is . . . 'subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Id.* (quoting *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)); *see also* 3 SCHWARZER ET AL, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 14:368 (successive summary judgment motion that "presents no new material facts or legal arguments . . . may even be treated as a 'bad faith' motion, exposing the moving party to sanctions under FRCP 56(h)" (emphasis omitted)).

B.     **Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Id.* at 323.

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party and shall accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *id.* at 252, and cannot rely on "mere allegations" or conclusory statements, *see Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *accord* FED. R. CIV. P. 56(e). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See, e.g.*, FED. R. CIV. P. 56(c)(1). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In that situation, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof."

*Id.*

## III.    DISCUSSION

Before addressing the merits of either motion, the Court will first discuss two procedural issues raised by the plaintiff with respect to the motion for reconsideration.  Next, the Court will discuss the merits of the defendant's motion to strike, since the resolution of that motion bears upon the merits of the motion for reconsideration.  Finally, the Court will address the merits of the motion for reconsideration.

### A.    <u>The Motion for Reconsideration Is Procedurally Sound.</u>

In his opposition to the defendant's motion for reconsideration, the plaintiff contends that the "motion is procedurally defective for two reasons."  Pl.'s Recons. Opp'n at 2.  First, the plaintiff argues that "Honeywell's twenty-two (22) page Memorandum of Law exceeds this Court's explicit direction that motions for reconsideration 'may not exceed 10 pages in length.'"  *Id.* at 2–3 (quoting Supplemental Standing Order ¶ 7, ECF No. 45).  This argument, however, misperceives the Court's directive.  The Court's Standing Order states that "[m]otions to alter or amend a judgment . . . . shall be filed only when the requirements of Federal Rules of Civil Procedure 59(c) and/or 60(b) are met" and "[s]uch motions and oppositions thereto may not exceed 10 pages in length."  Supplemental Standing Order ¶ 7.  Although this portion of the Court's Standing Order correctly states that motions to alter or amend a judgment are "commonly known as 'motions for reconsideration,'" *see id.*, a motion to reconsider under Rule 54(b) is not a motion to alter or amend a judgment.  A "judgment," as that term is used throughout the Federal Rules (including in Rules 59(e) and 60(b)), "includes a decree and any order from which an appeal lies," *see* FED. R. CIV. P. 54(a), which would necessarily not include

an interlocutory order (such as an order denying a motion for summary judgment).  Indeed, Rule

54(b) makes clear the distinction between an interlocutory order and a judgment, providing that

"any *order or other decision* . . . that adjudicates fewer than all the claims or the rights and

liabilities of fewer than all the parties does not end the action as to any of the claims or parties

and may be revised at any time *before the entry of judgment*."  FED. R. CIV. P. 54(b) (emphasis

added).  Therefore, the page limitations that the Court applies to motions to alter or amend a

judgment do not apply to the defendant's instant motion for reconsideration under Rule 54(b).

Second, the plaintiff contends that "Honeywell's motion is almost two years too late."

Pl.'s Recons. Opp'n at 3.  The premise for this assertion is that "Honeywell's only excuse for

filing this motion so late is that there was an 'intervening change in law.'"  *Id.* (quoting Def.'s

Recons. Mem. at 14).  This argument by the plaintiff, however, suffers from the same

misperception that doomed his other procedural argument: The plaintiff confuses the defendant's

Rule 54(b) motion—which may be filed "at any time before the entry of a judgment," *see* FED.

R. CIV. P. 54(b)—for a Rule 59(e) motion to alter or amend a judgment, which "must be filed no

later than 28 days after the entry of the judgment," FED. R. CIV. P. 59(e).  The plaintiff is correct

that *if* the defendant had filed a motion to alter or amend a judgment pursuant to Rule 59(e), the

Court would not need to grant it "unless [it] finds that there is an intervening change of

controlling of law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal

quotation marks omitted).  As discussed above, however, "the standard for reconsideration of

interlocutory orders under Rule 54(b) is distinct from the standard applicable to motions for

reconsideration of final judgments" in that "it is clear that courts have more flexibility in

applying Rule 54(b) than in determining whether reconsideration is appropriate under Rules

59(e) and 60(b)." *Cobell*, 224 F.R.D. at 272 (internal quotation marks omitted).  Therefore, not only does the twenty-eight day period for filing Rule 59(e) motions not apply to the defendant's instant Rule 54(b) motion—and hence, it is not "two years too late," as the plaintiff argues, *see* Pl.'s Recons. Opp'n at 3—but the Court also has discretion to grant such a Rule 54(b) motion "as justice requires," even in the absence of a change in the controlling law, *see, e.g.*, *Capitol Sprinkler Inspection*, 630 F.3d at 227.

It is worth noting in any event that the Court does consider *Boomer* to be an intervening change in Virginia law, or at the very least "a controlling or significant change in the law . . . since the submission of the issue to the court,'" *see Act Now*, 286 F.R.D. at 125, which warrants reconsideration of the MDL Court's denial of the defendant's previous motion for summary judgment.  It defies a plain reading of the MDL Court's Order denying summary judgment to claim, as the plaintiff does, that "[the MDL Court]'s . . . legal analysis and conclusion [in that Order] are in lock-step with *Boomer*."  *See* Pl.'s Recons. Opp'n at 3.  There can be no question that the MDL Court relied upon a substantial contributing factor standard in concluding that summary judgment should be denied.  The Order states: "On the record presented, Plaintiff has raised a genuine issue of fact as to whether Honeywell's products, specifically, were a *substantial contributing factor* in causing Decedent's injuries."  *See* Def.'s Recons. Mem. Ex. M at 4 (emphasis added).  That this conclusion was not preceded by citation to Virginia case law applying the "substantial contributing factor" test is unsurprising because no such case law exists.  As the Virginia Supreme Court observed in *Boomer*: "The phrase 'substantial contributing factor' is not grounded . . . in the jurisprudence of this Court: we have not, in the history of our case law, ever invoked this language."  *Boomer*, 736 S.E.2d at 730.[5]

---

[5] The reason the MDL Court included the "substantial contributing factor" language in its decision was perhaps because the plaintiff claimed in his opposition brief before the MDL Court that "Virginia Courts follow the majority

In addition to the MDL Court's reliance upon the substantial contributing factor test, *Boomer* represents a significant change in the law that applies to this case because, as the Virginia Supreme Court noted in *Boomer*, it was breaking new ground: "Here, *for the first time,* we are called upon to rule explicitly as to the causation standard appropriate for mesothelioma." *Boomer*, 736 S.E.2d at 732 (emphasis added); *see also id.* at 730 ("Considering it now *for the first time*, we find several problems with the substantial contributing factor instruction." (emphasis added)).  Indeed, counsel for the plaintiff appeared to concede this at the pretrial conference, stating: "[E]veryone in this courtroom knows *Boomer* was a sea[] change for how litigants, litigants in the trial courts in Virginia [have] to litigate these cases now. . . . So I stand here to say at a minimum, *Boomer*, sufficiently shook things up."  *See* Tr. of Pretrial Conference at 71:25–72:9 (May 3, 2013).  Thus, whether one calls it a "change," a "sea[] change" or a substantial clarification in Virginia law, it is plain that *Boomer* constitutes a sufficiently significant shift in Virginia law to warrant reconsideration of the MDL Court's decision to deny summary judgment to the defendant in this case.

## B.   Defendant's Motion to Strike

In support of its motion to strike the Markowitz Declaration, the defendant makes two arguments.  First, the defendant contends that the Markowitz Declaration should be stricken because it is "untimely under Rules 26 and 37."  *See* Def.'s Strike Mem. at 4.  Second, the defendant argues that the Markowitz Declaration should be stricken because it "constitute[s] a sham affidavit."  *Id.*  The Court will begin by discussing the defendant's timeliness arguments.

---

and recognize the substantial factor concept" and therefore "Plaintiffs must present evidence that exposure to Bendix brakes was a substantial contributing factor in causing [the decedent]'s injury."  *See* Pl.'s Opp'n to Def. Honeywell Int'l, Inc.'s Mem. in Supp. Mot. for Summ. J. as to Pl.'s Negligence & Breach of Warranty Claims at 11, *In re: Asbestos Prod. Liab. Litigation (No. VI)*, No. 10-cv-67422 (E.D. Pa. Mar. 7, 2011).

### 1. *The Markowitz Declaration Was Untimely.*

Under the Federal Rules of Civil Procedure, a party who intends to offer expert testimony is required to disclose a written report for each expert witness. *See* FED. R. CIV. P. 26(a)(2)(B). Rule 26 also provides that "[a] party must make these disclosures at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). There is a limited exception to this rule that requires a party to "supplement" any disclosure made under Rule 26(a) "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1).

It is clear that, under the Federal Rules outlined above, the February 8, 2013 Markowitz Declaration is untimely. First, there is no dispute that the plaintiff did not submit the Markowitz Declaration "at the times and in the sequence that the court order[ed]." *See* FED. R. CIV. P. 26(a)(2)(D). The MDL Court's scheduling order required all of the plaintiff's expert reports to be completed and served by November 22, 2010. *See* Def.'s Strike Mem. Ex. A at 1, ECF No. 57-1. That same order required that all expert discovery be completed by January 24, 2011. *Id.* The plaintiff was not granted any extensions of time in this regard, nor did the plaintiff otherwise seek leave of the Court before filing the Markowitz Declaration.

In opposing the defendant's motion to strike, the plaintiff argued that the Markowitz Declaration was timely, under the logic that "[i]f Honeywell's Motion for Reconsideration . . . is timely, then Plaintiff's response to the Honeywell motion and Dr. Markowitz's Declaration are, necessarily, timely." *See* Pl.'s Opp'n to Def.'s Mot. to Strike Decl. of Dr. Steven Markowitz ("Pl.'s Strike Opp'n") at 2, ECF No. 72. The plaintiff appears to believe that, because "Honeywell has refreshed its summary judgment motion" by asking for reconsideration of the MDL Court's order, the defendant "has refreshed the Plaintiff's rights under Rule 56 of the

14

Federal Rules of Civil Procedure, including FRCP 56(c)(4)."  *Id.*  In this regard, the plaintiff

claims that Rule 56(c)(4) "provides a party with the right to produce an affidavit or declaration to

support or oppose a summary judgment motion" and "Plaintiff has complied with this rule by

submitting Dr. Markowitz's February [8], 2013 Declaration."  *Id.* at 2–3.  This argument

misperceives the meaning of Rule 56(c)(4).  That rule states simply that "[a]n affidavit or

declaration used to support or oppose a motion [for summary judgment] must be made on

personal knowledge, set out the facts that would be admissible in evidence, and show that the

affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  In

other words, Rule 56(c)(4) sets forth the *requirements* for an affidavit or declaration submitted in

support of or opposition to a motion for summary judgment; it does not impart any "right" to

submit such affidavits or declarations.  The plaintiff's capacious reading of Rule 56(c)(4) would

essentially have that provision nullify Rule 26(a)(2)(D)'s requirement that expert testimony be

submitted "at the times and in the sequence that the court orders."  *See* FED. R. CIV. P.

26(a)(2)(D).

  The plaintiff also argues for the first time in his Court-directed supplemental briefing that

the Markowitz Declaration "was designed to respond to an issue not specifically raised by

Honeywell's initial motion for summary judgment and is timely under Fed.R.Civ.P. 26(e)(2) and

26(a)(3)(B)."  *See* Pl.'s Supplemental Briefing at 2.[6]  As a result of the plaintiff's failure to raise

this argument—or even to reference Rules 26 or 37—in his opposition to the defendant's motion

---

[6] Although the Court directed the plaintiff to file this supplemental briefing, the Court did not request any briefing on whether the Markowitz Declaration was timely under Federal Rule of Civil Procedure 26.  Rather, the Court ordered the plaintiff to submit further briefing on the following questions: (1) why the plaintiff has submitted a supplementary expert report if *Boomer* did not constitute an intervening change in Virginia law; (2) why the plaintiff's submission of a supplementary expert report, in the absence of an intervening change in law and without seeking leave of the Court, was "substantially justified" under Federal Rule of Civil Procedure 37(c)(1); (3) whether the plaintiff concedes that, in the event that the February 8, 2013 Markowitz Declaration is stricken, the defendant's Motion for Reconsideration must be granted; and (4) if the plaintiff does not so concede, what other legal basis or bases would exist to deny the defendant's Motion for Reconsideration.  Order dated Apr. 25, 2013, at 2.

to strike, the plaintiff has waived this argument.  *See, e.g.*, *In re Asemani*, 455 F.3d 296, 300

(D.C. Cir. 2006) (a litigant's argument "[was] waived because it was made for the first time in

[appellant's] reply brief"); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp.

2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an

opposition to a dispositive motion and addresses only certain arguments raised by the defendant,

a court may treat those arguments that the plaintiff failed to address as conceded." (citing *FDIC

v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997))).

      Even if the plaintiff had not waived this argument, the argument would still fail on the

merits.  Rule 26(e) imposes a duty on a party to "supplement or correct its [26(a)] disclosure or

response . . . if the party learns that in some material respect the disclosure or response is

incomplete or incorrect."  FED. R. CIV. P. 26(e)(1).  This duty only applies "if the additional or

corrective information has not otherwise been made known to the other parties during the

discovery process or in writing."  *Id.*  Rule 26(e) "does not permit parties to file supplemental

reports whenever they believe such reports would be 'desirable' or 'necessary' to their case."

*Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005); *accord Dag Enters., Inc. v. Exxon Mobil

Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005) (observing that Rule 26(e) "'does not . . . bestow upon

litigants unfettered freedom to rely on supplements produced after a court-imposed deadline,

even if the rule's pretrial limit is satisfied'" (quoting *Reid v. Lockhart Martin Aeronautics Co.*,

205 F.R.D. 655, 662 (N.D. Ga. 2001))).  Rather, Rule 26(e) "permits supplemental reports only

for the narrow purpose of correcting inaccuracies or adding information that was not available at

the time of the initial report."  *Minebea*, 231 F.R.D. at 6 (citing *Keener v. United States*, 181

F.R.D. 639, 640 (D. Mont. 1998)).  "To construe supplementation to apply whenever a party

wants to bolster or submit additional expert opinions would reek [sic] havoc in docket control

and amount to unlimited expert opinion preparation." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002); *see also Keener*, 181 F.R.D. at 641 ("To countenance a dramatic, pointed variation of an expert's disclosure under the guise of Rule 26(e)(1) supplementation would be to invite the proverbial fox into the henhouse.  The experienced expert could simply 'lie in wait' so as to express his genuine opinions only after the plaintiff discloses hers.").

The plaintiff in the instant action does not argue that the Markowitz Declaration corrects any inaccuracies or that it is based on new information.  Rather, by the plaintiff's own admission, the Markowitz Declaration "was designed to respond to an issue not specifically raised by Honeywell's initial motion for summary judgment."  Pl.'s Supplemental Briefing at 2.  Although the plaintiff may perceive the addition of Dr. Markowitz's new opinions to be "'necessary' to [his] case," that is not a proper reason to supplement an expert report under Rule 26(e).  *See Minebea*, 231 F.R.D. at 6.  As the Supreme Court has observed, "a litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897 (1990).  For all of the above reasons, the Markowitz Declaration is untimely under Rule 26.

## 2.    *The Untimely Submission of the Markowitz Declaration Was Neither "Substantially Justified" Nor "Harmless."*

Generally, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial."  FED. R. CIV. P. 37(c).  Exclusion is not appropriate, however, when "the failure was substantially justified or is harmless."  *Id.*  A court is also vested with discretion to impose other sanctions, such as "order[ing] payment of the reasonable expenses, including attorney's fees, caused by the failure," which may be ordered "[i]n addition to or instead of" the sanction of exclusion.  *Id.*  The phrase "substantially justified" is generally

interpreted to mean "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  The advisory committee's commentary to Rule 37(c) indicates that exclusion is a "self-executing sanction," and that "[l]imiting the automatic sanction to violations 'without substantial justification,' . . . is needed to avoid unduly harsh penalties in a variety of situations." *See* FED. R. CIV. P. 37(c) advisory committee's note (1993 Amendments).  The advisory committee note goes on to list examples of situations in which violations would be "substantially justified" or "harmless," which include: "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures." *Id.*

The plaintiff's failure to disclose Dr. Markowitz's new opinion in a timely fashion was not "substantially justified" or "harmless" within the meaning of Rule 37(c).  First, it is clear that the omission of Dr. Markowitz's new opinion regarding the independent sufficiency of the decedent's Bendix brake exposure was not an innocent oversight.  Prior to his February 8, 2013 declaration, Dr. Markowitz had submitted an expert report on November 22, 2010 and a supplemental declaration on March 7, 2011, and he was also examined at a deposition on January 24, 2011.  *See* Markowitz Decl. at 1.  This was more than ample opportunity to "clarify" the nature and scope of his expert opinions.  That Dr. Markowitz chose to tailor his opinions to a particular legal standard was a choice that he (and the plaintiff) made at their own peril.  *See Lujan*, 497 U.S. at 897.

Furthermore, the manner in which the plaintiff submitted the February 8, 2013 Markowitz Declaration was, in particular, not "substantially justified" or "harmless."  The

plaintiff did not seek leave of the Court to file a late declaration, nor did he confer with the

defendant before doing so.  The plaintiff did not ask the Court to reopen expert discovery or

otherwise provide the defendant with an opportunity to cross-examine or rebut Dr. Markowitz's

new opinions before trial.  This choice by the plaintiff was highly prejudicial to the defendant.

The plaintiff claims that the submission of the Markowitz Declaration was "harmless" because

"Honeywell cannot claim surprise at trial or prejudice," *see* Pl.'s Supplemental Briefing at 4, but

this is simply not true.  Although the defendant may not be able to claim complete surprise, since

Dr. Markowitz's new opinions were disclosed to the defendant before trial, the defendant would

undoubtedly be prejudiced by being unable to cross-examine Dr. Markowitz about his new

opinions before trial and being unable to submit any further expert materials to rebut Dr.

Markowitz's new opinions.  The plaintiff has not attempted to cure this prejudice, and at this late

date it would be impossible to cure the prejudice before the scheduled trial date.[7]  *See, e.g.*,

*Richardson v. Korson*, No. 10-2049, 2012 WL 5907379, at *7 (D.D.C. Nov. 27, 2012) ("Where

there is sufficient time to provide the prejudiced party with an opportunity to cure the prejudice

of the untimely report, a court may permit submission of the report.").

Finally, the plaintiff's untimely submission of the Markowitz Declaration was not

substantially justified because there were other appropriate procedures available to the plaintiff

to facilitate submission of the declaration without prejudicing the defendant.  Most notably,

because the Markowitz Declaration was, in the plaintiff's words, "designed to respond to an

issue not specifically raised by Honeywell's initial motion for summary judgment," Pl.'s

Supplemental Briefing at 2, the plaintiff could have (and likely should have) filed a motion under

Rule 56(d), seeking permission to obtain further discovery in order to oppose the defendant's

---

[7] The defendant has stated in response to the Court's direct question that, assuming the prejudice to it were capable
of being cured, the additional discovery needed to do so would require nine to twelve additional weeks.  *See* Def.'s
Supplemental Briefing at 6.

motion for reconsideration.  That rule provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court has discretion to take a number of actions, including "allow[ing] time to obtain affidavits or declarations or to take discovery."  FED. R. CIV. P. 56(d).  As plaintiff's counsel admitted at the pretrial conference, the plaintiff submitted the new Markowitz Declaration because he "[w]as not going to run the risk . . . that we didn't have something in the record sufficient to satisfy the [*Boomer*] standard."  *See* Tr. of Pretrial Conference at 66:11–18.  If the plaintiff indeed believed that the existing summary judgment record would be insufficient to oppose the defendant's motion for reconsideration, the plaintiff should have filed a Rule 56(d) motion admitting as much, which would have facilitated an orderly and fair period of supplementary discovery, during which *both* sides would have had an opportunity to update their expert opinions post-*Boomer*.  The plaintiff opted not to do so, however, perhaps because the plaintiff was unwilling to concede that "it [could not] present facts essential to justify its opposition," as required by Rule 56(d).  *See* FED. R. CIV. P. 56(d).  That the plaintiff chose to ignore this procedural avenue, for whatever reason, is a further ground to conclude that the plaintiff's course of conduct in submitting the untimely Markowitz Declaration was not substantially justified.  The Court is sympathetic to the plaintiff's position in the wake of *Boomer*, but that difficult position does not justify flaunting the Federal Rules of Civil Procedure and the MDL Court's scheduling order, nor does it justify imposing a significant and undue prejudice upon the defendant.

In light of the prejudice to the defendant caused by the untimely and not substantially justified submission of the Markowitz Declaration, and because that prejudice could not be cured without a significant delay in the start of trial, the Court concludes that the only appropriate

sanction at this juncture is to exclude the February 8, 2013 Markowitz Declaration.  *See* FED. R. CIV. P. 37(c)(1).  Accordingly, the Court concludes that the defendant's motion to strike the Markowitz Declaration should be granted.[8]

### C.    Defendant's Motion for Reconsideration

Having excluded the February 8, 2013 Markowitz Declaration, the Court must now determine the merits of the defendant's motion for reconsideration.  The Court concludes that the defendant's motion for reconsideration should be granted, regardless of whether the Markowitz Declaration were a part of the summary judgment record.

### 1.    *Without the Markowitz Declaration, the Plaintiff Has Failed to Create a Genuine Issue of Material Fact Regarding Causation.*

The plaintiff has been unwilling to concede that, absent the February 8, 2013 Markowitz Declaration, the Court would be compelled to grant the defendant's motion for reconsideration. The most the plaintiff has offered in this regard is to state that "if the Court does not allow Plaintiff to oppose Honeywell's Motion [for Reconsideration] with the Markowitz Declaration, Plaintiff concedes the Defendant's Motion *could* be granted."  *See* Pl.'s Supplemental Briefing at 4–5 (emphasis in original).  Hence, the Court will examine the portions of the record cited by the parties to determine whether, without the Markowitz Declaration, the plaintiff can still survive summary judgment under *Boomer*.

The Court will begin by revisiting *Boomer* to crystalize exactly what evidence is required to create a genuine issue of material fact regarding causation in a multiple-exposure asbestos case like the instant one.  As the Virginia Supreme Court stated, a defendant in such a case may only be found liable "if the jurors, after hearing the testimony and evidence, believe that a negligent exposure was more likely than not sufficient to have triggered the harm."  *Boomer*, 736

---

[8] Since the Court resolves the defendant's motion to strike on timeliness grounds, the Court need not address the defendant's argument under the "sham affidavit" doctrine.

S.E.2d at 731 (emphasis omitted); *see also id.* at 733 ("[T]he plaintiff must show that it is more likely than not that [the decedent]'s alleged exposure to dust from [the defendant's] brakes occurred prior to the development of [the decedent]'s cancer and was sufficient to cause his mesothelioma."); *id.* ("The [trial] court now needs to consider the experts' opinions as to whether the exposures by [the defendants] were each more likely than not *sufficient to have caused* mesothelioma." (emphasis in original)).  Thus, it is clear that, at a minimum, in order to survive summary judgment, a plaintiff must come forth with some medical or scientific evidence that exposure to the defendant's product was sufficient, in and of itself, to trigger the injury.

The *Boomer* court, however, did not stop there.  The Virginia Supreme Court also described the kind of expert testimony that is required to establish liability under the "sufficiency" standard.  First, *Boomer* stated—not once, but twice—that "experts must opine as to what level of exposure is sufficient to cause mesothelioma, and whether the levels of exposure at issue in this case were sufficient." *Id.* at 733; *see also id.* at 731 ("The factfinder is left, having heard the nature of the exposures to each of the products at issue, *as well as the medical testimony as to the requisite exposure necessary to cause mesothelioma*, to determine whether the exposure attributable to each defendant was more likely than not sufficient to have caused the harm." (emphasis added)).  In stating this, *Boomer* mandated a two-part showing: "[1] what level of exposure is sufficient to cause mesothelioma, and [2] whether the levels of exposure at issue in this case were sufficient." *Id.* at 733.  The court further stated that, where a plaintiff has been exposed to multiple sources of asbestos, each of which is potentially sufficient to cause mesothelioma, "[e]xcluding other exposures from the pool of multiple sufficient causes will require competent medical testimony indicating whether the timing of exposure could possibly

have caused the cancer." *Id.* at 732.  The Court will consider the plaintiff's evidence in light of this guidance from the Virginia Supreme Court in *Boomer*.

Having excluded the Markowitz Declaration, the Court will first consider the only other piece of expert testimony, other than the Markowitz Declaration, which the plaintiff cited in opposition to the defendant's motion for reconsideration.  That was the deposition testimony of Dr. Jerrold Abraham, in which he opined that "'if [the decedent] had only that [Navy exposure], that would have been the only cause.  If he had other exposures [*i.e.*, brake exposures] and not that [Navy exposure], those [brake exposures] would have been the only cause.'"  *See* Pl.'s Recons. Opp'n at 8 (emphasis omitted) (quoting Abraham Dep. at 135–37).  This testimony by Dr. Abraham is insufficient to create a genuine issue of material fact, primarily because it is an opinion about a counterfactual, hypothetical situation not present in this case.  As Dr. Abraham stated right before making the statement quoted by the plaintiff: "Well, that's a hypothetical of some other person who had no other exposure . . . ."  *See* Abraham Dep. at 136:1–2.  The bottom line is that Dr. Abraham never opined that the decedent's exposure to Bendix brakes was independently sufficient to trigger his mesothelioma, and thus Dr. Abraham's deposition testimony does not raise a genuine issue of material fact regarding causation under *Boomer*.

The only other evidence that the plaintiff has pointed to in order to create a genuine factual question regarding causation is Dr. Markowitz's prior opinions, contained in his expert report, his March 7, 2011 declaration, and his January 24, 2011 deposition.[9]  In fact, plaintiff's counsel asserted at the pretrial conference that "[t]he defendants are setting up a false dichotomy between Markowitz's original pronouncements versus his current pronouncements" because

---

[9] Since the plaintiff did not cite these portions of the record in opposing the defendant's motion for reconsideration, but rather raised them in his Court-directed supplemental briefing, *see* Pl.'s Supplemental Briefing at 2, the plaintiff has arguably waived his ability to rely on such evidence in opposing the motion for reconsideration.  Regardless, the Court considers this evidence under the assumption that the plaintiff did not waive his ability to rely on it.

"[t]hey are not mutually exclusive."  *See* Tr. of Pretrial Conference at 65:2–5.  In fact, plaintiff's

counsel went so far as to claim that "[t]he sufficient to have cause[d] position that [Dr.

Markowitz] has staked out is effectively a subset of substantially contributed.  It's both."  *Id.* at

65:18–20.  To determine the validity of the plaintiff's position, the Court must first provide a

brief overview of the various opinions Dr. Markowitz has offered on causation that were not

contained in his February 8, 2013 declaration.

In his original, November 22, 2010 expert report, Dr. Markowitz stated the following

conclusion regarding the link between the defendant's product and the decedent's injury:

> As you know, most cases of malignant mesothelioma in the United States,
> especially of the pleura, are caused by prior exposure to asbestos, often
> occupational in nature.  [The decedent] reported such exposure during his work in
> the Navy, both during the active service and inactive service in the reserves, as
> well as his work at Fort Belvoir and in performing brake repair replacement over
> numerous decades.   Such exposure is sufficient to cause his malignant
> mesothelioma.

*See* Markowitz Decl. Ex. A at 9, ECF No. 53-3.  It is clear that this opinion is insufficient to

meet the standard articulated in *Boomer*.  Although the final sentence's reference to "[s]uch

exposure" is arguably vague, Dr. Markowitz's use of that phrase clearly refers to the multiple

exposures that he listed in the previous sentence, which included the decedent's exposures to

asbestos in the Navy and at Fort Belvoir.  Thus, the Court finds that the only reasonable

interpretation of this November 22, 2010 opinion is that Dr. Markowitz believed that *all* of the

decedent's cumulative exposures to asbestos, taken together, were sufficient to cause his cancer.

That does not satisfy *Boomer* and does not create a genuine issue of material fact on causation.

The plaintiff has also pointed to specific portions of Dr. Markowitz's January 24, 2011

deposition testimony.  *See* Pl.'s Supplemental Briefing at 2.  The first portion of Dr. Markowitz's

testimony cited by the plaintiff is as follows:

24

> Q:     All right.  And we've just discussed this in the past, but just so we can add it specifically for this case, of those exposures which if any do you believe were responsible for causing [the decedent]'s mesothelioma?
>
> A:     Well, I believe that *his exposures were cumulative*, that he had exposures in *each of these settings* that was significant and contributed to his over-all exposure, that *his mesothelioma was caused by his cumulative exposure to asbestos*.

*See* Pl.'s Supplemental Briefing Ex. 1, at 2, 4–5, ECF No. 150-1 (emphasis added) (quoting

Markowitz Dep. at 14:1–10).  The second portion of the deposition cited by the plaintiff is as

follows:

> Q:     All right.  Now, Doctor, we've discussed some of these areas in the past, and I'm just going to jump around very briefly on a couple things to clear up some of my own notes.  Do you believe that the[r]e's a threshold for exposure below which asbestos disease, specifically mesothelioma, will not occur?
>
> A:     No, I don't believe a threshold has been—such a threshold has been established.

*Id.* at 3 (quoting Markowitz Dep. at 16:4–12).  Finally, the plaintiff quoted the following from

Dr. Markowitz's deposition:

> Q:     Okay.  Does brake dust cause mesothelioma?
> . . .
> A:     To the . . . To the extent that . . .
> Q:     Or is it a cause of mesothelioma?
> A:     To the extent that it includes asbestos fibers and exposure, it would.
> Q:     So—
> A:     It would cause mesothelioma.

*Id.* at 5 (quoting Markowitz Dep. at 54:16–55:8).  None of this testimony, however, creates a

genuine factual question regarding causation under *Boomer*.  The three opinions quoted can be

summarized as follows: (1) the decedent's cumulative exposure to asbestos (including in the

Navy and at Fort Belvoir) caused his cancer; (2) no safe level of exposure to asbestos has been

established; and (3) at a general level, brake dust containing asbestos causes mesothelioma.

None of these opinions single out the decedent's exposure to Bendix brakes and draws a link

between *that* exposure and the decedent's cancer.[10]  That link, although absent from Dr.

Markowitz's deposition testimony, is essential under the *Boomer* sufficiency standard.

Finally, to the extent that the plaintiff has pointed to Dr. Markowitz's March 7, 2011

declaration, that declaration is also clearly insufficient to satisfy the *Boomer* causation standard.

In that declaration, Dr. Markowitz opined that "each and every occupational exposure to

asbestos-containing products in the Navy, at Fort Belvoir, Virginia and while performing

automotive brake work was a substantial contributing factor in causing his malignant

mesothelioma and resultant death."  *See* Markowitz Decl. Ex. B at 3, ECF No. 53-3.  It is

precisely this sort of opinion that the Virginia Supreme Court rejected.  *See Boomer*, 736 S.E.2d

at 730 (rejecting the "substantial contributing factor" formulation of proximate causation).

Therefore, this March 7, 2011 opinion by Dr. Markowitz plainly does not create a genuine

factual question under *Boomer*.

Although the above discussion reveals that none of the plaintiff's evidence, excepting the

stricken Markowitz Declaration, is capable of creating a genuine issue of material fact regarding

causation, the Court must address one last argument made by the plaintiff on this subject.  As

referenced above, plaintiff's counsel contended at the pretrial conference that "[t]he sufficient to

have cause[d] position that [Dr. Markowitz] has staked out is effectively a subset of substantially

contributed.  It's both."  Tr. of Pretrial Conference at 65:18–20.  This position, if valid, would

permit the plaintiff to survive summary judgment because it is clear that Dr. Markowitz opined

that the decedent's exposure to Bendix brakes was a substantial contributing factor in causing his

---

[10] Although Dr. Markowitz opined that exposure to asbestos-containing brake dust "would cause mesothelioma," *see* Pl.'s Supplemental Briefing Ex. 1, at 5, the Court finds that the only reasonable way to read this testimony is that Dr. Markowitz believes that, as a matter of epidemiology and at a population level, asbestos in brake dust is a cause of mesothelioma.  That is not the same as opining that a *particular* exposure to asbestos-containing brake dust was sufficient to cause a *particular* case of mesothelioma.  This latter, more particular, kind of evidence is what *Boomer* requires.  *See, e.g., Boomer*, 736 S.E.2d at 733 ("[T]he plaintiff must show that it is more likely than not that *Lokey's* alleged exposure to dust from *Ford's* brakes occurred prior to the development of *Lokey's cancer* and was sufficient to cause *his mesothelioma*." (emphasis added)).

cancer and resultant death.  *See, e.g.*, Markowitz Decl. Ex. B at 3.  The plaintiff's position in this

regard, however, is not valid.  To begin, it would be inconsistent with the *Boomer* decision to

conclude that a "sufficient to have caused" opinion is necessarily subsumed within a "substantial

contributing factor" opinion.  As the Virginia Supreme Court stated, "[t]he term substantial

contributing factor could be construed to mean any cause that is more than a merely *de minimis*

factor," and thus "a reasonable juror could be confused as to the quantum of evidence required to

prove causation in the face of both a substantial contributing factor and a proximate cause

instruction."  *Boomer*, 736 S.E.2d at 730.

      Aside from being inconsistent with the reasoning of *Boomer*, the plaintiff's position is

also faulty as a matter of logic.  The Court pointed this out at the pretrial conference, using a

commonly cited tort analogy put forth by the plaintiff.  *See* Tr. of Pretrial Conference at 68:22–

69:5.  Under that analogy, if two fires are started in a house, and the house burns down, then

each fire was both (1) a substantial contributing factor to the house burning down; and

(2) independently sufficient to have caused the house to burn down.  All that this analogy

demonstrates is that a sufficient cause also necessarily qualifies as a substantial contributing

factor.  Where the plaintiff's analogy goes awry, however, is that the converse is not necessarily

true: just because something was a substantial contributing factor in causing the house to burn

down does not mean it was necessarily independently sufficient to do so.  For example, if there

were an accelerant in the burning house (*e.g.*, gasoline) that caught fire, causing the house to

burn down faster than it would have otherwise, the accelerant would almost certainly have been a

"substantial contributing factor" in causing the house to burn down.  Yet, equally clear is the

conclusion that the accelerant, by itself, would not have been *independently sufficient* to cause

the house to burn down.  As this simple example demonstrates, the plaintiff is wrong to suggest

that a "sufficient to have caused" opinion is necessarily subsumed within a "substantial

contributing factor" opinion.  As a result, despite the plaintiff's attempt to show otherwise, Dr.

Markowitz's opinion that exposure to Bendix brakes was a substantial contributing factor in

causing the decedent's cancer—like the rest of the plaintiff's pre-February 2013 evidence—is

insufficient to create a genuine issue of material fact under *Boomer*.

> **2.      *Even with the Markowitz Declaration, the Plaintiff Would Have Been Unable to Create a Genuine Issue of Material Fact Under* Boomer.**

In light of the Court's decision to exclude the February 8, 2013 Markowitz Declaration,

the preceding holding regarding the plaintiff's other (pre-February 2013) evidence is sufficient to

grant the defendant's motion for reconsideration and grant summary judgment to the defendant.

Even so, the Court also concludes that the February 8, 2013 Markowitz Declaration would be

insufficient to create a genuine issue of material fact regarding causation, even if it had not been

excluded.

As discussed above, *Boomer* articulated a two-step showing that is required for a plaintiff

to demonstrate liability in a multiple-exposure asbestos cause: "[1] what level of exposure is

sufficient to cause mesothelioma, and [2] whether the levels of exposure at issue in this case

were sufficient." *Boomer*, 736 S.E.2d at 733.  The adequacy of Dr. Markowitz's opinion,

therefore, depends upon what the Virginia Supreme Court meant by "level of exposure [that] is

sufficient to cause mesothelioma." *See id.*  The plaintiff maintains that "level of exposure" does

not require "quantification" of exposure. *See, e.g.*, Tr. of Pretrial Conference at 19:13–16,

29:22–23, 31:7–10, 32:8–9; *see also* Pl.'s Recons. Opp'n at 8–9.  Rather, the plaintiff asserts

that, to satisfy *Boomer*, an expert need only opine that the "level of exposure" sufficient to cause

mesothelioma is, for example, "any exposure above what is in the background air." *See* Tr. of

Pretrial Conference at 17:18–19.  The basis for this assertion appears to be that *Boomer* cited

with approval a case called *Owens-Corning Fiberglass Corp. v. Watson*, 413 S.E.2d 630 (Va. 1992), which the Court will discuss further below. *See id.* at 16:16–17:10, 18:17–21. The plaintiff argued that Dr. Markowitz's opinion satisfies this "level of exposure" requirement by opining that "there's no safe level of exposure to any type of asbestos." *Id.* at 17:16–18:8; *see also* Markowitz Decl. at 5 ("[T]here has not been established a safe level of exposure to asbestos below which individuals are not at risk for developing pleural malignant mesothelioma.").[11]

The Court disagrees with the plaintiff's assessment. First, the plaintiff is mistaken regarding the *Boomer* court's citation to the *Watson* case. The *Boomer* court cited that case once for the proposition that "Virginia statutory and case law makes clear that the Commonwealth permits recovery for parties injured by asbestos exposure, including those with mesothelioma, even when a jury must draw inferences from indirect facts to determine whether an exposure was causal." *Boomer*, 736 S.E.2d at 729. In a similar fashion, the *Watson* court held that "the evidence, though circumstantial, was sufficient to support the jury's finding that Watson was exposed to [the defendant's product] and that such exposure was a proximate cause of his death." *Watson*, 413 S.E.2d at 639. None of this has anything to do with the legal standard by which a plaintiff's causation evidence is judged. Rather, *Boomer*'s citation to *Watson* addresses the *kind* of evidence that a plaintiff may offer to establish causation in a mesothelioma case. All that *Boomer*'s citation to *Watson* means is that a plaintiff may offer circumstantial evidence of exposure in order to establish that a particular exposure was causal, *i.e.*, that a plaintiff was exposed to a particular kind of asbestos prior to developing mesothelioma. Other than observing that "the medical evidence [at trial] revealed that very limited exposure to asbestos fibers can cause mesothelioma," *id.*, the *Watson* court had nothing to say regarding the proper legal

---

[11] Plaintiff's counsel incorrectly asserted at the pretrial conference that Dr. Markowitz rendered this "no safe level" opinion in his "original report." *See* Tr. of Pretrial Conference at 18:6–8. In fact, this "no safe level" opinion was not added until Dr. Markowitz's February 8, 2013 declaration. *See* Markowitz Decl. at 5.

standard for determining whether a plaintiff's evidence creates a genuine issue of material fact regarding causation.

Second, the plaintiff's argument draws a false equivalence between (1) the hypothetical opinion that "any exposure [to asbestos] above what is in the background air" is sufficient to cause mesothelioma, *see* Tr. of Pretrial Conference at 17:18–19, and (2) Dr. Markowitz's "no safe level" opinion. Specifically, Dr. Markowitz opined for the first time in his February 8, 2013 declaration "that there has not been established a safe level of exposure to asbestos below which individuals are not at risk for developing pleural malignant mesothelioma." Markowitz Decl. at 5. This is quite plainly not an opinion regarding "what level of exposure is sufficient to *cause* mesothelioma," *see Boomer*, 736 S.E.2d at 733 (emphasis added), such as "any exposure above what is in the background air," Tr. of Pretrial Conference at 17:18–19.

Dr. Markowitz's opinion about "no safe level" addresses *risk*, not *cause*, and there is a significant distinction between those two concepts. Many substances that we encounter every day raise our risk of developing serious diseases. For example, studies have indicated that consuming alcohol raises one's risk of developing various cancers—particularly cancers of the mouth and throat. *See, e.g.*, V. Bagnardi, *et al.*, *A Meta-Analysis of Alcohol Drinking and Cancer Risk*, 85 BRITISH J. CANCER 1700 (2001). Other studies suggest that eating "added sugars" increases one's risk of developing heart disease. *See* Jean A. Welsh, *et al.*, *Caloric Sweetener Consumption and Dyslipidemia Among U.S. Adults*, 303 J. AM. MED. ASS'N 1490 (2010). Even skipping breakfast has been shown to increase men's risk of developing diabetes by 21%. *See* Rania A. Mekary, *et al.*, *Eating Patterns and Type 2 Diabetes Risk in Men: Breakfast Omission, Eating Frequency, and Snacking*, 95 AM J. CLINICAL NUTRITION 1182 (2012). This is not the same thing as saying that alcohol causes cancer or eating too much sugar

causes heart disease or skipping breakfast causes diabetes.  If exposure to a substance is a risk factor for a health outcome, that typically means that exposure to the substance has been associated with that health outcome at a particular level of statistical significance, but correlation does not imply causation.  When A is correlated with B, it could be that A causes B, but it could also be that B causes A, or that A and B are both the consequences of a common cause, among other possibilities.

This is only to say that inferring causation is much more complicated than simply observing correlation, and the former should not be confused for the latter.  This is *not* to say, however, that exposure to chrysotile asbestos does not cause mesothelioma.  The Court lacks the expertise to opine on such matters.  The point is that, by merely offering opinions about "risk," neither Dr. Markowitz, nor any of the plaintiff's other experts, has offered an opinion about "what level of exposure is sufficient to *cause* mesothelioma," as required by Virginia law.  *See Boomer*, 736 S.E.2d at 733 (emphasis added).  Importantly, as discussed below, giving such an opinion may not necessarily require an exact quantification or dosage of chrysotile asbestos that is sufficient to cause mesothelioma.  Indeed, *Boomer* implied that "the current state of medical knowledge" has not pinpointed "an identifiable threshold level of exposure [to asbestos] triggering [mesothelioma]," and therefore a "dose-related approach to causation is . . . [not] necessarily appropriate for mesothelioma."  *Id.* at 732.

The implication that there is no "identifiable threshold level of exposure [to asbestos] triggering [mesothelioma]," however, is in noticeable tension with the *Boomer* court's later admonition that "experts must opine as to what level of exposure is sufficient to cause mesothelioma."  *Boomer*, 736 S.E.2d at 732–33.  This tension can be resolved by putting the former statement in fuller context.  The *Boomer* court made this statement in the context of

rejecting comment g to section 27 of the Restatement (Third) of Torts.  *See id.* at 732.  That

comment states that, "[w]hen a person contracts a disease such as cancer, and sues multiple

actors claiming that each provided some dose of a toxic substance that caused the disease . . . .

some or all of the person's exposures may not have been but-for causes of the disease," if "there

is some threshold dose sufficient to cause the disease" and the person was "exposed to doses in

excess of the threshold dose before contracting the disease."  *See* Restatement (Third) of Torts:

Liability for Physical & Emotional Harm § 27 cmt. g (2010).  Thus, *Boomer*'s statement that

comment g's "dose-related approach to causation is . . . [not] necessarily appropriate for

mesothelioma," can be construed to mean that asbestos plaintiffs need not present scientific

evidence about the exact *dose* of asbestos that would be sufficient to trigger mesothelioma.[12]

Under such a construction, evidence of dosage would be much more precise than the evidence

about a more general "level of exposure [that] is sufficient to cause mesothelioma," which

*Boomer* does require.  *See Boomer*, 736 S.E.2d at 732–33.  In short, although *Boomer* does not

require evidence about a specific threshold carcinogenic dose of asbestos, it does require expert

---

[12] An alternative explanation for *Boomer*'s statement about comment g is that this Restatement (Third) language is
in significant tension with the holding of *Boomer* and the other portions of section 27.  In addition to the portions
quoted in the text above, comment g also states that "each of the exposures prior to the person's contracting the
disease . . . is a factual cause of the person's disease under the rule in this Section."  *See* Restatement (Third) of
Torts: Liability for Physical & Emotional Harm § 27 cmt. g.  This latter portion of comment g is in palpable tension
with the rest of section 27.  It is in particular tension with comment f, which addresses the situation where "one
actor's contribution may be sufficient to bring about the harm while another actor's contribution is only sufficient
when combined with some portion of the first actor's contribution."  *See id.* cmt. f.  In that situation, the Restatement
(Third) commentary states that "[w]hether the second actor's contribution can be so combined into a sufficient
causal set is a matter on which this Restatement takes no position and leaves to future development in the courts."
*Id.*  Yet, it is precisely this sort of combining of exposures that appears to be endorsed by comment g.  The above-
quoted portion of comment g is also in significant tension with *Boomer* itself because comment g does not require
that "each of the exposures prior to a person's contracting the disease" be independently sufficient in order for those
exposures to be considered "factual cause[s]" of the disease.  *See id.* cmt g.  Hence, it could very well be that
*Boomer* rejected comment g because it was too lax about what constitutes a "factual cause," rather than because
comment g embraced a "dose-related approach to causation."  *See Boomer*, 736 S.E.2d at 732.

evidence about the "level of exposure [that] is sufficient to cause mesothelioma," which must constitute more than an opinion about heightened "risk" from exposure to asbestos.[13]   *See id.*

By requiring the presentation of expert evidence regarding a "level of exposure [that] is sufficient to cause mesothelioma," *id.*, *Boomer* also made clear that an expert may not simply take the level of asbestos exposure of a particular plaintiff and opine that such exposure was sufficient to cause the plaintiff's mesothelioma.   Instead, the expert must first identify some touchstone "level of exposure [that] is sufficient to cause mesothelioma" and compare that level to the plaintiff's exposure.   *See id.*   In other words, *Boomer* does not permit a medical expert to offer an *ad hoc* opinion on the sufficiency of a particular exposure, if that opinion is untethered from a scientific benchmark for sufficiency.   Yet, that is the opinion that Dr. Markowitz offers in his February 8, 2013 declaration.   Dr. Markowitz does not identify any "level of exposure [that] is sufficient to cause mesothelioma," *see id.*, in his February 8, 2013 declaration, but rather only opines that (1) *the decedent's* exposures to asbestos were "each independently sufficient to cause mesothelioma in and of themselves," and (2) "there has not been established a safe level of exposure to asbestos below which individuals are not *at risk* for developing malignant mesothelioma," *see* Markowitz Decl. at 5–6 (emphasis added).   Therefore, even if that declaration were admissible, the medical opinions contained in that declaration would be insufficient to create a genuine issue of material fact regarding causation under *Boomer*.

---

[13] This construction of *Boomer*'s discussion also fits with the rubric of case law cited earlier in the *Boomer* opinion from other states, which had each articulated "variant definitions" of the "substantial contributing factor language in their asbestos litigation."   *See id.* at 730.   A Maryland case had applied a "frequency, regularity and proximity test" to determine causation, a California case had defined "substantial contributing factor" to include any exposure that increased the plaintiff's "risk" of developing cancer, and a Texas case had held that specific evidence relating to dose was necessary to determine whether exposure from a defendant was a substantial contributing factor.   *See id.* (citing *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986) (applying Maryland law), *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203 (Cal. 1997), and *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007)).   *Boomer* appears to reject the California and Texas approaches in favor of an approach more similar to that applied in the Maryland case: more than elevated "risk," but less than precise dosage.

**IV.     CONCLUSION**

As the foregoing discussion establishes, the plaintiff's submission of the February 8, 2013 Markowitz Declaration was untimely under the Federal Rules of Civil Procedure and the MDL Court's scheduling order pertaining to expert discovery.  In addition, the plaintiff's submission of that declaration was not substantially justified or harmless, and therefore the Court concludes that the declaration should be excluded under Federal Rule of Civil Procedure 37. Accordingly, the defendant's motion to strike is granted.  Furthermore, either with or without Dr. Markowitz's February 8, 2013 declaration, the plaintiff cannot create a genuine issue of material fact on the question of factual causation, and therefore the defendant's motion for reconsideration regarding its motion for summary judgment is also granted.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 14, 2013

/s/ *Beryl A. Howell*
_____
BERYL A. HOWELL
United States District Judge